## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Patrick Berry, Henrietta Brown,
Nadine Little, Dennis Barrow, Virginia Roy,
Joel Westvig, Emmett Williams, *on behalf of*
*themselves and a class of similarly-situated*
*individuals;* and ZACAH,

Civil File No. 20-cv-02189 WMW/KMM

                    Plaintiffs,

**DECLARATION OF JASON**
**OHOTTO IN OPPOSITION TO**
**MOTION FOR A TEMPORARY**
**RESTRAINING ORDER**

v.

Hennepin County; Hennepin County Sheriff
David Hutchinson, *in his individual and official*
*Capacity*; City of Minneapolis; Minneapolis Mayor
Jacob Frey, *in his individual and official capacity;*
Minneapolis Chief of Police Medaria Arradondo,
*in his individual and official capacity;* Superintendent
Al Bangoura, *in his individual and official capacity*;
Park Police Chief at the Minneapolis Park and
Recreation Board Jason Ohotto, *in his individual and official capacity;*
Police Officers John Does; and Police Officers
Jane Does,
                    Defendants.

Your Declarant, Jason Ohotto, states and affirms as follows:

1.  I am employed by the Minneapolis Park and Recreation Board (MPRB) as the

Director of Park Safety and Security.  I am commonly referred to as the Chief of the

Minneapolis Park Police and serve as the chief law enforcement officer for the MPRB. I

am a licensed Minnesota peace officer and I supervise approximately 32 sworn law-

enforcement officers and 19 non-sworn park patrol agents.

2.  I have been a Park police officer since 1998. In that capacity, I have had extensive education, training, and professional development.

3.  Park police officers and park patrol agents are responsible for emergency response, the prevention of crime, and enforcement of state and local laws and MPRB ordinances across the nearly 7,000 acres of land in and adjacent to the City of Minneapolis that are owned and operated by the MPRB. In addition, the Park Police patrol 54 miles of parkways in and adjacent to the City of Minneapolis.

4.  Minneapolis parks have over 20 million user visits to the park system on an annual basis.

5.  One of our duties as park police officers is to enforce MPRB ordinances and rules. MPRB ordinances and rules prohibit overnight camping or activity in MPRB parks. However, this changed when Governor Tim Walz issued executive orders to prohibit the removals of homeless encampments except in certain cases.

6.  On June 12, 2020, shortly after scores of unsheltered people were evicted from the Midtown Sheridan Hotel, Sanctuary Movement Activists brought large numbers of unsheltered people to Powderhorn Park and established an encampment. At the direction of Superintendent Bangoura, Park Police officers were dispatched to issue notice that overnight camping/activity was not permitted by ordinance or rule.

7.  Upon issuing notice at Powderhorn Park, I was contacted by a member of the Minnesota Interagency Council on Homelessness and informed the notice was in violation of executive order. I referred the call to Superintendent Bangoura, who rescinded the notice.

8.  The Powderhorn encampment quickly grew and, at one point, contained more than 500 tents and 300 occupants. Conditions quickly deteriorated and violence escalated.

9.  Subsequently, Governor Walz's office changed their interpretation and allowed the local units of  government the discretion to remove encampments when encampment size, health or safety of the persons in the encampment or the community was threatened, or when adequate alternative housing was available in the community.

10. In my position as Park Police Chief, I am in regular communication with Superintendent Al Bangoura. Since May of this year, I have also been in frequent contact with a working group of people from Hennepin County and the City of Minneapolis who are experts in dealing with unsheltered people and homelessness. I have also closely monitored the 911 calls, crime reports, and other concerns expressed by residents and MPRB employees about the public safety and health conditions resulting from encampments in the MPRB parks. At one time this summer, there were over forty (40) encampments throughout the MPRB park system.

11. Violent crime in the park system, especially rapes (y-t-d up 91%) and aggravated assaults (y-t-d up 200%), have increased dramatically due to encampments.

12. Throughout the evaluation of every encampment located within parks, I, along with other MPRB staff, have been in close communication with Hennepin County Social Services. Through these communications, outreach efforts at encampments are

3

coordinated. In the case of every disbandment, Hennepin County social service workers have been involved and on site.

13. At the direction of MPRB Superintendent Al Bangoura, over the last three months, park police officers under my supervision have undertaken to disband certain encampments within parks. These removals were only undertaken when there was an actual and demonstrated threat to the public safety or health of camp residents or the neighbors and neighborhoods of the park because of the encampment. These actions were only undertaken after Superintendent Bangoura gave explicit direction after he was satisfied that  public health and safety were endangered and that adequate housing for homeless persons existed in the community. Further, I have been involved in extensive consultation with MPRB, Hennepin County, and City of Minneapolis employees  to ensure that I and my officers and employees are adhering to Park Board Resolution 2020-267 and Governor Walz's executive orders related to homeless encampments.

14. In the case of the Powderhorn East encampment, Park Police personnel provided 72 hours of advance notice to encampment occupant prior to disbandment. Noticing took place on July 17, 2020 and disbandment took place on July 20, 2020. In the time between noticing and disbandment, social service outreach and transportation was provided. Alternative shelter and encampments were available.

15. In the case of Powderhorn West encampment, to the best of my knowledge, the MPRB Community Outreach Department provided notice on July 31, 2020. Disbandment took place on August 14, 2020. In the time between noticing and disbandment, social

service outreach and transportation was provided. Alternative shelter and encampments were available.

16. In the case of Peavey Park encampment, Park Police personnel provided notice on August 10, 2020. On August 12, 2020, a Park Police officer and maintenance staff were confronted by hostile encampment "defenders" and chased from the park. On September 24, 2020, the encampment was disbanded. Between noticing and disbandment, social service outreach and transportation was provided. Most outreach efforts were thwarted by hostile encampment "defenders" who prevent access to unsheltered people. Alternative shelter and encampments were available.

17. In the case of the Kenwood Park encampment, Park Police personnel provided 24-hour notice on August 11, 2020. On August 12, 2020, the encampment was disbanded. During disbandment, a social service worker was on scene to assist any encampment occupant with shelter options or transportation. Alternative shelter and encampments were available.

18. In the cases of Loring Park and Matthews Park, The MPRB Community Outreach Team provided notice to encampment occupants. In both cases, the encampments disbanded with little police intervention.

19. To the best of my knowledge, the MPRB through its Community Outreach Departmentor its precursor gave least 24 hours' notice prior to the removal of any person from other encampments.  Notice was given by written notice to persons camping in the parks. Notice was also given to any person who was assisting persons in the encampment. Generally, much more than 24 hours' notice was given if it was deemed that an

encampment was a threat to the public health and safety or if it was in violation of Park Board Resolution 2020-267.

20. Park police officers have not been involved directly in the vacation of encampments where persons and or permit holders have voluntarily left a site.  Examples of  these voluntary camp closures include Bryn Mawr, Lake Harriet, Brackett, and Logan parks.

21. After Superintendent Bangoura has directed that individuals be removed from a park, park police officers were on site to ensure the safety of maintenance and sanitation staff and ensure that the camp is removed. We would establish a zone around each encampment by placing police tape around the perimeter of a camp site.  We provided persons with at least one hour to gather up their belongings. If people needed more time, they were provided additional time. In most cases, transportation, including trailers for possessions, were provided by the MPRB or its partners to those individuals having to leave.  Housing and homeless specialists were on site, including social service providers.

22. The actual removal of abandoned property and refuse after vacation of a camp was performed by non-sworn employees of the MPRB or by contractors thereof. Assistant Superintendent Jeremy Barrick is the supervisor of those employees and he or his staff oversaw the efforts of those employees to clean up abandoned property and refuse left at a vacated encampment site.

23. The MPRB also employs Community Outreach personnel under the supervision of Director Cordell Wiseman. These individuals worked in the parks and were regularly at the encampments throughout the last five months talking to people camped in the parks

6

and those who advocate for those who are camped in the parks. These Community Outreach employees are the persons who often provided notice to campers and what they had to do to remain in the park or to leave the park.  Park police officers only came to the parks to act as a means to ensure that MPRB resolutions and ordinances were being enforced and to be of assistance to employees if necessary.

24. I have reviewed the complaint in the above referenced action and find that there are many in accuracies. Specifically they are:

   a. #14: The Powderhorn West encampment was noticed on July 31, 2020 and was followed by daily outreach efforts. Disbandment took place on August 14, 2020.

   b. #19: The Logan Park encampment was not disbanded. The encampment, which was permitted by the MPRB, disbanded voluntarily on/about October 14, 2020.

   c. #26: No vans were parked in Peavey Park (no parking lot).

   d. #28: The timing described is impossible. The Peavey incident took place on 8/12. Powderhorn West was disbanded on 8/14.

   e. #31: The person described was arrested for trespassing (crossing a police line).

   f. #32: No "peacefully protesting" people were sprayed with chemical irritants. As officers attempted to leave the operation, they were pursued and chased by aggressive protesters. These protesters physically blocked

officers, prevented movement, and beat on squad cars. Officers used chemical on violent people who obstructed the movement of officers.

g. #44: The Peavey operation began at 0613 hours.

h. #45: There was a light rain that dissipated throughout the operation.

i. #47: The Hennepin County Sheriff's office was not involved in disbandment operations; they were not within the encampment perimeter. They were there to assist with transportation of prisoners and provide force protection.

j. #64: Brackett Park encampment disbanded voluntarily on its own requested timeline.

k. #73: Brackett Park encampment disbanded voluntarily on its own requested timeline.

l. #88: The Logan Park reference does not make sense.

m. #103: Powderhorn East was noticeson 7/17/2020 and disbanded on 7/20/22. There was daily outreach between notice and disbandment.

n. #105: No chemical irritant was used during the Powderhorn East operation.

o. #166: In each case, there was sufficient shelter space reported by Hennepin County Social Services. In addition, the MPRB was provided expansive alternate encampment spaces.

25.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed pursuant to 28 U.S.C. § 1746 on today's date, October 21, 2020.

            s/Jason Ohotto