UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Patrick Berry et al., | Case No. 20-cv-2189 (WMW/LIB) |
| Plaintiffs, | |
| v. | **ORDER DENYING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER** |
| Hennepin County et al., | |
| Defendants. | |

---

Plaintiffs Patrick Berry, Henrietta Brown, Nadine Little, Dennis Barrow, Virginia Roy, Joel Westvig and Emmett Williams filed this putative class-action lawsuit, along with Zakat, Aid and Charity Assisting Humanity (ZACAH), challenging Defendants' treatment of persons experiencing unsheltered homelessness. Before the Court is Plaintiffs' motion for a temporary restraining order. (Dkt. 4.) For the reasons addressed below, Plaintiffs' motion is denied without prejudice.

## BACKGROUND

This case arises from the confluence of two significant societal problems—homelessness and the COVID-19 pandemic. Plaintiffs allege that Defendants Hennepin County, the City of Minneapolis, Minneapolis Mayor Jacob Frey, Minneapolis Chief of Police Medaria Arradondo, the Minneapolis Park & Recreation Board (MPRB), MPRB Superintendent Al Bangoura, MPRB Park Police Chief Jason Ohotto, Hennepin County Sheriff David Hutchinson and multiple unnamed police officers have conducted "sweeps" during which Defendants have seized and destroyed the property of persons experiencing

unsheltered homelessness who currently are living in encampments in public parks throughout Minneapolis. Plaintiffs allege that Defendants' actions violate Plaintiffs' rights afforded by the Fourth and Fourteenth Amendments to the United States Constitution as well as the Minnesota Constitution and Minnesota law.

Plaintiffs in this action include individual plaintiffs and one organizational plaintiff. The individual plaintiffs in this action are six individuals experiencing unsheltered homelessness in Hennepin County, Minnesota, including four individuals who currently are not living on public land and two individuals who currently are doing so, within the Minneapolis park system. The organizational plaintiff ZACAH is a private nonprofit organization staffed by unpaid volunteers with a mission to provide financial assistance to residents of Minnesota who are on the verge of experiencing homelessness.

On April 8, 2020, Minnesota Governor Tim Walz issued Emergency Executive Order 20-33, which states that "[e]ncampments should not be subject to sweeps or disbandment by state or local governments, as such sweeps or disbandment increase the potential risk and spread of COVID-19." On April 29, 2020, Governor Walz issued Emergency Executive Order 20-47 which clarified Emergency Executive Order 20-33 with respect to encampments, noting that "both new and existing encampment[s] should not be subject to sweeps or disbandment by state or local governments," however, "[i]f a local government entity is providing sufficient alternate housing, shelter, or encampment space that complies with the Minnesota Department of Health's guidance . . . and the Centers for Disease Control and Prevention's . . . guidance, Responding to COVID-19 Among People Experiencing Unsheltered Homelessness, or if an encampment has

reached a size or status that is a documented threat to the health, safety, or security of residents, state or local governments may restrict, limit, or close encampment spaces." On May 13, 2020, Governor Walz issued Emergency Executive Order 20-55, which reiterates the guidance as to encampments set forth in Emergency Executive Order 20-47.

The MPRB manages the City of Minneapolis park system. On June 17, 2020, the MPRB adopted Resolution 2020-253 declaring Minneapolis parks to be a refuge space for persons experiencing unsheltered homelessness. On July 15, 2020, the MPRB adopted Resolution 2020-267, which limited the number of Minneapolis parks that could be refuge sites to 20 and limited the number of tents located at each site to 25 through a permit process. In August and September 2020, Minneapolis Park Police disbanded one of several Powderhorn Park encampments, along with the encampments at Peavy Park, Kenwood Park, and Elliot Park. The MPRB has issued public statements that "[d]ue to health and safety concerns the MPRB will not be extending temporary encampment permits into cold weather, anticipated to be sometime in October."

Plaintiffs commenced this lawsuit on October 19, 2020. The complaint alleges that Defendants unlawfully seized Plaintiffs' property in violation of the Fourth Amendment to the United States Constitution and Article I, Section 10 of the Minnesota Constitution (Count I); violated Plaintiffs' rights to privacy afforded under the Fourth Amendment to the United States Constitution and Article I, Section 10 of the Minnesota Constitution (Count II); violated Plaintiffs' procedural due process rights afforded under the Fourteenth Amendment to the United States Constitution and Article I, Section 7 of the Minnesota Constitution (Count III); violated Plaintiffs' substantive due process rights

afforded under the Fourteenth Amendment to the United States Constitution (Count IV); and that Defendants are liable for alleged conversion of Plaintiffs' property in violation of Minnesota law (Count V). On the same day that Plaintiffs filed their complaint, Plaintiffs also filed the pending motion for a temporary restraining order.

On Friday, October 23, 2020, this Court ordered the parties to attend a settlement conference on Tuesday, October 27, 2020, with United States Magistrate Judge Leo I. Brisbois as to the pending motion for a temporary restraining order. The parties were unable to reach an agreement as to the pending motion for a temporary restraining order on October 27, 2020.

Plaintiffs' motion seeks to prevent Defendants from taking certain actions against individuals who are experiencing unsheltered homelessness and living in public parks in Minneapolis and throughout Hennepin County. Specifically, Plaintiffs seek to enjoin Defendants from taking the following actions against such individuals: (1) clearing encampments in public parks within Hennepin County, (2) seizing Plaintiffs' property and the property of the putative class members without adequate pre-deprivation notice, and (3) destroying Plaintiffs' property and the property of the putative class members. At the hearing on the motion for a temporary restraining order, Plaintiffs' counsel articulated the relief Plaintiffs seek as an order from this Court enjoining Defendants from sweeping encampments in violation of Executive Order 20-47 signed by Governor Walz on April 29th.

## ANALYSIS

Federal Rule of Civil Procedure 65(b) authorizes a district court to grant injunctive relief in the form of a temporary restraining order.  Such relief is an extraordinary remedy that is never awarded as of right.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  When determining whether a temporary restraining order is warranted, a district court considers the four *Dataphase* factors: (1) the threat of irreparable harm to the movant, (2) the likelihood that the movant will succeed on the merits, (3) the balance between Plaintiffs' alleged harm and the injury that an injunction would inflict on other parties, and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).  The purpose of a temporary restraining order is to maintain the status quo.  *Kelley v. First Westroads Bank*, 840 F.2d 554, 558 (8th Cir. 1988).  And the burden rests with the moving party to establish that injunctive relief should be granted. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

### I.      Irreparable Harm

To obtain a temporary restraining order, a movant must establish the threat of irreparable harm.  *See Dataphase*, 640 F.2d at 114.  "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).  To establish the need for injunctive relief to prevent irreparable harm, the movant "must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (internal quotation marks omitted); *see*

*also Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 915 (8th Cir. 2015).  A mere "possibility of harm" is insufficient.  *Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011).  Issuing a temporary restraining order "based only on a possibility of irreparable harm is inconsistent with [the Supreme Court of the United States's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  The threat of irreparable harm and the inadequacy of legal remedies have always served as the basis for injunctive relief in federal courts.  *Watkins Inc.*, 346 F.3d at 844.

Because a party's "failure to show irreparable harm is an independently sufficient ground upon which to deny [preliminary injunctive relief]," *Novus Franchising, Inc.*, 725 F.3d at 893 (internal quotation marks omitted), the Court's analysis begins with this *Dataphase* factor.  The threat of irreparable harm is measured as to each plaintiff.  Here, *all* Plaintiffs are not similarly situated at this point in time.  For this reason, the question before the Court is whether *any* plaintiff would suffer irreparable harm if this Court does not grant a temporary restraining order enjoining Defendants from "sweeping" encampments.

## A.    Irreparable Harm as to ZACAH

In the complaint, the organizational plaintiff, ZACAH, alleges that board members and volunteers have dedicated countless hours to place people in emergency hotel rooms. ZACAH alleges that, of the $115,715 in donations it has received, the organization has spent approximately $113,000 to pay for hotel rooms for displaced people on an

emergency basis.  ZACAH argues that this expenditure has prevented it from using those funds to advance ZACAH's core mission to "support people in transitioning from a state of vulnerability, back toward a path of sustainability."  Diverted resources, however, can be compensated through money damages.  *See, e.g.*, *Salazar ex rel. Salazar v. District of Columbia*, 671 F.3d 1258, 1266 (D.C. Cir. 2012) (concluding that costs associated with litigation and use of scarce financial and human resources did not establish irreparable harm); *Greater Birmingham Ministries v. Alabama*, 161 F. Supp. 3d 1104, 1117 (N.D. Ala. 2016) (concluding that organizations' diversion of resources "amounts to no more than a loss of money and time, which is generally not irreparable harm").  If ZACAH prevails on the merits of its lawsuit, the financial harm it incurs is compensable with an award of money damages.  Therefore, ZACAH has not established that it will suffer irreparable harm absent this Court issuing a temporary restraining order.

## B.      Irreparable Harm as to the Individual Plaintiffs

As to the individually named Plaintiffs, the record establishes that some of the individually named plaintiffs currently are living in encampments and some are not. Plaintiffs seek injunctive relief enjoining Defendants from clearing the encampments in Hennepin County and from seizing and destroying the property of individually named plaintiffs and the property of the putative class members *in the future*.[1]  According to the declarations submitted to this Court, Plaintiffs Barrow, Berry, Brown, Little and Roy

---

[1]      As addressed above, at the hearing on the motion for a temporary restraining order, Plaintiffs' counsel clarified that the relief Plaintiffs seek is an order enjoining Defendants from sweeping encampments in violation of Governor Walz's April 29, 2020 Emergency Executive Order 20-47.

currently are not living in encampments (Non-Encampment Plaintiffs). While the Non-Encampment Plaintiffs might resume living in an encampment in Hennepin County at some point, they presently are not subject to possible removal from encampments. Injunctive relief granted to address speculative harm is improper. *Chlorine Inst., Inc.*, 792 F.3d at 915; *see also Jones v. Pub. Hous. Agency of City of St. Paul*, No. 17-5448 (MJD/DTS), 2018 WL 3104269, at *2 (D. Minn. Feb. 27, 2018), *report and recommendation adopted*, 2018 WL 1535935, at *2 (D. Minn. Mar. 29, 2018) (denying injunctive relief involving speculative harm of potential eviction). The harm as alleged by the Non-Encampment Plaintiffs in the form of removal from encampments is speculative because they currently do not live in encampments. Because speculative harm is not irreparable harm, the Non-Encampment Plaintiffs have not demonstrated that they will suffer irreparable harm absent a temporary restraining order from the Court.

The record reflects that the two remaining individually named plaintiffs, Westvig and Williams, currently reside in encampments (Encampment Plaintiffs). The Encampment Plaintiffs allege that they do not know where they will live if Defendants force them to leave their encampments in B.F. Nelson Park and Martin Luth King, Jr. Park, respectively.[2] Consequently, the Encampment Plaintiffs argue, they will suffer

---

[2]     Although the Encampment Plaintiffs allege a fear of the possible seizure or destruction of their personal property, it is unclear how such harm is irreparable if it can be remedied by the return of the property or compensation through monetary damages. Such allegations also are highly speculative. Were they to lose essential possessions, the Encampment Plaintiffs argue that loss would be both devastating and traumatizing. The Court does not minimize this hardship. But Plaintiffs do not argue, nor does the record reflect, that the harm arising from such a loss would be irreparable. Yet the threat of irreparable harm is required to obtain the relief Plaintiffs seek. Because Plaintiffs have

irreparable harm in the form of evictions from their encampments if this Court does not issue a temporary restraining order.

The Encampment Plaintiffs contend that, if the encampments where they reside in their tents are disbanded, the Encampment Plaintiffs will lose their shelter.  And they maintain that loss of housing resulting from an eviction can constitute irreparable harm. *Higbee v. Starr*, 698 F.2d 945, 947 (8th Cir. 1983) ("Denial of the preliminary injunction deprived [the plaintiff] of a place to live, and constituted irreparable harm . . . ."). Defendants disagree, arguing that Plaintiffs will not be harmed irreparably because if the MPRB determines that those encampments should be removed, the MPRB "will do so in the same manner as [it has] with the other encampment[s]: making a determination that the encampments have become health and safety risks to the campers *and* the public *and that there is adequate shelter elsewhere*."  (Emphasis added.)  And, Defendants pledge, both notice and outreach services will be provided.  If shelter space is available for all persons removed from the encampments, the possible harm that the Encampment Plaintiffs might face if encampments are disbanded would be mitigated.  *See Frank v. City of St. Louis*, 458 F. Supp. 3d 1090, 1096 (E.D. Mo. 2020) (discussing the City of St. Louis, Missouri's plans to provide an individual housing unit to every displaced resident of an encampment, in accordance with guidance from the Center for Disease Control (CDC) in light of the COVID-19 pandemic, and concluding that plaintiffs had not demonstrated certain or imminent irreparable harm); *see also Drake v. County of Sonoma*,

---

neither argued nor demonstrated that the loss of essential possessions would be irreparable, the Court declines to address whether this hypothetical future circumstance constitutes irreparable harm.

304 F. Supp. 3d 856, 859 (N.D. Cal. 2018) (discussing shelter options as mitigating possible irreparable harm).[3]

The City of Minneapolis and Hennepin County maintain that shelter options are available.  The declaration of David Hewitt, the Director of the Hennepin County Office to End Homelessness, states that "Hennepin County has committed to finding shelter for all families with children" even if family shelters are at capacity.  And between July 1, 2020, and October 21, 2020, there were "unused beds for single women every night." But beginning in September 2020, shelters for single men in Hennepin County had begun to reach their capacity more frequently.  Even so, Hewitt maintains, "new beds do become available each day" for single adult men.  Based on these representations, single adult men experiencing homelessness in Hennepin County might be able to find shelter on any given night.  But the prospect of doing so is not certain.  The potential harm that the Encampment Plaintiffs face as a result of possible disbandment is not minimal.  But to warrant injunctive relief, the harm must be *certain* and *concrete*.  *See Novus Franchising*, 725 F.3d at 895; *see also Vision-Ease Lens, Inc. v. Essilor Int'l. SA*, 322 F. Supp. 2d 991, 999 (D. Minn. 2004).  The City of Minneapolis, along with Minneapolis Mayor Frey, Minneapolis Chief of Police Arradondo, MPRB Superintendent Bangoura, Park Police Chief Ohotto, and the MPRB have represented to this Court that encampments will not be removed unless three conditions are met: the MPRB determines

---

[3]    Plaintiffs identify the threat of contracting COVID-19 in a shelter.  But the record reflects that the COVID-19 infection rate among individuals in Hennepin County shelters is lower than the infection rate for the general population. And no deaths due to COVID-19 have occurred among individuals in Hennepin County Shelters.

that a health and safety risk to the encampment residents exists, a health and safety risk to the public exists, *and* adequate shelter exists elsewhere.  These representations are consistent with Defendants' declarations submitted under the penalty of perjury.  For example, MPRB Police Chief Ohotto attests that, to date, the removal of encampments has been undertaken only when there has been an "actual and demonstrated threat to the public safety or health of camp residents or the neighbors and neighborhoods of the park because of the encampment.  These actions were only undertaken after [MPRB] Superintendent Bangoura gave explicate direction after he was satisfied that public health and safety were endangered and that adequate housing for homeless persons existed in the community."  In addition, the MPRB's Director of Community Outreach attests that, "[w]hen an encampment is to be disbanded, Community Outreach employees work with the inhabitants and permittees to assist them in finding alternative housing."  Based on these representations and sworn declarations, the Encampment Plaintiffs will not experience irreparable harm in the event that the MPRB disbands an encampment *after* the aforementioned circumstances have been established.  Plaintiffs have not presented any evidence that persuasively contradicts Defendants' evidence and representations so as to establish that Plaintiffs' alleged harm is sufficiently certain and concrete.  Therefore, based on the record before this Court, including Defendants' declarations submitted under the penalty of perjury and Defendants' representations through their attorneys as officers of the Court, the Encampment Plaintiffs have not met their burden of demonstrating irreparable harm as required to secure a temporary restraining order.

## II.      Remaining *Dataphase* Factors

As Plaintiffs have not established that irreparable harm will result from Defendants' actions, the Court need not examine the remaining *Dataphase* factors.  Both experiencing and addressing unsheltered homelessness are grave challenges in the best of times.   The COVID-19 global pandemic has both increased the number of people experiencing unsheltered homelessness and further complicated the means of addressing unsheltered homelessness in light of the CDC's recommendations to practice social distancing and elevated sanitation procedures.    The prevalence of unsheltered homelessness in the Twin Cities has increased since the beginning of the COVID-19 pandemic, and this Court is mindful of the robust efforts of volunteers, nonprofit organizations, and governmental entities to assist those who face unsheltered homelessness in the local Twin Cities community.  These entities include ZACAH, the Mid-Minnesota Legal Aid and the American Civil Liberties Union, as well as Hennepin County, the City of Minneapolis, and the MPRB, along with numerous other nonprofit organizations and volunteers.  The issue before the Court is not how best to address unsheltered homelessness.  Rather, the issue before the Court is whether Plaintiffs have met the legal standard necessary to secure a temporary restraining order.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for a temporary restraining order,

(Dkt. 4), is **DENIED** without prejudice.[4]


Dated:  October 29, 2020                              s/Wilhelmina M. Wright
                                                      Wilhelmina M. Wright
                                                      United States District Judge

---

[4]     Because the Court denies Plaintiffs' motion for a temporary restraining order, the Court need not address Plaintiffs' request for the Court to waive a security bond.  *See* Fed. R. Civ. P. 65 (c).