UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Patrick Berry et al.,                          Case No. 20-cv-2189 (WMW/JFD)

                    Plaintiffs,

                                               **ORDER GRANTING IN PART AND**
       v.                                      **DENYING IN PART COUNTY**
                                               **DEFENDANTS' MOTION TO**
Hennepin County et al.,                        **DISMISS**

                    Defendants.

---

Before the Court is Defendants Hennepin County and Hennepin County Sheriff David Hutchinson's (County Defendants) motion to dismiss.  (Dkt. 72.)  For the reasons addressed below, the motion is granted in part and denied in part.

## BACKGROUND

This case arises from the confluence of two significant societal problems— homelessness and the COVID-19 pandemic.  The individual plaintiffs in this action are nine individuals experiencing unsheltered homelessness in Hennepin County, Minnesota (Individual Plaintiffs).  Plaintiff ZACAH is a private nonprofit organization that assists residents of Minnesota on the verge of experiencing homelessness.

Plaintiffs allege that Defendants—Hennepin County, the City of Minneapolis, the Minneapolis Park and Recreation Board (MPRB), various county and city officials,[1] and unnamed police officers—have conducted "sweeps" during which Defendants have seized

---

[1]     These county and city officials are Minneapolis Mayor Jacob Frey, Minneapolis Chief of Police Medaria Arradondo, MPRB Superintendent Al Bangoura, MPRB Park Police Chief Jason Ohotto, and Hennepin County Sheriff David Hutchinson.

and destroyed the property of persons experiencing unsheltered homelessness who live in encampments in Minneapolis public parks.  Plaintiffs allege that Defendants' actions violate Plaintiffs' rights as protected by the Fourth and Fourteenth Amendments to the United States Constitution, the Minnesota Constitution and Minnesota law.

On April 8, 2020, Minnesota Governor Tim Walz issued Emergency Executive Order 20-33 (EEO 20-33), which provides that "[e]ncampments should not be subject to sweeps or disbandment by state or local governments, as such sweeps or disbandment increase the potential risk and spread of COVID-19."  On April 29, 2020, Governor Walz issued Emergency Executive Order 20-47 (EEO 20-47), which clarified EEO 20-33's instructions with respect to encampments.  EEO 20-47 states that "both new and existing encampment[s] should not be subject to sweeps or disbandment by state or local governments."  "State or local governments may restrict, limit, or close encampment spaces," however, "[i]f a local government entity is providing sufficient alternate housing, shelter, or encampment space that complies with the Minnesota Department of Health's guidance . . . and the Centers for Disease Control and Prevention's guidance . . . or if an encampment has reached a size or status that is a documented threat to the health, safety, or security of residents."  On May 13, 2020, Governor Walz issued Emergency Executive Order 20-55 (EEO 20-55), reiterating the guidance as to encampments set forth in EEO 20-47.

On June 17, 2020, the MPRB, which manages the Minneapolis park system, adopted Resolution 2020-253, declaring Minneapolis parks to be a refuge space for persons experiencing unsheltered homelessness.  Approximately one month later, the MPRB

adopted Resolution 2020-267, which limits the number of Minneapolis parks that can be refuge sites to 20 and limits, through a permitting process, the permissible number of tents located at each site to 25. During August and September 2020, Minneapolis Park Police disbanded one of several Powderhorn Park encampments, along with encampments at Peavy Park, Kenwood Park and Elliot Park.

Plaintiffs' amended complaint advances five claims. Count I alleges that Defendants unlawfully seized Plaintiffs' property in violation of the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution. Count II alleges that Defendants violated Plaintiffs' right to privacy as protected by the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution. Count III alleges that Defendants violated Plaintiffs' procedural-due-process rights as protected by the Fourteenth Amendment to the United States Constitution and Article I, Section 7, of the Minnesota Constitution. Count IV alleges that Defendants violated Plaintiffs' substantive-due-process rights as protected by the Fourteenth Amendment of the United States Constitution and the Minnesota Constitution. And Count V alleges that Defendants are liable for the conversion of Plaintiffs' property in violation of Minnesota law. In an October 29, 2020 Order, this Court denied Plaintiffs' motion for a temporary restraining order because Plaintiffs failed to establish irreparable harm.

County Defendants now move to dismiss all counts asserted against them, arguing that Plaintiffs lack standing, Sheriff Hutchinson is subject to qualified immunity in his individual capacity, and the complaint fails to state a claim on which relief can be granted.

3

*See* Fed. R. Civ. P. 12(b)(1), 12(b)(6).  County Defendants also argue that Plaintiffs have inadequately pleaded punitive damages.

## ANALYSIS

### I.    Standing

County Defendants argue that dismissal is warranted because Plaintiffs lack standing.  As standing implicates a federal court's subject-matter jurisdiction, the Court addresses standing first.  Article III of the United States Constitution limits federal jurisdiction to actual cases and controversies.  U.S. Const. art. III, § 2, cl. 1; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  As a jurisdictional prerequisite, standing must be established before the merits of a claim may be reached.  *See, e.g.*, *McCarney v. Ford Motor Co.*, 657 F.2d 230, 233 (8th Cir. 1981).

A defendant may challenge a plaintiff's complaint for lack of subject-matter jurisdiction either on its face or on the factual truthfulness of its averments.  *See* Fed. R. Civ. P. 12(b)(1); *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  When deciding a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a court "must distinguish between a 'facial attack' and a 'factual attack.' "  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (quoting *Mechaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  A factual attack challenges the existence of subject-matter jurisdiction irrespective of the allegations in the complaint.  *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914–15 (8th Cir. 2015).  When ruling on a factual attack, as here, the district court may consider matters outside the pleadings, and the nonmoving party proceeds without "the benefit of [Rule] 12(b)(6) safeguards."  *Osborn*, 918 F.2d at 729 n.6.

To establish standing, a plaintiff must allege (1) an injury in fact, (2) a causal relationship between the opposing party's conduct and the alleged injury, and (3) that the injury would likely be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61. County Defendants challenge ZACAH's standing, arguing that ZACAH has satisfied neither the injury-in-fact nor the redressability element. County Defendants also challenge the traceability element as to Individual Plaintiffs' Article III standing. These arguments are addressed in turn.

### A.      Injury in Fact

County Defendants argue that ZACAH lacks standing because ZACAH has not suffered an injury in fact. Plaintiffs counter that the encampment sweeps perpetrated by County Defendants caused ZACAH a concrete and particularized injury.

When determining whether an organization has standing, a court conducts "the same inquiry as in the case of an individual: Has the plaintiff alleged such a personal stake in the outcome of the controversy as to warrant his [or her] invocation of federal-court jurisdiction?" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982) (internal quotation marks omitted). In *Havens*, an organization alleged that it suffered an injury by having to devote resources to counteract the defendant's allegedly racially discriminatory housing practices. *Id.* at 379. The Supreme Court of the United States recognized that this alleged harm was "more than simply a setback to the organization's abstract social interests," but instead was a "concrete and demonstrable injury to the organization's activities," concluding that there was "no question that the organization has suffered injury in fact." *Id.*

Here, ZACAH alleges that it has spent approximately $113,000, and approximately 50 to 60 hours per week, funding and otherwise securing hotel rooms for displaced people on an emergency basis. ZACAH alleges that, but for Defendants' actions, it could have used those resources to further its organizational mission of preventing people from experiencing homelessness. These allegations are sufficient to establish the injury-in-fact requirement of Article III standing. *See, e.g.*, *Granville House, Inc. v. Dep't of Health & Human Servs.*, 715 F.2d 1292, 1299 (8th Cir. 1983) (concluding that the nexus between the nonprofit's purpose, the challenged statute's purpose and the nonprofit's economic injury established standing).

Because ZACAH has established an injury in fact, County Defendants' motion to dismiss ZACAH's claims on this basis is denied.

**B.     Traceability**

County Defendants next argue that Individual Plaintiffs lack standing because their alleged injuries are not fairly traceable to County Defendants' actions. Individual Plaintiffs disagree, asserting that County Defendants are among the parties responsible for Individual Plaintiffs' injuries.

To have standing, a plaintiff must allege an injury that is fairly traceable to the allegedly unlawful conduct and is not the consequence of independent actions of a third party that is not before the court. *Lujan*, 504 U.S. at 560. An injury that is fairly traceable also must be "certainly impending," not speculative. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401–02 (2013); *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). Importantly,

the standing inquiry is not an assessment of the merits of the claim. *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012).

Here, Plaintiffs allege that the MPRB asked Sheriff Hutchinson for "approval" when implementing Resolution 2020-267 to clear encampments and that Sheriff Hutchinson dispatched deputies to assist with the sweeps. Although they dispute the specific role they played in the clearing process, County Defendants do not dispute that their deputies were present at and did not obstruct the clearance of the encampments on three occasions. Therefore, there is *some* connection between Individual Plaintiffs' alleged injuries and County Defendants' actions such that the traceability element of standing is satisfied. Accordingly, County Defendants' motion to dismiss on this basis is denied.

### C.    Redressability

The parties next dispute whether ZACAH's injuries are redressable.[2] The third element of Article III standing requires a plaintiff to demonstrate that it is likely—not merely speculative—that the remedy the plaintiff seeks can redress the alleged injuries. *Lujan*, 504 U.S. at 561; *Frost*, 920 F.3d at 1161.

Here, County Defendants maintain that ZACAH has not shown that it is likely— rather than merely speculative—that a favorable decision against County Defendants will redress the injury ZACAH alleges because County Defendants would not thereby be

---

[2]    County Defendants raise the issue of standing in their motion to dismiss, but they do not specifically challenge whether ZACAH's alleged injuries are redressable until their reply brief. Courts typically do not address arguments raised for the first time in a reply brief. But, because subject-matter jurisdiction is a threshold requirement in every federal lawsuit, *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005), the Court must consider County Defendants' redressability arguments.

required to provide emergency housing to unsheltered persons. But if County Defendants are enjoined from removing people from outdoor encampments, fewer people will require hotel rooms on an emergency basis. ZACAH, in turn, likely would devote fewer resources to securing hotel rooms, leaving ZACAH more time and money to spend on its mission of preventing homelessness. Therefore, ZACAH's injury is redressable.

In summary, County Defendants' motion to dismiss on the basis of Article III standing is denied.

## II.     Failure to State a Claim

A complaint must be dismissed if it fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must allege sufficient facts that, when accepted as true, state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining whether the complaint states such a claim, a district court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). The factual allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plaintiff, however, must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Legal conclusions that are couched as factual allegations may be disregarded by the district court. *See Iqbal*, 556 U.S. at 678–79.

## A.      Municipal Liability

The parties dispute whether Plaintiffs have sufficiently pleaded municipal liability

pursuant to 42 U.S.C. § 1983.

Section 1983 provides a civil cause of action against:

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or
> causes to be subjected, any citizen of the United States . . . to
> the deprivation of any rights, privileges, or immunities secured
> by the Constitution and laws . . . .

42 U.S.C. § 1983.  A Section 1983 claim against a municipality cannot be based on

vicarious liability.  *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  But a

municipality may be subject to Section 1983 liability if the inadequate training of its

employees, a municipal policy or an unofficial municipal custom causes a constitutional

injury.  *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (training); *Monell v. Dep't*

*of Soc. Servs.*, 436 U.S. 658, 694 (1978) (policy or custom); *see also Bd. of Cnty. Comm'rs*,

520 U.S. at 403–04.

As Plaintiffs have not alleged that their constitutional injury was caused by

inadequate training, Plaintiffs' Section 1983 claim against County Defendants necessarily

is based on either an official policy or an unofficial custom.  *See Corwin v. City of*

*Independence*, 829 F.3d 695, 699–700 (8th Cir. 2016).  "Policy and custom are not the

same thing."  *Id.*

"[A] policy is an official policy, a deliberate choice of a guiding principle or

procedure made by the municipal official who has final authority regarding such matters."

*Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (internal quotation marks

9

omitted). "[W]hether an official had final policymaking authority is a question of state law." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (noting that "[a]uthority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority"). Courts consult applicable municipal charters, codes or ordinances to determine whether an official has policymaking authority. *See Davison v. City of Minneapolis*, 490 F.3d 648, 661 (8th Cir. 2007). Plaintiffs have not identified an official county policy or alleged facts that would support the existence of an official policy. Nor have Plaintiffs cited any law bestowing policymaking authority on Sheriff Hutchinson or alleged that Sheriff Hutchinson is a policy maker. The Court must, therefore, analyze whether Plaintiffs have adequately alleged an unofficial county custom.

To state a claim for Section 1983 liability based on a county custom, a plaintiff must plead facts that establish (1) "the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct" committed by the county's employees; (2) "deliberate indifference to or tacit authorization" of the misconduct by policymaking officials after those officials have received notice of the misconduct; and (3) that the plaintiff was injured by acts pursuant to the custom, such that "the custom was a moving force behind the constitutional violation." *Corwin*, 829 F.3d at 700. Even if a plaintiff is not privy to the facts necessary to describe with specificity the alleged custom, the complaint must allege facts that would support the existence of a custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).

Because it is dispositive of the issue presented here, the Court begins with the second element, which requires a plaintiff to "allege facts showing that policymaking officials had notice of or authorized" the misconduct. *Kelly v. City of Omaha*, 813 F.3d 1070, 1076 (8th Cir. 2016) (affirming dismissal of Section 1983 claim against municipality that failed to allege such facts). Merely referencing previous complaints made against a local government employee, without more, is insufficient to state a claim for Section 1983 liability based on a custom. *See id.*; *cf. Mettler*, 165 F.3d at 1205 (explaining that plaintiff would need to show that the local government "had failed to investigate previous incidents before a court could conclude" that law enforcement officers "believed a municipal custom allowed them to violate [plaintiff's] rights with impunity"); *Hassuneh v. City of Minneapolis*, 560 F. Supp. 2d 764, 771 (D. Minn. 2008) (granting municipality's motion for summary judgment when plaintiffs did not "provide any evidence that the City of Minneapolis was on notice of the alleged constitutional violation and that the City was deliberately indifferent or authorized the alleged constitutional violation").

Plaintiffs do not allege any facts that, if proven, would establish that a policymaking official received notice of any alleged constitutional violations committed by County Defendants' employees. Nor do Plaintiffs allege that a policymaking official authorized or was deliberately indifferent to the alleged constitutional violations committed by County Defendants' employees. And there are no alleged facts from which such an inference could reasonably be drawn. Because Plaintiffs have not alleged any facts to support this necessary element of a claim for Section 1983 liability based on a county custom, Plaintiffs

have failed to state a Section 1983 claim against County Defendants.[3]  Accordingly, the Court must dismiss the Plaintiffs' federal constitutional claims against County Defendants premised on Section 1983 liability, and therefore grant County Defendants' motion to dismiss all such claims against them.

### B.    Qualified Immunity

County Defendants also argue that Sheriff Hutchinson, in his individual capacity, is subject to qualified immunity.  Plaintiffs disagree.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  On a motion to dismiss, qualified immunity warrants dismissal "only when the immunity is established on the face of the complaint." *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996) (internal quotation marks omitted).  To determine whether an official is entitled to qualified immunity, courts consider "(1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful."  *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013).  A court may consider these qualified-immunity factors in any order. *Pearson*, 555 U.S. at 236.

---

[3]      In light of the foregoing conclusion, the Court need not address whether Plaintiffs have adequately alleged a continuing, widespread, persistent pattern of unconstitutional misconduct or that the county's custom caused Plaintiffs' injuries.

Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation marks omitted). When performing a qualified-immunity analysis, a district court assesses the facts as they appeared to the relevant state actors. *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994). A "clearly established" right does not require a case directly on point. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Rather, the key inquiry is whether the state actor had fair warning that the conduct violated a right. *Id.* The Supreme Court of the United States has cautioned against defining "clearly established right" with an excessive degree of generality. *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). "[C]learly established law must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotation marks omitted).

To prove that the relevant law was clearly established at the time that Sheriff Hutchinson allegedly violated Plaintiffs' property, privacy and due-process rights, Plaintiffs "must point to existing circuit precedent that involves sufficiently similar facts to squarely govern the individual defendants' conduct in the specific circumstances at issue" or, if no such binding precedent exists, "present a robust consensus of persuasive authority constituting settled law." *Bus. Leaders in Christ v. Univ. of Iowa*, 991 F.3d 969, 980 (8th Cir. 2021) (internal quotation marks and brackets omitted); *accord Lane v. Nading*, 927 F.3d 1018, 1022 (8th Cir. 2019) (addressing qualified immunity in the context of a motion to dismiss). Here, although Plaintiffs identify case law from the Supreme Court and the United States Court of Appeals for the Eighth Circuit, the cases cited do not involve sufficiently similar facts to squarely govern Sheriff Hutchinson's conduct in the specific

circumstances at issue.  *See, e.g.*, *Rakas v. Illinois*, 439 U.S. 128, 142–44 (1978) (clarifying, in a case involving the search of an automobile,  that the statement in *Jones v. United States*, 362 U.S. 257 (1960), "that a person need only be 'legitimately on the premises' in order to challenge the validity of the search of a dwelling place cannot be taken in its full sweep beyond the facts of that case"); *Silverman v. United States*, 365 U.S. 505, 511–12 (1961) (holding unconstitutional a warrantless wiretap of an alleged gambling establishment); *Robbins v. City of Des Moines*, 984 F.3d 673, 681 (8th Cir. 2021) (discussing brief detention of personal effects in the context of a seizure of the detained plaintiff's phone and camera, which he had been using to record the police); *Walters v. Wolf*, 660 F.3d 307, 313–14 (8th Cir. 2011) (addressing the seizure of a fugitive's gun following a traffic stop of his car and discovery of an outstanding warrant for his arrest).

Therefore, Sheriff Hutchinson in his individual capacity is subject to qualified immunity and County Defendants' motion to dismiss is granted in this respect. Accordingly, to the extent that Plaintiffs seek damages against Sheriff Hutchinson in his individual capacity, Sheriff Hutchinson is immune from such claims.

### C.     Unlawful Seizure of Personal Property (Counts I & II)

County Defendants argue that Plaintiffs fail to state a claim for unlawful seizure of Individual Plaintiffs' personal property in violation of Article I, Section 10, of the Minnesota Constitution.[4]

---

[4]     Although Plaintiffs split their claim for unlawful seizure of their property into two separate counts in their complaint, the Court can discern no meaningful distinction between the two counts.  The Court therefore analyzes these duplicative counts together.

Article I, Section 10, of the Minnesota Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized." Minn. Const. Art. I, § 10. "Ordinarily, [Minnesota courts] analyze federal and state protections guaranteed by the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution as co-extensive." *In re Welfare of M.L.M.*, 781 N.W.2d 381, 384 (Minn. Ct. App. 2010).[5] When analyzing an alleged unlawful seizure, courts must determine whether the plaintiff had a reasonable expectation of privacy with respect to the place searched or property seized and whether the search and seizure of the property was reasonable under the circumstances. *See O'Connor v. Ortega*, 480 U.S. 709, 719 (1987).

For a plaintiff to prove that a legitimate expectation of privacy was violated by the challenged search and seizure, the plaintiff must establish that (1) the plaintiff "asserted a subjective expectation of privacy" in the place searched or the object seized, and (2) the plaintiff's "subjective expectation is objectively reasonable." *United States v. Kiser*, 948 F.2d 418, 423 (8th Cir. 1991). The parties do not contest that Individual Plaintiffs had a subjective expectation of privacy with respect to their personal belongings. The parties

---

[5] Occasionally Minnesota courts will "reach[ ] conclusions regarding Article I, Section 10, of the Minnesota Constitution that depart[ ] from decisions of the Supreme Court interpreting the identical language of the Fourth Amendment." *State v. Carter*, 596 N.W.2d 654, 657 (Minn. 1999). The circumstances that warrant such a departure are not presented in this case.

dispute whether Individual Plaintiffs' subjective expectation of privacy was objectively reasonable.

"Determining whether an expectation of privacy is 'legitimate' or 'reasonable' necessarily entails a balancing of interests." *Hudson v. Palmer*, 468 U.S. 517, 527 (1984). Courts must balance the government's interest in invading an individual's privacy against the individual's privacy interest. *See id.* Individual Plaintiffs allege that they have a protected property interest in their personal belongings. County Defendants have a countervailing interest in disbanding encampments to promote the general welfare, including by preventing the further spread of COVID-19 in the midst of a global pandemic and deterring unsafe and unhealthy living conditions.

An individual's right to privacy in the home almost always outweighs the government interest in invading that private domain. *See Kyllo v. United States*, 533 U.S. 27, 31 (2001). A house—whether rented or owned—is therefore indisputably a "home" such that its occupant has a reasonable expectation of privacy therein. *See Chapman v. United States*, 365 U.S. 610, 617 (1961). Hotel rooms also have been found to be akin to a home in which a person has a reasonable expectation of privacy. *See Stoner v. California*, 376 U.S. 483, 490 (1964); *Lustig v. United States*, 338 U.S. 74, 79–80 (1949). Plaintiffs have not identified any legal authority demonstrating that a tent pitched unlawfully on public land is a home such that its owner has an objectively reasonable expectation of privacy. *Cf. United States v. Voice*, 622 F.3d 870, 878 (8th Cir. 2010) (declining to decide whether a person has a reasonable expectation of privacy in unattended closed bags in a public place "because any error in admission of the evidence in question was harmless").

Unlike houses, apartments, and hotel rooms, which are considered the quintessential example of "homes" wherein a person has a subjective expectation of privacy, Individual Plaintiffs' tents are pitched on public—rather than private—property and have been erected unlawfully. Taken together, Individual Plaintiffs' unlawful erection of tents on public land paired with County Defendants' strong interest in promoting the general welfare establish that Individual Plaintiffs do not have an objectively reasonable expectation of privacy in their property such that they could not be subject to an encampment sweep that includes the seizure of their personal property. [6]

A temporary deprivation of personal property is different from a permanent one, however. *United States v. Jacobsen*, 466 U.S. 109, 124 (1984). A "seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the [constitutional] prohibition on unreasonable seizures." *Id.* (internal quotation marks omitted). When "a temporary deprivation of possessory interests [becomes] a permanent one," courts must "balance the nature and quality of the intrusion on the individual's [constitutional] interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 125 (internal quotation marks omitted). A permanent deprivation is permissible when it is necessary to achieve the government's permissible ends. *Id.* (finding permissible the destruction of powder in order to effect a field test for contraband). Here, County

---

[6]     The United States Court of Appeals for the Ninth Circuit's decision holding that a camping tent pitched on a public campground where one is legally permitted to camp is a home, *United States v. Gooch*, 6 F.3d 673, 677–78 (9th Cir. 1993), is not inconsistent with this Court's analysis. Unlike the circumstances here, *Gooch* involved a public space intended for camping and a defendant who was camping there in accordance with the law.

Defendants' interest is in promoting the general welfare—keeping citizens safe and preventing the spread of COVID-19.  Plaintiffs' countervailing interest is in retaining or reclaiming possession of their personal property, including important documents and irreplaceable personal effects.  Taking Plaintiffs' allegations as true, as required on a motion to dismiss, County Defendants could have achieved its legitimate public welfare goals if they had cleared the homeless encampments without permanently depriving Individual Plaintiffs of their personal property by destroying that property.

Therefore, Individual Plaintiffs have plausibly alleged a violation of their right to be secure against the unreasonable seizure of their property, pursuant to Article I, Section 10, of the Minnesota Constitution.  Accordingly, County Defendants' motion to dismiss Plaintiffs' state-law unlawful-seizure claims (Counts I and II), as alleged against County Defendants, is denied.

### D. Procedural Due Process (Count III)

County Defendants argue that Plaintiffs fail to state a procedural-due-process claim because the complaint fails to allege that County Defendants seized Individual Plaintiffs' personal property without adequate process.  Plaintiffs counter that County Defendants provided Individual Plaintiffs no process at all.

 "The due process protection provided under the Minnesota Constitution is identical to the due proces[s] guaranteed under the Constitution of the United States." *State v. Krause*, 817 N.W.2d 136, 144 (Minn. 2012) (alteration in the original) (internal quotation marks omitted).   Procedural-due-process claims are reviewed in two steps: a court first determines whether the plaintiff was deprived of a protected liberty or property interest

and, if so, the court determines whether government officials followed constitutionally sufficient procedures. *Jenner v. Nikolas*, 828 F.3d 713, 716 (8th Cir. 2016) (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)). "Protected liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by state law or policies." *Id.*   The focus of a procedural-due-process claim is not on the merits of a deprivation, "but on whether the State circumscribed the deprivation with constitutionally adequate procedures." *Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998).  Here, it is undisputed that Individual Plaintiffs have a property interest in their personal belongings. Accordingly, the dispute is whether County Defendants provided Individual Plaintiffs with a constitutionally adequate process before depriving Individual Plaintiffs of their property.

The "general rule [is] that individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993).  Although it does not appear that the Eighth Circuit has decided what process is due in the unique circumstances presented here, other courts analyzing claims with similar facts have concluded that the relevant process may include notice, the provision of storage for certain items and the ability to reclaim property within a defined period of time.   "In the context of collection or destruction of the possessions of people experiencing homelessness that are left unattended in a public space, courts have found that minimally, the municipality must provide advance notice and a meaningful way to collect the property." *Phillips v. City of Cincinnati*, 479 F. Supp. 3d 611, 646 (S.D. Ohio 2020) (collecting cases); *see also Denver Homeless Out Loud v. Denver*, 514 F. Supp. 3d 1278, 1292 (D. Colo. 2021) (concluding that the plaintiffs'

19

Fourteenth Amendment procedural-due-process claim was likely to succeed on the merits in a case brought by homeless people who did not receive notice of an impending encampment sweep until the morning it occurred, giving the plaintiffs "little time to collect and remove their belongings prior to the commencement of the sweeps").

Here, the complaint alleges that County Defendants violated Individual Plaintiffs' procedural-due-process rights by seizing and destroying Individual Plaintiffs' property without providing Individual Plaintiffs (1) adequate or effective notice, (2) an opportunity to be heard, or (3) a pre- or post-deprivation mechanism to challenge or reclaim their property. County Defendants do not present any argument as to their failure to provide notice or an opportunity to be heard.[7] County Defendants argue only that Individual Plaintiffs have a meaningful post-deprivation remedy in the form of Minn. Stat. § 466.02. This statute provides that, subject to certain limitations, "every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function." Minn. Stat. § 466.02. Plaintiffs counter that Minn. Stat. § 466.02 is not an adequate post-deprivation remedy and that meaningful pre-deprivation procedures for encampment sweeps are available but were not used.

"[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of" procedural due process "if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). When

---

[7]    County Defendants appear to suggest that Plaintiffs' belongings were abandoned. This is contrary to the allegations in the complaint, which are accepted as true for the purpose of evaluating a motion to dismiss.

determining whether a procedural-due-process violation has occurred despite the availability of a postdeprivation remedy, "[t]he controlling inquiry is solely whether the state is in a position to provide for predeprivation process." *Id.* at 534. Here, County Defendants do not argue that they were unable to provide predeprivation process or that predeprivation process was impracticable. *See id.* at 533. Therefore, whether Minn. Stat. § 466.02 constitutes an adequate postdeprivation process is not dispositive as to whether Plaintiffs have stated a procedural-due-process claim.

For these reasons, County Defendants' motion to dismiss Plaintiffs' procedural-due-process claim (Count III) as alleged against the County Defendants is denied.

### E.    Substantive Due Process (Count IV)

County Defendants argue that Plaintiffs fail to state a substantive-due-process claim. The substantive-due-process protections of the Minnesota Constitution are co-extensive with those of the United States Constitution. *See State v. Rey*, 905 N.W.2d, 490, 493–94 (Minn. 2018). To state a substantive-due-process claim, a plaintiff must allege both that the government's actions were "conscience-shocking[ ] *and* that the [conduct] violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Karsjens v. Piper*, 845 F.3d 394, 408 (8th Cir. 2017) (quoting *Moran v. Clarke*, 296 F.3d 638, 651 (8th Cir. 2002) (en banc)); *see also Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). Here, Plaintiffs assert fundamental rights to property, privacy and to be safe from state-created dangers.

### 1. Property

County Defendants argue that Plaintiffs' property-related claims are properly analyzed as violations of their right to be free from unreasonable seizure of property and their right to procedural due process, not as violations of Plaintiffs' substantive-due-process rights. "[I]f a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding, in a use of force case, that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims"). Because Plaintiffs' alleged property-related claims are more properly analyzed under an unlawful seizure analysis pursuant to Minnesota's state constitutional analogue to the Fourth Amendment, the Court declines to apply a substantive-due-process analysis.

### 2. Privacy

County Defendants argue that, to the extent that Plaintiffs' substantive-due-process claim is based on privacy, Plaintiffs' claim fails because there is no fundamental right to sleep or erect structures in a public place. Plaintiffs counter that they have a right to privacy in their home, including their encampment tents.

Courts must exercise extreme caution when elevating particular interests to the status of fundamental constitutional rights because recognizing these rights, "to a great

extent, place[s] the matter outside the arena of public debate and legislative action" and risks transforming the Due Process Clause into a court's policy preferences. *Glucksberg*, 521 U.S. at 720. When determining whether a right is fundamental, courts require "a careful description of the asserted fundamental liberty interest." *Id.* at 721 (internal quotation marks omitted). Vague generalities are insufficient. *Chavez v. Martinez*, 538 U.S. 760, 776 (2003).

In their complaint, Plaintiffs allege that they have a constitutionally protected right to privacy in their personal affairs and in their property. Plaintiffs allege that County Defendants' forceful ejection of Individual Plaintiffs and destruction of Individual Plaintiffs' property constitutes an unlawful disturbance of Plaintiffs' private affairs and an invasion of privacy in their belongings. Plaintiffs appear to assert a general right to privacy in their encampments under any circumstances. But these general, vague assertions are not "a careful description of the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 721 (internal quotation marks omitted). And although the right to privacy under the Minnesota constitution is broader than the federal constitutional protections, *State v. Davidson*, 481 N.W.2d 51, 58 (Minn. 1992), Plaintiffs cite no legal authority that recognizes a privacy right to "safely sleep on public land when no alternative exists." Nor has the Court's research identified any.

Therefore, County Defendants' motion to dismiss Plaintiffs' substantive-due-process claim based on privacy interests, as alleged in Count IV of the complaint, is granted.

### 3.   State-Created Danger

Plaintiffs identify no state-created-danger doctrine under Minnesota law.  Even if the federal state-created-danger doctrine applied, Plaintiffs do not allege a state-created danger because inclement weather and the COVID-19 pandemic, although dangerous, were not created by the state.  *See Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005) (holding that substantive due process requires the government to protect individuals "if it created the danger to which the individuals are subjected").   Therefore, County Defendants' motion to dismiss Plaintiffs' substantive-due-process claim based on a state-created danger, as alleged in Count IV of the complaint, is granted.

In summary, Plaintiffs' substantive-due-process claim (Count IV), as alleged against County Defendants, is dismissed in all respects.

### F.   Conversion (Count V)

County Defendants argue that Plaintiffs fail to state a claim for conversion because the complaint includes no allegations that Sheriff Hutchinson or Hennepin County personnel seized or destroyed any of Individual Plaintiffs' personal property.  Plaintiffs counter that County Defendants' actions were a substantial factor in depriving Individual Plaintiffs of the use and possession of their property.

Minnesota law defines conversion as "an act of willful interference with personal property, done without lawful justification by which any person entitled thereto is deprived of use and possession."  *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (internal quotation marks omitted).  "The elements of common law conversion are (1) the plaintiff has a property interest and (2) the defendant deprives the plaintiff of that interest."  *Lassen*

*v. First Bank Eden Prairie*, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994); *accord In re WEB2B Payment Sols., Inc.*, 815 F.3d 400, 408 (8th Cir. 2016).  Here, Individual Plaintiffs' property interests are undisputed.  Accordingly, only the second element—causation—is at issue.  "Causation exists if a defendant's tortious conduct was a substantial factor in bringing about the injury."  *Gits v. Norwest Bank Minneapolis*, 390 N.W.2d 835, 837 (Minn. Ct. App. 1986) (citing *Flom v. Flom*, 291 N.W.2d 914, 917 (Minn. 1980)).

Plaintiffs allege that County Defendants assisted in clearing encampments and that the MPRB stated that it could not have cleared the encampments without County Defendants' assistance.  Such facts are sufficient to plausibly allege that County Defendants' actions were a substantial factor in depriving Individual Plaintiffs of their property interests.  Therefore, County Defendants' motion to dismiss Count V is denied.

## G.    Punitive Damages

County Defendants argue that the complaint fails to state a claim for punitive damages as to their state-law claims for three reasons: (1) state law bars an award of punitive damages against Hennepin County, (2) Plaintiffs fail to plausibly allege that Sheriff Hutchinson's conduct was motivated by evil motive or intent, and (3) Plaintiffs fail to satisfy the requirements of Minn. Stat. §§ 549.191, 549.20.[8]

"[T]he selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type."  *Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp.*

---

[8]    Because the Court has dismissed Plaintiffs' federal-law claims against County Defendants for the reasons addressed in Part II.A. of this Order, County Defendants' arguments as to punitive damages based on federal-law claims are moot.

*L.L.C.*, 635 F.3d 1106, 1108 (8th Cir. 2011) (quoting 5 Wright & Miller, Federal Practice and Procedure: Civil 3d § 1255 at 508–09 (3d ed. 2004)); *see also Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002) (stating that "the demand [for relief] is not itself a part of the plaintiff's claim and so failure to specify relief to which the plaintiff was entitled would not warrant dismissal under Rule 12(b)(6)" (internal citations omitted)); *Laird v. Integrated Resources, Inc.*, 897 F.2d 826, 841–42 (5th Cir. 1990) (asserting that the court has "consistently interpreted [Rule 8(a)(3)] to allow a plaintiff any relief that the pleaded claim supports; requesting an improper remedy is not fatal"); *Schoonover v. Schoonover*, 172 F.2d 526, 530 (10th Cir. 1949) (explaining that "the prayer forms no part of the cause of action, and . . . a pleader will be entitled to the relief made out by the case and stated in the pleadings, irrespective of what is asked for in the prayer").  "The amount of damages to be recovered is based upon the proof, not the pleadings." *Dingxi*, 635 F.3d at 1108–09.

For the reasons addressed above, Plaintiffs have plausibly alleged violations of their state-law rights in Counts I, II, III, and V.  Because the propriety of the relief Plaintiffs seek is irrelevant to evaluating a motion to dismiss, the Court does not address the propriety of the relief Plaintiffs seek.  For these reasons, the Court denies County Defendants' motion to dismiss Plaintiffs' state-law punitive damages claims as to County Defendants.[9]

---

[9] For the same reason, the Court declines to address the County Defendants' argument that the Individual Plaintiffs lack standing to seek prospective relief because that argument pertains to the scope of the relief rather than the viability of Plaintiffs' claims.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that County Defendants' motion to dismiss, (Dkt. 72), is **GRANTED IN PART AND DENIED IN PART** as follows:

1.   Plaintiffs' federal-law claims, as asserted against County Defendants, are **DISMISSED**.

2.   Count IV of Plaintiffs' complaint, as asserted against County Defendants, is **DISMISSED**.

3.   County Defendants' motion to dismiss is **DENIED** in all other respects.

Dated:  September 27, 2021                    s/ Wilhelmina M. Wright
                                             Wilhelmina M. Wright
                                             United States District Judge