UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Patrick Berry et al.,                                    Case No. 20-cv-2189 (WMW/JFD)

               Plaintiffs,

                                         **ORDER**

  v.

Hennepin County et al.,

               Defendants.

---

Before the Court is Defendants Minneapolis Park and Recreation Board (MPRB), MPRB Superintendent Al Bangoura and MPRB Park Police Chief Jason Ohotto's (collectively, MPRB Defendants) motion to dismiss. (Dkt. 140.) For the reasons addressed below, the Court grants in part and denies in part MPRB Defendants' motion to dismiss.

## BACKGROUND

This case arises from the confluence of two significant societal problems—homelessness and the COVID-19 pandemic. The individual plaintiffs in this action are nine individuals experiencing unsheltered homelessness in Hennepin County, Minnesota (Individual Plaintiffs). Plaintiff ZACAH is a private nonprofit organization that assists Minnesota residents on the verge of experiencing homelessness.

Plaintiffs allege that Defendants—Hennepin County, the City of Minneapolis,

MPRB, various county officials and city officials,[1] and unnamed police officers—have conducted "sweeps" during which Defendants have seized and destroyed the property of persons experiencing unsheltered homelessness who live in encampments in Minneapolis public parks.  Plaintiffs allege that Defendants' actions violate Plaintiffs' rights protected by the Fourth and Fourteenth Amendments to the United States Constitution, the Minnesota Constitution and Minnesota law.

On April 8, 2020, Minnesota Governor Tim Walz issued Emergency Executive Order 20-33 (EEO 20-33), which provides that "[e]ncampments should not be subject to sweeps or disbandment by state or local governments, as such sweeps or disbandment increase the potential risk and spread of COVID-19."  On April 29, 2020, Governor Walz issued Emergency Executive Order 20-47 (EEO 20-47), which clarified EEO 20-33's instructions with respect to encampments.  EEO 20-47 states that "both new and existing encampment[s] should not be subject to sweeps or disbandment by state or local governments."  "State or local governments may restrict, limit, or close encampment spaces," however, "[i]f a local government entity is providing sufficient alternate housing, shelter, or encampment space that complies with the Minnesota Department of Health's guidance . . . and the Centers for Disease Control and Prevention's guidance . . . or if an encampment has reached a size or status that is a documented threat to the health, safety, or security of residents."  On May 13, 2020, Governor Walz issued Emergency Executive

---

[1]     These county officials and city officials are Minneapolis Mayor Jacob Frey, Minneapolis Chief of Police Medaria Arradondo, MPRB Superintendent Al Bangoura, MPRB Park Police Chief Jason Ohotto, and Hennepin County Sheriff David Hutchinson.

Order 20-55 (EEO 20-55), reiterating the guidance as to encampments set forth in EEO 20-47.

On June 17, 2020, MPRB, which manages the Minneapolis park system, adopted Resolution 2020-253, declaring Minneapolis parks to be a refuge space for persons experiencing unsheltered homelessness. Approximately one month later, MPRB adopted Resolution 2020-267, which limits the number of Minneapolis parks that can be refuge sites to 20 and limits, through a permitting process, the permissible number of tents located at each site to 25. During August and September 2020, Minneapolis Park Police disbanded one of several Powderhorn Park encampments, along with encampments at Peavy Park, Kenwood Park and Elliot Park.

Plaintiffs' amended complaint advances five claims. Count I alleges that Defendants unlawfully seized Plaintiffs' property, in violation of the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution. Count II alleges that Defendants violated Plaintiffs' right to privacy as protected by the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution. Count III alleges that Defendants violated Plaintiffs' procedural-due-process rights as protected by the Fourteenth Amendment to the United States Constitution and Article I, Section 7, of the Minnesota Constitution. Count IV alleges that Defendants violated Plaintiffs' substantive-due-process rights as protected by the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution. And Count V alleges that Defendants are liable for the conversion of Plaintiffs' property

in violation of Minnesota law.  In an October 29, 2020 Order, this Court denied Plaintiffs' motion for a temporary restraining order because Plaintiffs failed to establish irreparable harm.  In a September 27, 2021 Order, this Court granted Defendants Hennepin County and Sheriff Hutchinson's motion to dismiss Plaintiffs' federal law claims and Plaintiffs' state law substantive-due-process claim.

MPRB Defendants now move to dismiss Plaintiffs' federal law claims and state law substantive-due-process claim.  MPRB Defendants argue that Plaintiffs' complaint fails to state a claim on which relief can be granted and that the municipal officials are subject to qualified immunity in their individual capacities.  *See* Fed. R. Civ. P. 12(b)(1), (6).[2]

## ANALYSIS

A complaint must be dismissed if it fails to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the complaint must allege sufficient facts that, when accepted as true, state a facially plausible claim to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When determining whether the complaint states such a claim, a district court accepts as true all factual allegations in the complaint

---

[2]      Plaintiffs argue that MPRB Defendants' motion to dismiss is procedurally improper because MPRB Defendants have answered Plaintiffs' complaint.  However, "as long as the defense of failure to state a claim has been asserted in the answer, federal courts routinely consider defendants' post-answer motions raising the defense although technically they are no longer Rule 12(b) motions."  *Ali v. Frazier*, 575 F. Supp. 2d 1084, 1089 (D. Minn. 2008) (internal quotation marks omitted).  Because MPRB Defendants raised the defense of failure to state a claim in their answer, the Court considers MPRB Defendants' post-answer motion raising the defense and construes the motion as a Rule 12(c) motion asserting the same argument.  *Id.*  A motion to dismiss for failure to state claim is subject to the same legal standard when brought under Rule 12(b)(6) or Rule 12(c)—the distinction is "purely formal."  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

and draws all reasonable inferences in the plaintiff's favor.  *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).  The factual allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A plaintiff, however, must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.  Legal conclusions that are couched as factual allegations may be disregarded by the district court.  *See Iqbal*, 556 U.S. at 678–79.  The Court addresses, in turn, MPRB Defendants' arguments regarding municipal liability and qualified immunity and whether Plaintiffs' unlawful-seizure claim, procedural-due-process claim and substantive-due-process claim satisfy the Rule 12(b)(6) standard.

## I.      Municipal Liability

The parties dispute whether Plaintiffs have sufficiently pled municipal liability pursuant to 42 U.S.C. § 1983.

Section 1983 provides a civil cause of action against:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983.  A Section 1983 claim against a municipality cannot be based on vicarious liability.  *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  But a municipality may be subject to Section 1983 liability if the inadequate training of its

employees, a municipal policy or an unofficial municipal custom causes a constitutional injury. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (training); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (policy or custom); *see also Bd. of Cnty. Comm'rs*, 520 U.S. at 403–04.

As Plaintiffs have not alleged that their constitutional injury was caused by inadequate training, Plaintiffs' Section 1983 claim against MPRB Defendants necessarily pertains to an official policy or an unofficial custom. *See Corwin v. City of Independence*, 829 F.3d 695, 699–700 (8th Cir. 2016). "Policy and custom are not the same thing." *Id.*

"[A] policy is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (internal quotation marks omitted). "[W]hether an official had final policymaking authority is a question of state law." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (explaining that "[a]uthority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority"). Courts consult applicable municipal charters, codes or ordinances to determine whether an official has policymaking authority. *See Davison v. City of Minneapolis*, 490 F.3d 648, 661 (8th Cir. 2007).

Plaintiffs allege that Bangoura directs MPRB's service areas and implements MPRB policies. Plaintiffs also allege that Ohotto enforces criminal laws and MPRB resolutions and ordinances on Minneapolis park property. In support of their claim that

MPRB Defendants enacted impermissible municipal policies, Plaintiffs attach to their complaint an MPRB resolution and subsequent amendments that vest the superintendent of MPRB with the authority to "restrict, limit, or close encampments based on exigent circumstance." Viewing the facts in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have identified specific policies that authorized Bangoura to carry out encampment sweeps, which Plaintiffs allege Bangoura and Ohotto undertook and enforced. Plaintiffs have alleged sufficient facts to support a municipal-liability claim based on an official policy. The Court, therefore, denies MPRB Defendants' motion to dismiss the complaint for failing to allege facts sufficient to support municipal liability as to MPRB.[3]

The Court also must address the viability of Plaintiffs' allegations against Bangoura and Ohotto in their official capacities as municipal officers. Claims asserted against municipal employees in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell*, 436 U.S. at 690 n.55). A suit against a municipal officer is, therefore, "*not* a suit against the official personally, for the real party in interest is the entity." *Id.* at 166. When the municipal entity for which the officer works is named as a defendant in a lawsuit, "the official capacity claims are redundant and are properly dismissed." *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 264 n.2

---

[3]    Because the Court concludes that Plaintiffs adequately allege municipal liability as to MPRB based on an official policy, the Court need not address whether Plaintiffs also have alleged municipal liability as to MPRB based on an unofficial custom.

(S.D.N.Y. 2006); *accord Wilhelm v. City of Calumet City*, 409 F. Supp. 2d 991, 994 n.1 (N.D. Ill. 2006) (explaining that, in a suit against the city and a city employee, "[t]he official capacity claims are redundant of the claims asserted against the City"); *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 49 (D.D.C. 2005) ("Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources." (internal quotation marks omitted)).  Bangoura and Ohotto are both employees of MPRB, and Plaintiffs assert the same claims against Bangoura and Ohotto that they assert against MPRB.  Plaintiffs' claims against Bangoura and Ohotto in their official capacities are, therefore, dismissed as duplicative of Plaintiffs' claims against MPRB.

## II.    Qualified Immunity

MPRB Defendants also argue that Bangoura and Ohotto, in their individual capacities, are subject to qualified immunity.  Plaintiffs disagree.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  A motion to dismiss based on qualified immunity may be granted "only when the immunity is established on the face of the complaint." *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996) (internal quotation marks

omitted).   To determine whether an official is entitled to qualified immunity, courts consider "(1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013).

Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation marks omitted).   When performing a qualified-immunity analysis, a court assesses the facts as they appeared to the relevant state actors. *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994).   A "clearly established" right does not require a case directly on point. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).   Rather, the court must determine whether the state actor had fair warning that the conduct violated a right. *Id.*   The Supreme Court of the United States has cautioned against defining a "clearly established right" with an excessive degree of generality. *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).   "[C]learly established law must be particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks omitted).

To prove that the law was clearly established when Bangoura and Ohotto allegedly violated Plaintiffs' property, privacy and due-process rights, Plaintiffs "must point to existing circuit precedent that involves sufficiently similar facts to squarely govern the individual defendants' conduct in the specific circumstances at issue" or, if such precedent

does not exist, "present a robust consensus of persuasive authority constituting settled law." *Bus. Leaders in Christ v. Univ. of Iowa*, 991 F.3d 969, 980 (8th Cir. 2021) (internal quotation marks and brackets omitted); *accord Lane v. Nading*, 927 F.3d 1018, 1022 (8th Cir. 2019) (addressing qualified immunity in the context of a motion to dismiss).  Here, Plaintiffs fail to cite, and the Court's research has not identified, either case law from the United States Court of Appeals for the Eighth Circuit or a fulsome consensus of persuasive authority from other jurisdictions that clearly establishes the impermissibility of Bangoura's and Ohotto's actions.

For these reasons, Bangoura and Ohotto, in their individual capacities, are entitled to qualified immunity.  The Court grants MPRB Defendants' motion to dismiss Plaintiffs' claims against Bangoura and Ohotto in their individual capacities.

### III.    Unlawful Seizure of Personal Property (Counts I and II)

MPRB Defendants argue that Plaintiffs fail to state a claim for unlawful seizure of Individual Plaintiffs' personal property in violation of the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution.[4]

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or

---

[4]    Although Plaintiffs split their claim for unlawful seizure of their property into two separate counts in their complaint, the Court discerns no meaningful distinction between the two counts.  The Court, therefore, analyzes these duplicative counts together.

affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  Article I, Section 10, of the Minnesota Constitution similarly provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized." Minn. Const. art. I, § 10.  Minnesota courts "[o]rdinarily . . . analyze federal and state protections guaranteed by the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution as co-extensive." *In re Welfare of M.L.M.*, 781 N.W.2d 381, 384 (Minn. Ct. App. 2010).[5]  When analyzing an alleged unlawful seizure, a district court must determine whether the plaintiff had a reasonable expectation of privacy with respect to the place searched or property seized and whether the search and seizure of the property were reasonable under the circumstances. *See O'Connor v. Ortega*, 480 U.S. 709, 719 (1987).

To prove that a legitimate expectation of privacy was violated by the challenged search and seizure, the plaintiff must establish that (1) the plaintiff "asserted a subjective expectation of privacy" in the place searched or the object seized, and (2) the plaintiff's "subjective expectation is objectively reasonable." *United States v. Kiser*, 948 F.2d

---

[5]     Occasionally Minnesota courts reach conclusions regarding Article I, Section 10, of the Minnesota Constitution that depart from decisions of the Supreme Court interpreting the identical language of the Fourth Amendment.  *State v. Carter*, 596 N.W.2d 654, 657 (Minn. 1999).  The circumstances that warrant such a departure, however, are not present in this case.

418, 423 (8th Cir. 1991). As the parties do not contest that Individual Plaintiffs had a subjective expectation of privacy with respect to their personal belongings, the Court must determine whether Individual Plaintiffs' subjective expectation of privacy was objectively reasonable.

"Determining whether an expectation of privacy is 'legitimate' or 'reasonable' necessarily entails a balancing of interests." *Hudson v. Palmer*, 468 U.S. 517, 527 (1984). A court balances the government's interest in invading an individual's privacy against the individual's privacy interest. *See id.* Individual Plaintiffs allege that they have a protected property interest in their personal belongings. MPRB Defendants have a countervailing interest in disbanding encampments to promote the general welfare, including precautions to prevent the spread of COVID-19 in the midst of a global pandemic and to deter unsafe and unhealthy living conditions.

An individual's right to privacy in the home almost always outweighs the government interest in invading that private domain. *See Kyllo v. United States*, 533 U.S. 27, 31 (2001)*.* A house, whether rented or owned, is indisputably a "home" such that its occupant has a reasonable expectation of privacy therein. *See Chapman v. United States*, 365 U.S. 610, 617 (1961). And a hotel room is akin to a home in which a person has a reasonable expectation of privacy. *See Stoner v. California*, 376 U.S. 483, 490 (1964); *Lustig v. United States*, 338 U.S. 74, 79–80 (1949). Plaintiffs have not identified any legal authority demonstrating that a tent pitched unlawfully on public land is a home such that its owner has an objectively reasonable expectation of privacy. *Cf. United States v. Voice*,

622 F.3d 870, 878 (8th Cir. 2010) (declining to decide whether a person has a reasonable expectation of privacy in unattended closed bags in a public place "because any error in admission of the evidence in question was harmless").

Unlike a house, an apartment or a hotel room, in which a person has a subjective expectation of privacy, Individual Plaintiffs' tents are pitched on public—rather than private—property and have been erected there unlawfully. Taken together, Individual Plaintiffs' unlawful erection of tents on public land paired with MPRB Defendants' strong interest in promoting the general welfare establish that Individual Plaintiffs do not have an objectively reasonable expectation of privacy in their property such that they could not be subject to an encampment sweep that includes the seizure of their personal property. [6]

A temporary deprivation of personal property is different from a permanent deprivation, however. *United States v. Jacobsen*, 466 U.S. 109, 124 (1984). And a "seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the [constitutional] prohibition on unreasonable seizures." *Id.* (internal quotation marks omitted). When "a temporary deprivation of possessory interests [becomes] a permanent one," courts "balance the nature and quality of the intrusion on the individual's [constitutional] interests against

---

[6]     The United States Court of Appeals for the Ninth Circuit's decision holding that a camping tent pitched on a public campground where one is legally permitted to camp is a home, *United States v. Gooch*, 6 F.3d 673, 677–78 (9th Cir. 1993), is not inconsistent with this Court's analysis. Unlike the circumstances here, *Gooch* involved a public space intended for camping and an individual who was camping in that location in accordance with the law.

the importance of the governmental interests alleged to justify the intrusion." *Id.* at 125 (internal quotation marks omitted). A permanent deprivation is permissible when it is necessary to achieve the government's permissible ends. *Id.* (finding permissible the destruction of powder in order to carry out a field test for contraband). Here, MPRB Defendants' interest is in promoting the general welfare—keeping individuals safe and preventing the spread of COVID-19. Individual Plaintiffs' countervailing interest is in retaining or reclaiming possession of their personal property, including important documents and irreplaceable personal effects. Taking Individual Plaintiffs' allegations as true, as required when analyzing a motion to dismiss, MPRB Defendants could have achieved their legitimate public welfare goals if they had cleared the homeless encampments without permanently depriving Individual Plaintiffs of their personal property by destroying that property.

For these reasons, Individual Plaintiffs have plausibly alleged a violation of their right to be secure against the unreasonable seizure of their property, pursuant to the Fourth Amendment and Article I, Section 10, of the Minnesota Constitution. The Court, therefore, denies MPRB Defendants' motion to dismiss Plaintiffs' unlawful-seizure claims (Counts I and II), as alleged against MPRB Defendants.

## IV.    Procedural Due Process (Count III)

MPRB Defendants argue that "the law of the case" dictates that the Court must hold that Individual Plaintiffs fail to state a procedural-due-process claim. This argument is unavailing. The Court's September 2021 Order did not address Individual Plaintiffs'

allegations and claims against MPRB Defendants.  The September 2021 Order addressed only Individual Plaintiffs' allegations and claims against the County Defendants.

"The due process protection provided under the Minnesota Constitution is identical to the due proces[s] guaranteed under the Constitution of the United States." *State v. Krause*, 817 N.W.2d 136, 144 (Minn. 2012) (alteration in the original) (internal quotation marks omitted).  Procedural-due-process claims involve a two-step analysis.  A court first determines whether the plaintiff was deprived of a protected liberty or property interest and, if so, the court determines whether government officials followed constitutionally sufficient procedures.  *Jenner v. Nikolas*, 828 F.3d 713, 716 (8th Cir. 2016) (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)).  "Protected liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by state law or policies."  *Id.*  The focus of a procedural-due-process claim is not on the merits of a deprivation, rather, it is "on whether the State circumscribed the deprivation with constitutionally adequate procedures."  *Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998).  Here, it is undisputed that Individual Plaintiffs have a property interest in their personal belongings.  The disputed issue before the Court is whether MPRB Defendants provided Individual Plaintiffs with a constitutionally adequate process before depriving Individual Plaintiffs of their property.

As a general rule, "individuals must receive notice and an opportunity to be heard before the Government deprives them of property."  *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993).  Courts analyzing claims with similar facts have

concluded that the process may include notice, the provision of storage for certain items and the ability to reclaim property within a defined period of time.  "In the context of collection or destruction of the possessions of people experiencing homelessness that are left unattended in a public space, courts have found that minimally, the municipality must provide advance notice and a meaningful way to collect the property." *Phillips v. City of Cincinnati*, 479 F. Supp. 3d 611, 646 (S.D. Ohio 2020) (collecting cases); *accord Denver Homeless Out Loud v. Denver*, 514 F. Supp. 3d 1278, 1292 (D. Colo. 2021) (concluding that the plaintiffs' Fourteenth Amendment procedural-due-process claim was likely to succeed on the merits in a case brought by homeless people who did not receive notice of impending encampment sweeps until the morning the sweeps occurred, giving the plaintiffs "little time to collect and remove their belongings prior to the commencement of the sweeps").

Here, Plaintiffs allege that MPRB Defendants violated Individual Plaintiffs' procedural-due-process rights by seizing and destroying Individual Plaintiffs' property without providing Individual Plaintiffs (1) adequate or effective notice, (2) an opportunity to be heard, or (3) a pre- or post-deprivation mechanism to challenge or reclaim their property.  MPRB Defendants do not specifically address the adequacy of their notice, their failure to provide Individual Plaintiffs with an opportunity to be heard, or their failure to provide a means by which Individual Plaintiffs could have reclaimed their property. MPRB Defendants nonetheless move to dismiss Individual Plaintiffs' procedural-due-process claims.

"[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of" procedural due process "if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). When determining whether a procedural-due-process violation has occurred despite the availability of a postdeprivation remedy, "[t]he controlling inquiry is solely whether the state [was] in a position to provide for predeprivation process." *Id.* at 534. Here, MPRB Defendants do not argue that they were unable to provide predeprivation process, nor do they contend that predeprivation process was impracticable. *See id.* at 533. Plaintiffs also allege sufficient facts to support their claim that MPRB Defendants' notice was inadequate. For these reasons, the Court denies MPRB Defendants' motion to dismiss Plaintiffs' procedural-due-process claim (Count III), as alleged against MPRB Defendants.

## V.     Substantive Due Process (Count IV)

The parties dispute whether Plaintiffs have stated a substantive-due-process claim. The substantive-due-process protections of the Minnesota Constitution are co-extensive with those of the United States Constitution. *See State v. Rey*, 905 N.W.2d 490, 493–94 (Minn. 2018). To state a substantive-due-process claim, a plaintiff must allege both that the government's actions were "conscience-shocking[ ] *and* that the [conduct] violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Karsjens v. Piper*, 845 F.3d 394, 408 (8th Cir. 2017) (internal quotation marks omitted); *accord Washington v. Glucksberg*, 521 U.S. 702, 720–21

(1997).  Here, Plaintiffs assert fundamental rights to property, privacy and to be safe from state-created dangers.

### A.      Property

MPRB Defendants contend that Plaintiffs' property-related substantive-due-process claims are best analyzed as unlawful seizures.  "[I]f a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding, in a use-of-force case, that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims").  The Court agrees.  Because Plaintiffs' property-related claims are more properly analyzed under an unlawful-seizure analysis pursuant to the Fourth Amendment and Minnesota's state constitutional analogue to the Fourth Amendment, the Court declines to apply a substantive-due-process analysis to Plaintiffs' property-related claims.

### B.      Privacy

To the extent that Plaintiffs' substantive-due-process claim is based on privacy, MPRB Defendants argue, Plaintiffs' claim fails because there is no fundamental right to sleep or erect structures on public lands.  Plaintiffs respond that they have a right to privacy in their home, which includes their encampment tent.

As this Court observed in its September 2021 Order, courts must exercise extreme caution when elevating particular interests to the status of fundamental constitutional rights because recognizing these rights, "to a great extent, place[s] the matter outside the arena of public debate and legislative action" and risks transforming the Due Process Clause into a court's policy preferences. *Glucksberg*, 521 U.S. at 720. When determining whether a right is fundamental, courts require "a careful description of the asserted fundamental liberty interest." *Id.* at 721 (internal quotation marks omitted). Vague generalities are insufficient. *Chavez v. Martinez*, 538 U.S. 760, 776 (2003).

Plaintiffs allege that they have a constitutionally protected right to privacy in their personal affairs and in their property and that MPRB Defendants' forceful ejection of Individual Plaintiffs and destruction of Individual Plaintiffs' property constitutes both an unlawful disturbance of Plaintiffs' private affairs and an invasion of privacy as to their belongings. Plaintiffs' allegations appear to assert a general right to privacy in their encampments, regardless of the circumstances. But such general and vague assertions are not "a careful description of the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 721 (internal quotation marks omitted). Although the right to privacy under the Minnesota constitution is broader than the federal constitutional protections, *State v. Davidson*, 481 N.W.2d 51, 58 (Minn. 1992), Plaintiffs' argument nonetheless is deficient. Plaintiffs cite no legal authority that recognizes a privacy right to "safely sleep on public land when no alternative exists." And the Court's research has not identified any.

The Court grants MPRB Defendants' motion to dismiss Plaintiffs' substantive-due-process claim based on privacy interests, as alleged in Count IV of the complaint.

### C.    State-Created Danger

When MPRB Defendants forcefully ejected Individual Plaintiffs from their encampment tents and destroyed Individual Plaintiffs' personal property, Plaintiffs allege, MPRB Defendants subjected Individual Plaintiffs to a state-created danger.  In response, MPRB Defendants contend that they conducted encampment sweeps to remedy health and safety risks posed by the encampments related to inclement weather and transmission of COVID-19.  Both inclement weather and the COVID-19 pandemic, although dangerous, were not created by the state.  Any claim advanced by Plaintiffs under the federal state-created-danger doctrine, therefore, necessarily fails.  *See Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005) (holding that substantive due process requires the government to protect individuals "if it created the danger to which the individuals are subjected").  Accordingly, the Court grants MPRB Defendants' motion to dismiss Plaintiffs' substantive-due-process claim based on a state-created danger, as alleged in Count IV of the complaint.[7]

In light of its analysis, the Court grants MPRB Defendants' motion to dismiss Plaintiffs' substantive-due-process claim (Count IV), as alleged against MPRB Defendants, in all respects.

---

[7]    Plaintiffs advance no argument as to the state-created-danger doctrine under Minnesota law.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants Minneapolis Park and Recreation Board (MPRB), MPRB Superintendent Al Bangoura and Park Police Chief Jason Ohotto's motion to dismiss, (Dkt. 140), is **GRANTED IN PART AND DENIED IN PART** as follows:

1.      Count IV of Plaintiffs' complaint, as asserted against MPRB Defendants, is **DISMISSED**.

2.      Plaintiffs' claims against MPRB Superintendent Al Bangoura and Park Police Chief Jason Ohotto, in their individual and official capacities, are **DISMISSED**.

3.      MPRB Defendants' motion to dismiss is **DENIED** in all other respects.


Dated:  August 19, 2022                    s/Wilhelmina M. Wright
                                           Wilhelmina M. Wright
                                           United States District Judge