## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Patrick Berry, et al.,                                    Case No. 20-cv-2189 (WMW/JFD)

                    Plaintiffs,

v.                                                                    **ORDER**

Hennepin County, et al.,

                    Defendants.

        This matter is before the Court on Plaintiffs' Motion to Compel Interrogatory
Responses and 30(b)(6) Testimony from Defendant Minneapolis Park & Recreation Board
(Dkt. No. 188) and Plaintiffs' Motion to Compel Production of Documents, Interrogatory
Responses, and 30(b)(6) Testimony from Defendants City of Minneapolis, Minneapolis
Mayor Jacob Frey, and former Minneapolis Chief of Police Medaria Arradondo (Dkt. No.
195). The Court held a hearing on the motions on December 12, 2022. Clare Diegel and
Rebecca Stillman, Esqs., appeared on behalf of Plaintiffs. Sharda Enslin and Kristin Sarff,
Esqs., appeared on behalf of the City of Minneapolis, Minneapolis Mayor Jacob Frey, and
former Minneapolis Chief of Police Medaria Arradondo ("the City"). Alana Mosley and
Ann Walther, Esqs., appeared on behalf of the Minneapolis Park & Recreation Board ("the
MPRB").

        Fact discovery closes on March 30, 2023. In the interest of expediency, the Court
will not chronicle the factual and procedural background of this case here, but will proceed

directly to the discovery requests and responses at issue, including relevant facts as needed in the discussion of each request and response.

## I.      Plaintiffs' Motion to Compel Against the City of Minneapolis

### A.      General Legal Standards

Federal Rule of Civil Procedure 26(b)(1) establishes the scope and limitations of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The party seeking the discovery must meet a threshold burden to show relevance. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021). "Once the party seeking the discovery has made a threshold showing of relevance, the court generally looks to the party resisting discovery to show specific facts demonstrating lack of relevancy or undue burden." *Baker v. Cenlar FSB*, No. 20-CV-0967 (JRT/HB), 2021 WL 2493767, at *3 (D. Minn. June 18, 2021).

Rule 26 also requires information sought in discovery to be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Factors important to the proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

A court may limit discovery that would otherwise be allowed under the rules if

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

### B.     Electronically Stored Information Postdating 2021

Plaintiffs seek electronically stored information ("ESI") postdating 2021 in response to several discovery requests.[1] Plaintiffs also ask the Court to preemptively order the City to provide deposition testimony about documents and information from 2022.

The Court denies the request for ESI postdating 2021.[2] The initial Pretrial Scheduling Order issued in October 2022 established March 31, 2022 as the deadline for the substantial completion of document production. (Dkt. No. 130.) In April 2022, the Court extended the substantial-completion deadline to September 30, 2022, with an express clarification:

> "Substantial completion of document production" means that all relevant sources of documents have been reviewed, responsive documents have been identified and reviewed, and those documents have been disclosed; the parties have the documents they need to fully understand the facts of this case, conduct depositions, and engage in other, non-documentary discovery as well as motions practice and trial. *While all parties and the Court*

---

[1] According to Plaintiffs, the discovery requests related to this issue are Document Requests 17–19 and 23–27; Interrogatories 1, 2, 4, 6–12, 15, 16, 18, and 20; and Request for Admission 8.

[2] Plaintiffs describe the ESI at issue as emails, text messages, and body worn camera ("BWC") footage. (Pls.' Mem. Supp. at 6, Dkt. No. 197.) The Court's discussion in Part I.B pertains to emails and ESI other than text messages or BWC footage. As discussed more fully below, the City has agreed to produce BWC footage from every encampment closure from October 20, 2021, through the duration of the litigation. The Court has already denied Plaintiffs' motion to compel text messages. (*See* Ct. Mins., Jan. 11, 2023, Dkt. No. 255.)

> *acknowledge that a few "straggler" documents will be found and turned over after September 30, 2022, it should not be the case, after September 30, 2022, that there are sources of responsive documents still to be searched, or found documents that still need to be reviewed for responsiveness.*

(Dkt. No. 166 at 2) (emphasis added). The primary justification for extending the substantial-completion deadline was to accommodate an extensive search by the City for ESI and documents responsive to Plaintiffs' first set of discovery requests. Those requests either included a timeframe of January 1, 2020 to *October 20, 2021*, or related to events that occurred in 2020 or *2021*. Given this two-year timeframe, the number and scope of discovery requests for which ESI would need to be produced, and the months of negotiations of search terms and custodians, the City and Plaintiffs alike anticipated that the resulting production would be voluminous[3] and would take months to gather, review, and produce. Thus, the Court and the parties well understood in April 2022—when the substantial-completion date was extended—that it would take the City until September 30, *2022*, to search for, review, and produce ESI from 2020 and 2021.

It was further understood by the parties and the Court that the substantial-completion deadline was extended to September 30, 2022, specifically to allow for the production of ESI responsive to discovery requests that were pending at the time of the extension—not new discovery requests. But in May 2022, Plaintiffs served a second set of document requests that lengthened the timeframe not just through 2022, but through the duration of the litigation. The Court considers those requests—insofar as they call for

---

[3] The City represents that it has gathered and reviewed tens of thousands of emails for the years 2020 and 2021.

additional searches for, review of, and production of ESI—to violate not only the language of the substantial-completion deadline set in the Amended Pretrial Scheduling Order[4] but also the understanding and well-settled expectations of the Court and the parties.

The Court also agrees with the City that Plaintiffs' discovery requests seeking ESI postdating 2021 are unduly burdensome. The process of negotiating and conducting *one* round of searching for, reviewing, and producing ESI took months. The parties did not discuss or agree on ongoing searches for ESI.

Nevertheless, the City has agreed to produce relevant and responsive documents postdating 2021 that can be located without ongoing ESI searches, specifically (1) policies, procedures, and regulations for 2022; (2) body worn camera ("BWC") footage from every encampment closure from October 20, 2021, through the duration of the litigation; and (3) a supplemental response to Interrogatory 2 to provide on ongoing list of encampment closures. The Court finds this compromise reduces any prejudice to Plaintiffs from the temporal restriction on ESI.

In light of all of the above, the Court finds that a search for ESI postdating 2021 would be unduly burdensome and not proportional to the needs of the case. Plaintiffs' motion is denied to that extent.

Finally, to the extent the City asserted a blanket objection to providing deposition testimony about 2022, it is overruled. Plaintiffs may propose deposition topics covering policies, procedures, regulations, BWC footage, and encampment closures in 2022 (and

---

[4] Plaintiffs have not filed a motion to modify the substantial-completion deadline or any other provision of the Amended Scheduling Order.

later), as long as preparing for the deposition will not require the City to search for ESI postdating 2021.

### C.     Interrogatories 9 and 10

Through Interrogatory 9, Plaintiffs asked the City to "[i]dentify the weekly number of shelter spaces available in Minneapolis from January 1, 2020 to the present and the method used to calculate that number." (Diegel Decl. Ex. K, Dkt. No. 201-2.) Interrogatory 10 asked the City to "[i]dentify the current estimate of the number of homeless persons who can be housed in shelters, apartments or other facilities furnished by, or available in, the City of Minneapolis on a nightly basis." (*Id.*) The City objected on several grounds but also provided the following substantive response to both interrogatories: "Defendants rely on Hennepin County and Adult Shelter Connect to provide information on shelter space availability on any given date at any given time. The information from Hennepin County and the Adult Shelter Connect is equally accessible and known to the Plaintiffs." (*Id.*)

The Court denies Plaintiffs' motion to compel a supplemental response to Interrogatories 9 and 10. As the City informed Plaintiffs in its response, the City relies on Hennepin County and the organization Adult Shelter Connect for information on shelter space availability. The City later clarified to Plaintiffs that it does not operate shelters or generate any independent shelter data. Moreover, the information from Hennepin County and Adult Shelter Connect is equally accessible to Plaintiffs. Indeed, Plaintiffs have already received the daily aggregated data reports from Hennepin County, which does receive data from local shelters. Accordingly, a supplemental response from the City would not be proportional to the needs of the case.

### D.   Interrogatories 4–6, 12, and 20

Interrogatories 4–6 asked the City to:

- "Identify any protocols, procedures, or policies adopted by you from January 1, 2016 to the present regarding the handling of or dealing with homeless individuals living in public spaces in Minneapolis." (Diegel Decl. Ex. J, Dkt. No. 201-1);

- "Identify any protocols, procedures, or policies you adopted on implementing Minnesota Executive Orders 20-33, 20-47, and 20-55 specifically relating to the handling of or dealing with homeless individuals." (*Id.*); and

- "Identify any protocols, procedures, or policies in existence or adopted by you from January 1, 2016, to the present on the use of chemical irritants on individuals." (*Id.*)

The City objected to the interrogatories as overly broad, unduly burdensome, unlikely to lead to the discovery of admissible evidence, vague, and ambiguous. The City also "direct[ed] Plaintiffs to Defendants' document production," pursuant to Federal Rule of Civil Procedure 33(d), but did not identify which of the 24,000 documents produced by the City contained responsive information.

A party may answer an interrogatory by producing business records:

If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

7

> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d). "To answer an interrogatory, a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived." *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, No. 09-cv-1091 (JNE/JSM), 2012 WL 12895643, at *17 (D. Minn. Jan. 3, 2012).

The Court grants this aspect of Plaintiffs' motion to compel. The City did not specify the responsive documents in sufficient detail to enable Plaintiffs to locate and identify the documents as readily as the City could. The City simply pointed to its entire production. The City's objections (which the City did not maintain in its opposition to the motion) are overruled, and the City must identify by Bates number the documents responsive to Interrogatories 4–6.

Interrogatory 12 asked the City to [d]escribe the orders and training given to Minneapolis City employees and Minneapolis Police Department officers for clearing encampments, including, but not limited to, how they should work with other law enforcement organizations, clear crowds, determine the status of property (e.g., whether it is hazardous, abandoned, etc.), and permit individuals to safely gather their personal property." (Diegel Decl. Ex. E, Dkt. No. 201-1.) Relatedly, Interrogatory 20 asked the City to "[i]dentify all agents, employees, or representatives of the City of Minneapolis who authorized any City personnel, staff, agents, or representatives to be present at each of the encampment closures identified in your response to Interrogatory No. 2." (*Id.*)

8

The City raised multiple objections and provided narrative responses subject to the objections. Part of the City's response referred Plaintiffs to "Defendants' document production, including but not limited to the production of Defendants' encampment closure timelines, demobilization plans and action details." (*Id.*)

Though the City's responses came closer to specifying the records to be reviewed than its response to Interrogatories 4–6, there are no documents titled "encampment closure timelines," "demobilization plans," or "action details." The City's objections (which the City did not maintain in its opposition to the motion) are overruled, and the City must identify by Bates number the documents responsive to Interrogatories 12 and 20.

### E.    Interrogatories 19 and 23

Plaintiffs asked the City to "[i]dentify all documents that exist" that (1) relate "to the inventory of the property cleared from . . . encampments" (Interrogatory 19) and (2) "support a finding that criminal activity was lower after sweeps of encampments" (Interrogatory 23). (Diegel Decl. Ex. N, Dkt. No. 201-2.) In response to both interrogatories, the City objected on the grounds of overbreadth and undue burden, and stated the "information is equally available to Plaintiffs." (*Id.*)

The Court agrees that the language asking Defendants to identify "all documents that exist" is too broad. Interrogatories 19 and 23 essentially asked the City to itemize its document production into categories specified by Plaintiffs, and Plaintiffs have provided no authority requiring the City to do so. Interrogatories 19 and 23, which straightforwardly asked the City to categorize its document production, are distinguishable from Interrogatories 4–6, 12, and 12, which asked the City to "describe" or "identify"

information, but the City opted to respond by specifying business records under Rule 33(d). The City need not respond further to Interrogatories 19 or 23.

### F.     Interrogatory 17

Interrogatory 17 stated: "Prior to the sweep of the encampments listed in your response to  Interrogatory No. 2, describe the process you created to support encampment residents packing and moving their property to a safe, alternative shelter." (Diegel Decl. Ex. N.) The City objected to the interrogatory as overly broad, unduly burdensome, and unlikely to lead to the discovery of admissible evidence, but responded, "individuals were generally given between two to six hours to pack their belongings and move off site." (*Id.*)

Plaintiffs' motion to compel a further response is denied. The City answered the interrogatory, albeit perhaps not with the level of detail Plaintiffs would like. But the City will be bound to this response, which presumably conveyed the City's process.

### G.     Requests for Production 1–4 and 6–16, and Interrogatory 25

Plaintiffs contend that the City agreed to supplement its answers to Requests for Production 1–4 and 6–16 and Interrogatory 25, and the City agreed at the hearing that it would supplement if additional responsive documents or information were located. Accordingly, the Court orders the City to supplement its discovery responses to that extent.

### H.     Deposition Topics 1 and 2

The Rule 30(b)(6) deposition notice served on the City contained 41 topics. (*See* Diegel Decl. Ex. R, Dkt. No. 201-2.) Topic 1 asked for testimony about the City's efforts to identify and produce documents for Defendant's initial disclosures in this case and to produce responses to Plaintiffs' document requests, requests for admission, and

10

interrogatories to the City of Minneapolis, including: the databases and sources searched; how they were searched; individuals from whom records were requested or manually collected; who conducted the searches; and when the searches were conducted. (*Id.*) The City objected to Topic 1 as an improper topic for a Rule 30(b)(6) deposition, and as seeking privileged or work-product protected information. (*Id.*)

A deposition topic designed to discover a party's "document retention and discovery practices" is improper when the party's document retention and discovery practices are not at issue in the lawsuit. *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, No. 13-cv-1686 (JRT/FLN), 2015 WL 12778845, at *3 (D. Minn. June 12, 2015), *obj'ns overruled*, 2017 WL 9325026 (D. Minn. Oct. 12, 2017). Such "discovery on discovery" must be relevant to a claim or defense in the case. *Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*, No. 12-CV-2706 (MJD/LIB), 2014 WL 10714011, at *14 (D. Minn. Dec. 5, 2014) (further noting that the deposition topic "treads dangerously close to encroaching on attorney work product privilege"). The City's document retention and discovery practices are not at issue in this litigation, and Plaintiffs have not shown why the testimony would otherwise be relevant. Furthermore, Plaintiffs' legal authority is inapposite. *See Cooley v. Target Corp.*, No. 20-CV-2152 (DWF/DTS), 2021 WL 6882660, at *7 (D. Minn. Sept. 17, 2021) (allowing discovery-on-discovery deposition topics in part because the party to be deposed  based its opposition to the motion to compel on an incorrect premise); *Fair v. Royal & Sun Alliance*, 278 F.R.D. 465, 475 (D.S.D. 2012) (allowing deposition testimony on whether discovery production "was complete or incomplete" and because the

defendant-insurer's false responses could be relevant to bad faith). The City need not provide deposition testimony on Topic 1.

Furthermore, the City has already described its efforts to gather, review, and produce discovery to Plaintiffs in great detail. The City ran an initial test search-and-production of documents to ensure that its search and production methods were acceptable to Plaintiffs. When Plaintiffs told the City that custodial metadata was the only problem with the City's production, the City immediately provided the metadata. Plaintiffs' counsel's ESI manager has represented that he is experienced and familiar with the software and services used by the City. The City has identified the individuals who provided information to answer Plaintiffs' interrogatories. Thus, deposition testimony about the City's efforts to gather, review, and produce discovery would largely be duplicative of information Plaintiffs already have.

Deposition Topic 2 asked for testimony related to the facts, information, and documents mentioned in declarations that the City has submitted to the Court and in the City's discovery responses. (*See* Diegel Decl. Ex. R, Dkt. No. 201-2.) As to the declarations, Plaintiffs explain they wish to confirm whether the City will adopt the statements in the declarations or whether it considers the statements to be solely those of the individual declarants. Plaintiffs can obtain the City's position without a Rule 30(b)6 deponent having to prepare to testify about all of the facts, information, and documents mentioned in the declarations. Plaintiffs can simply ask the deponent whether the City adopts the statements in the declarations or considers the statements to be solely those of the individual declarants, or Plaintiffs can propound an interrogatory to that effect.

Regarding the requested testimony on discovery responses, Plaintiffs explain they wish to clarify some of the language in the responses. For example, in response to Interrogatory 24, which asked for information about the City's third-party vendors, the City included the phrase "[a]mong other things" in its response. (Diegel Decl. Ex. N, Dkt. No. 201-2.) Plaintiffs want to ask the deponent what "other things" the City did. Plaintiffs also want to ask the City what it meant by "threats to health, safety and security posed by the encampment" in its response to Interrogatory No. 21. (*Id.*) Again, the Court finds Topic 2, as worded, unnecessarily broad and burdensome. Plaintiffs have served 25 interrogatories and 83 requests for admission on the City. If Plaintiffs have questions about particular words or phrases the City used in its responses, Plaintiffs' counsel should meet and confer with the City's counsel and request a supplemental interrogatory response. Having to prepare a deponent to explain the meaning of potentially any word or phrase in the City's discovery responses is overly burdensome.

Accordingly, the City's overbreadth and burdensomeness objections are sustained,[5] and the City need not provide testimony for Topic 2 (other than a response to the potential question of whether the City will adopt the statements in the declarations or considers the statements to be solely those of the individual declarants).

I.     **Deposition Topic 25**

Deposition Topic 25, as revised, sought testimony about the City's

communications about the individual Plaintiffs as related to their status as
unhoused individuals and recipients of public benefits, and ZACAH,

---

[5] The Court considers the City's objections to the original Topic 1 to apply also to the revised Topic 2, to the extent Plaintiffs have suggested otherwise.

> including but not limited to, communications with and among the City, as
> well as any or all other agents, employees, representatives, or personnel of
> the City, but excluding any attorney-client privileged communications.

(Diegel Decl. Ex. S, Dkt. No. 201-2.) The City primarily objects to the "including but not

limited to" language. This objection is well taken. The language is overly broad, and the

phrase should be omitted from the topic. Thus, the City should prepare a deponent to testify

about the City's communications about the individual Plaintiffs as related to their status as

unhoused individuals and recipients of public benefits, and ZACAH, *specifically*

communications with and among the City, as well as any or all other agents, employees,

representatives, or personnel of the City, but excluding any attorney-client privileged

communications.

### J.      Deposition Topic 28

Deposition Topic 28, as revised, sought the following testimony:

> From 2018 to the present, Defendant's knowledge of: availability of shelter
> beds, for single and family units, in Minneapolis or Hennepin County, as well
> as the ability of shelters to store personal property, hours of operation, right-
> of-return policies, distances from encampments, compliance of shelters with
> COVID-19 procedures, CDC guidance, Minnesota Department of Health
> guidance, and any other pandemic guidance, and standard shelter restrictions,
> such as proof of identification, religious affiliation, sobriety, mental health
> history, criminal history, pets, gender identity, monetary barriers (e.g., pay-
> to-stay shelters, board and lodge facilities), familial status, or relationship
> status.

(Diegel Decl. Ex. S.) The City objected on grounds of overbreadth, burdensomeness,

proportionality, and relevance. Plaintiffs argue that the area of inquiry covers a central

issue: whether safe, alternative shelter options existed after an encampment was cleared.

The Court agrees that the City's knowledge of whether safe, alternative shelters existed for

14

encampment residents after a sweep is relevant and proportional to the needs of the case.
If the City's knowledge includes the subject areas listed in the interrogatory, then it should
testify accordingly. But the City is not required to learn information it does not already
know.

### K.      Plaintiffs' Request for Expenses and Fees

Plaintiffs request an award of fees and costs pursuant to Federal Rule of Civil
Procedure 37(a)(5). If a motion to compel discovery is granted in part and denied in part,
as here, a court may "apportion the reasonable expenses for the motion." Fed. R. Civ. P.
37(a)(5)(A). The Court finds, however, that apportioned expenses are not warranted under
the circumstances. The parties' various positions were not unjustified, and all counsel have
been professional and collegial. Consequently, Plaintiffs' request for an award of expenses
and fees from the City is denied.

## II.      Plaintiffs' Motion to Compel Against the MPRB

### A.      Interrogatory 12

Interrogatory 12 asked the MPRB to "[d]escribe the orders and training given to
MPRB employees and Park Police officers for clearing encampments, including, but not
limited to, how they should work with other law enforcement organizations, clear crowds,
determine the status of property (e.g., whether it is hazardous, abandoned, etc.) and permit
individuals to safely gather their personal property." (Nascimento Decl. Ex. E, Dkt. No.
192-1.) The MPRB objected but provided the following substantive answer:

> [D]uring the 2020 disbandment of encampments, Park Police supported the
> work of maintenance/sanitation by providing security during clean-up
> operations. Most verbal orders given to Park Police officers and/or

maintenance staff, were operational in nature (i.e., work direction) and this often occurred during encampment sweeps. Defendant identifies—but does not limit to—the MPRB's body-worn camera footage as responsive. Today, Park Police are requested much less frequently to assist with encampments; instead, the Community Connections and Violence Prevention (CCVP) staff notify individuals attempting to live on MPRB property that they must vacate the property. These individuals must take their belongings with them, and after they have packed up, the MPRB's maintenance staff will clean up any debris or abandoned property left behind.

(*Id.*) The interrogatory did not include a timeline, so the MPRB informed Plaintiffs in its response that it was providing information for the 2020 encampment clearings. The MPRB (and the City) also produced BWC footage containing the actual verbal orders that were given during each sweep. Finally, the MPRB produced the MPRB's Park Police Department's special order regarding use of force (Special Order 2020-04), which also covers training for clearing crowds and encampments.

Plaintiffs contend that the MPRB's answer is deficient in part because it was limited to Park Police, maintenance and sanitation staff, and Community Connections and Violence Prevention (CCVP). Plaintiffs note that other MPRB employees, specifically, more than 60 employees from the Asset Management Department, attended "Homeless Encampment Cleanup Training" in August of 2020. The MPRB explains that the Asset Management Department is responsible for park maintenance and sanitation, and suggests that Plaintiffs would have known that if they would have fully met and conferred on the response. In any event, the MPRB's response covered "the work of maintenance/sanitation" and "maintenance staff," and no supplementation is warranted.

Plaintiffs next contend supplementation is necessary because the MPRB imposed an arbitrary timeframe to 2020. The MPRB concedes that its response was limited to 2020

and does not argue why later information should be withheld. Accordingly, the Court will order the MPRB to supplement its response to Interrogatory 12 with responsive information from 2021 and 2022.

Plaintiffs also request that the MPRB supplement its response to Interrogatory No. 12 to include the substance of all orders given to MPRB employees and Park Police officers for clearing encampments, including verbal orders. The Court finds this goes beyond the scope of an interrogatory; Plaintiffs' counsel admitted as much at the hearing when counsel argued that affidavits would be needed for the MPRB to answer the interrogatory as fully as Plaintiffs want.

Finally, Plaintiffs take issue with the MPRB's reference to BWC footage as responsive, particularly the "but does not limit to" language. The Court agrees that the MPRB should remove that language from the supplemental response. As for any Rule 33(d) violation, the MPRB did not direct Plaintiffs to its entire document production, but to the BWC footage. Plaintiffs know the dates and times of the sweeps and can locate the relevant BWC footage as easily as the MPRB could. The MPRB also did not rely entirely on BWC footage, but also produced the MPRB's Park Police Department's special order regarding use of force.

## B.    Interrogatory 13

Through Interrogatory 13, Plaintiffs asked the MPRB how many times, since Executive Order 20-47 was issued, the MPRB publicly warned that an encampment would be closed or swept, but then it was not. (Nascimento Decl. Ex. A, Dkt. No. 192-1.) The MPRB initially answered, "All encampments that were notified of the need to vacate were

either voluntarily disbanded or were demobilized during the pendency of Executive Order 20-47 and its successor, Executive Order 20-55." (*Id.*) The MPRB concedes that a better answer would have been "never" and offers to amend its response accordingly.

The Court will permit the MPRB to supplement its response, as offered. The MPRB explained at the hearing its position that every encampment that was noticed was swept. To the extent Plaintiffs disagree with that, the purpose of a motion to compel is not to compel a party to answer as its opponent wishes. Notably, Interrogatory 13 did not ask how much time passed between each notification and the closure or sweep of a camp, or how often a sweep or closure did not occur on the same day as a notification.

### C.   Interrogatory 17

Interrogatory 7 asks for the process created by the MPRB "to support encampment residents packing and moving their property to a safe, alternative shelter." (Nascimento Decl. Ex. A, Dkt. No. 192-1.) The MPRB responded that it provided transportation to shelters but did not describe the process for *packing* or state that there was no such process. The Court agrees with Plaintiffs that the MPRB must supplement its answer to address packing. If there was no process to support packing, the MPRB must say so. The MPRB's later supplementation of its response to refer generally to BWC footage is insufficient.

### D.   Interrogatory 18

Interrogatory 18 sought information about the process created by the MPRB "to challenge and report the conduct of MPRB staff before, during and after the sweep." (Nascimento Decl. Ex. A, Dkt. No. 192-1.) The MPRB responded, "Any person can file a complaint with the MPRB about alleged misconduct of MPRB staff." (*Id.*) Through their

motion to compel, Plaintiffs seek details such as how a complaint is filed, with whom, what happens next, whether the complainant should expect to be interviewed, and who the decisionmaker is. It may be that there is an additional or more comprehensive process beyond the filing of a complaint, but that was the MPRB's response, and the MPRB will be held to it. The Court denies the motion to compel as to Interrogatory 18.

### E.  Deposition Topics 1 and 2

Deposition Topics 1 and 2 of the Rule 30(b)(6) Notice served on the MPRB are essentially the same as Topics 1 and 2 of the Rule 30(b)(6) Notice served on the City. (*See* Nascimento Decl. Ex. G, Dkt. No. 192-1.) The Court incorporates by reference its discussion of and ruling on those topics made in Part I.H *supra*. As to Topic 1, the MPRB's document retention and discovery practices are not at issue in this litigation, and Plaintiffs have not shown why the MPRB's testimony would otherwise be relevant. Moreover, Plaintiffs collaborated with the MPRB on the MPRB's discovery search and collection process, and deposition testimony about discovery would largely be duplicative of information Plaintiffs already have. Finally, given counsel for the MPRB's level of involvement in the discovery process, the deposition topic risks encroaching on the attorney-client privilege and work-product protection. With respect to Topic 2, nothing precludes Plaintiffs from asking the MPRB's Rule 30(b)(6) deponent whether the MPRB adopts the statements in the declarations of individuals or considers the statements to be solely those of the individual declarants, or from propounding a discovery request to that effect. To the extent Plaintiffs have follow-up questions about discovery responses, Plaintiffs' counsel should meet and confer with the MPRB's counsel and request a

supplemental response. Preparing a deponent to explain the meaning of potentially any word or phrase in a response is not proportional to the needs of the case.

### F.    Deposition Topic 26

Deposition Topic 26 seeks to inquire about MPRB's procedures, practices, training, or custom related to 13 subtopics. (*See* Nascimento Decl. Ex. G, Dkt. No. 192-1.) The MPRB has agreed to provide testimony on the first 10 subtopics. The latter three—the use of force for crowd control and dispersal, the use of chemical sprays, and warrants and probable cause—are at issue in this motion. The MPRB argues that the testimony is not relevant because no current named plaintiff has claimed a use of force against them, the use of chemical sprays on them, or a warrantless search of their person or property. Rather, the MPRB surmises, Deposition Topic 26 is directed toward the MPRB's actions against protesters, not encampment residents. Nevertheless, because Plaintiffs' claims are founded on the deprivation of their property, the MPRB has offered to produce a witness to testify about whether the use of force, use of chemical sprays, or warrantless searches were used to deprive encampment residents of their property. The Court finds this a reasonable compromise, and Plaintiffs' motion is granted to this extent.

### G.    Deposition Topic 43

Deposition Topic 43 seeks testimony about the MPRB's "process to allow encampment residents to challenge or oppose an impending sweep." (*See* Nascimento Decl. Ex. G, Dkt. No. 192-1.) The MPRB objected to the topic as overly broad, unduly

burdensome, and irrelevant since the District Court "has already ruled that there is no recognized right to sleep or live on public land." (*Id.*)

The Court overrules the overly broad and unduly burdensome objections. With respect to relevance, the MPRB's position does not account for the remaining deprivation-of-property, inadequate-notice, and municipal-liability components of Plaintiffs' claims. Challenging or opposing an impending sweep is not limited to challenging or opposing the *closure* of the camp; the process for challenging or opposing an impending sweep could also include the potential deprivation of property, adequacy of notice of the sweep, and the MPRB's official policies concerning those two issues. The Court will therefore grant Plaintiffs' motion to this extent.

### H.     Plaintiffs' Request for Expenses and Fees

Plaintiffs request an award of fees and costs pursuant to Federal Rule of Civil Procedure 37(a)(5). If a motion to compel discovery is granted in part and denied in part, as here, a court may "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(A). The Court finds, however, that apportioned expenses are not warranted under the circumstances. The parties' various positions were not unjustified, and all counsel have been professional and collegial. Consequently, Plaintiffs' request for an award of expenses and fees from the MPRB is denied.

Accordingly, **IT IS HEREBY ORDERED** that:

1.   Plaintiffs' Motion to Compel Interrogatory Responses and 30(b)(6) Testimony from Defendant Minneapolis Park & Recreation Board (Dkt. No. 188) is **GRANTED IN PART** and **DENIED IN PART**, as set forth fully above; and

2. Plaintiffs' Motion to Compel Production of Documents, Interrogatory Responses, and 30(b)(6) Testimony from Defendants City of Minneapolis, Minneapolis Mayor Jacob Frey, and former Minneapolis Chief of Police Medaria Arradondo (Dkt. No. 195) is **GRANTED IN PART** and **DENIED IN PART**, as set forth fully above.

Date:  February 6, 2023

_s/ John F. Docherty_
JOHN F. DOCHERTY
United States Magistrate Judge