UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Patrick Berry, et al.,

          Plaintiffs,

v.

Hennepin County, et al.,

          Defendants.

Case No. 20-cv-2189 (WMW/JFD)

**ORDER**

This matter is before the Court on Plaintiffs' Motion for Leave to File Second Amended Complaint ("SAC") (Dkt. No. 260). For the reasons set forth below, the motion is granted in part and denied in part. Plaintiffs shall file a SAC that conforms to the limits set forth in this Order on or before May 11, 2023.

**I.      Relevant Background and Proposed Amendments**

The factual and procedural background of this case is extensive and has been fully described several times before. (Dkt. Nos. 104, 181.) In the interest of efficiency, the Court will presume the reader's knowledge of that history and will proceed directly to a discussion of the issues raised by the motion. On March 25, 2022, the parties filed a Stipulation to Amend Pretrial Scheduling Order. (Dkt. No. 161.) What is relevant here about that stipulation is that the parties proposed extending the deadline for motions to amend the pleadings from April 30, 2022 to January 30, 2023. The good cause presented jointly by the parties was a long list of discovery delays and negotiations among the parties. (Stip. Amend at 2–5.) Concerned about the length of the extensions requested, the Court

scheduled a hearing on the stipulation. (*See* Dkt. No. 163.) The Court ultimately approved the stipulation, including the agreed-upon January 30, 2023 deadline for motions to amend the pleadings. Plaintiffs filed the motion now under advisement on that date.

Plaintiffs categorize their proposed amendments as follows:

1. Plaintiffs "attempt to conform the pleading that will govern the case going into summary judgment and likely any trial to the evidence discovered in discovery, as well as the Court's orders on the County's and [Minneapolis Park and Recreation Board's] Rule 12 motions."

2. Plaintiffs reassert a *Monell*[1] claim against Hennepin County, "with additional allegations that rectify the deficiencies of this claim as initially pleaded." The proposed SAC also realleges each of Plaintiffs' federal constitutional claims against Hennepin County, which were dismissed along with the *Monell* claim.

3. Plaintiffs voluntarily dismiss against all Defendants their privacy theory of liability asserted in support of their substantive due process claim.

4. Plaintiffs add a new claim of civil conspiracy against all Defendants.

Defendants point out a fifth amendment:

5. Plaintiffs reallege a federal substantive due process claim, based on the state-created-danger theory, against Hennepin County and the Minneapolis Park and Recreation Board ("MPRB"). This claim was dismissed, but Plaintiffs want to reallege it for the purpose of preserving their right to appeal.

II.     **Legal Standards**

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The right to amend is not absolute, however, *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008), and "the

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

granting of such a motion is left to the discretion of the district court," *Kaufmann v. Sheehan*, 707 F.2d 355, 357 (8th Cir. 1983). Leave to amend may be denied for "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id*. (citing *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)).

A proposed amendment to a complaint is futile if "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). Rule 12(b)(6) requires dismissal when a complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff need not plead "detailed factual allegations," but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* For a claim to be facially plausible, the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, the Court accepts the factual allegations as true and views them most favorably to the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

"Delay alone is insufficient justification for denying a motion to amend; prejudice to the nonmovant must also be shown." *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998); *see also Mercantile Tr. Co. Nat'l Ass'n v. Inland Marine Prods. Corp.*, 542 F.2d 1010, 1012 (8th Cir. 1976) ("Mere delay is not a reason in and of itself to deny

leave to amend. There must be found some prejudice which would result to the others if leave were to be granted."); *RJM Sales & Mktg., Inc. v. Banfi Prod. Corp.*, 546 F. Supp. 1368, 1379 (D. Minn. 1982) (affirming order allowing amendment because no prejudice was shown to non-moving party, even though moving party admitted it knew the evidentiary basis for amending more than a year before bringing its motion). "The dispositive question is whether the Court is confronted with *mere* delay (which would be no bar to the Court granting the motion to amend) or with *undue* delay (which might be a bar, depending on additional circumstances)." *In re EpiPen Direct Purchaser Litig.*, No. 21-cv-00827 (ECT/JFD), 2021 WL 4892231, at *3 (D. Minn. Oct. 20, 2021). The general rule on the timing of a motion to amend is that motions brought in sufficient time to avoid significant delays to discovery and trial readiness are regularly granted in the absence of prejudice to the opposing party. *See id.* (citing cases).

Courts have sometimes found undue delay and prejudice when a motion to amend is brought on the final day the scheduling order allows. However, generally, if the movant has not engaged in dilatory tactics, and if ample time remains in the discovery period, motions to amend brought on the final permissible day are granted. *Compare Thomas v. Corwin*, 483 F.3d 516, 532 (8th Cir. 2007) (affirming the lower court's grant of a motion to amend brought on the final day allowed under the scheduling order, and denial of one brought a month later where plaintiff had not reasonably contemplated the proposed amendment in the initial motion for leave to amend), *and Andrade Garcia v. Columbia Med. Ctr. of Sherman*, 996 F. Supp. 605, 609 (E.D. Tex. 1998) (granting a motion to amend because the court found no undue delay, even though the party filed the motion on the day

4

that was both the last day allowed in the scheduling order and the day that discovery closed), *and Domke v. McNeil-P.P.C., Inc.*, 939 F. Supp. 849, 851 (M.D. Fla. 1996) (granting a motion to amend filed on the last day for filing dispositive motions, finding the party timely moved where their motion relied on facts already asserted and had engaged in no dilatory tactics), *with Neelon v. Krueger*, 303 F.R.D. 433, 434 (D. Mass. 2014) (denying plaintiff's motion to amend filed on the last day under the scheduling order where the case had been litigated for 22 months, only six weeks of discovery remained, and the party knew the information nine months prior), *and Simmons v. Justice*, 196 F.R.D. 296, 297 (W.D.N.C. 2000) (denying a motion to amend for undue delay because defendants waited nearly five months until the date of both the close of discovery and final day for dispositive motion filings).

### III.   Discussion

#### A.   Unopposed Amendments

Defendants do not oppose the proposed amendments to the caption; the deletion of Plaintiffs' privacy theory of liability for Count IV; the deletion of the individual-capacity claims against Hennepin County, MPRB officials, and Minneapolis Chief of Police Brian O'Hara; and amendments related to allegations made by the individual Plaintiffs and putative class member Emmett Williams in paragraphs 14 through 148. (Defs.' Mem. Opp'n at 8–9 & n.6, Dkt. No. 270.) Leave to amend is therefore granted to this extent.

#### B.   Realleged State-Created-Danger Theory

Plaintiffs seek to reallege the state-created-danger theory of their federal substantive due process claim against Hennepin County. This claim was dismissed by the Honorable

5

Wilhelmina M. Wright, United States District Judge, because Plaintiffs identified no state-created-danger doctrine under Minnesota law and Plaintiffs failed to allege a danger created by the state. (Order at 24, Sept. 27, 2021, Dkt. No. 104). Plaintiffs seek leave to reallege the claim for the purpose of preserving their right to appeal.

Plaintiffs rely on *Schlafly v. Eagle Forum* for the proposition that "a plaintiff who amends his complaint and dismisses certain claims waives his right to appeal them." 970 F.3d 924, 933 (8th Cir. 2020) (quoting *Acuity v. Rex, LLC*, 929 F.3d 995, 999 (8th Cir. 2019)). But Plaintiffs disregard the very next sentence in *Schlafly*: "But we have refused to find waiver where the court's involuntary dismissal of the original counts struck a vital blow to a substantial part of plaintiff's cause of action." *Id.* (quoting *Acuity*, 929 F.3d at 999). A claim dismissed for a technical deficiency such as indefiniteness or incompleteness is waived if not reasserted in an amended complaint. *Id.* (citations omitted). However, a claim dismissed for a legal deficiency is not waived. *Id.* (citations omitted). "It is not waiver—it is prudence and economy—for parties not to reassert a position that the trial judge has rejected." *Acuity*, 929 F.3d at 999 (quoting *Bastian v. Petren Res. Corp.*, 892 F.2d 680, 683 (7th Cir. 1990)).

Plaintiffs' state-created-danger theory was dismissed as legally deficient, not because of a technical difficulty. The dismissal, in other words, struck a vital blow to the cause of action. Accordingly, the waiver rule for amended complaints does not apply, and justice does not require granting leave to reallege the state-created-danger theory. Leave to amend the complaint to re-allege the state-created danger theory is denied.

### C.     Delay and Prejudice

Plaintiffs timely filed their motion to amend on January 30, 2023. They do not ask to extend any of the pretrial deadlines or to take discovery on any of the proposed allegations. Nor do Defendants. Even if Plaintiffs could have brought their motion earlier, delay alone cannot justify denying a motion to amend. *See Bell*, 160 F.3d at 454. The Court therefore turns to prejudice.

The prejudice identified by Defendants is the possible length of time between the filing date of possible motions to dismiss the new claims and the ruling on those motions. Defendants do not argue that discovery would need to be reopened. Rather, Defendants posit "it is unlikely that the Court will rule on the motions to dismiss by September 1, 2023, the current deadline for the parties' summary judgment and class certification motions." (Defs.' Mem. Opp'n at 2.) This argument is purely speculative. *If* Defendants file motions to dismiss the new claims, there is adequate time for the motions to be briefed, heard, and decided before September 1, 2023. *If* not, and *if* Defendants can make a showing of actual prejudice, prejudice could be mitigated by a short extension to the filing deadline. Prejudice that can be cured by a modest extension of a deadline ordinarily should not defeat a motion to amend a pleading. *E.g., Advance Tr. & Life Escrow Servs., LTA v. ReliaStar Life Ins. Co.*, No. 18-CV-02863 (DWF/ECW), 2020 WL 5229677, at *6 (D. Minn. Sept. 2, 2020); *Ivey v. MSOP*, No. 12-CV-30 (DWF/TNL), 2019 WL 2710698, at *2 (D. Minn. June 28, 2019).

### D.     Futility

#### 1.     The *Monell* Claim Against Hennepin County

In an Order dated September 27, 2021, Judge Wright dismissed the 42 U.S.C. § 1983 claim (and all federal constitutional claims premised on § 1983 liability) against Hennepin County. (Order at 9–12, Dkt. No. 104.) Plaintiffs now seek to reassert a *Monell* claim against Hennepin County, bolstered by additional allegations that, Plaintiffs claim, fix the original deficiencies. The proposed SAC also realleges the federal constitutional claims against Hennepin County that would support *Monell* liability.

Judge Wright dismissed Plaintiffs' claim of municipal liability against Hennepin County because Plaintiffs did "not identif[y] an official county policy or alleged facts that would support the existence of an official policy." (Order at 10.) Nor did "Plaintiffs cite[] any law bestowing policymaking authority on Sheriff Hutchinson or allege[] that Sheriff Hutchinson is a policy maker." (*Id.*) Judge Wright therefore analyzed whether Plaintiffs adequately alleged an unofficial county custom, focusing on the second element of the test,[2] "which requires a plaintiff to 'allege facts showing that policymaking officials had

---

[2] The three-part test for stating a claim for § 1983 liability based on a county custom is:

> (1) "the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct" committed by the county's employees; (2) "deliberate indifference to or tacit authorization" of the misconduct by policymaking officials after those officials have received notice of the misconduct; and (3) that the plaintiff was injured by acts pursuant to the custom, such that "the custom was a moving force behind the constitutional violation."

(Order at 10 (quoting *Corwin v. City of Independence*, 829 F.3d 695, 699–700 (8th Cir. 2016)).)

8

notice of or authorized' the misconduct." (*Id.* at 11 (citing *Kelly v. City of Omaha*, 813 F.3d 1070, 1076 (8th Cir. 2016)).) Judge Wright determined that Plaintiffs did not allege adequate facts that "would establish that a policymaking official received notice of any alleged constitutional violations committed by County Defendants' employees" or "that a policymaking official authorized or was deliberately indifferent to the alleged constitutional violations committed by County Defendants' employees." (*Id.*)

To remedy the deficiencies identified by Judge Wright, Plaintiffs propose to add the following allegations, among others:

- Hennepin County "dispatched its employees [to sweeps] under a 'no questions asked' custom," which amounted to "deliberate indifference to and tacit authorization of the unconstitutionality of the sweeps." (Proposed Am. Compl. ¶ 220.)

- David Hewitt, the Director of Hennepin County's Office to End Homelessness, knew "there was not adequate shelter space available for all of the residents Defendants were displacing during these sweeps." (*Id.* ¶ 221.) He has received hundreds of emails from community members about the allegedly unconstitutional conduct of county employees. (*Id.* ¶ 241.)

- Hennepin County Deputy Chief Tracey Martin told the MPRB, "We are always happy to be of assistance" in sweeping encampments. (*Id.* ¶ 228.)

- Alleged policymaking official Don Ryan was present at sweeps with other County personnel (*id.* ¶ 239) and claimed he was "involved in [the] clearing of every encampment since March" 2020 (*id.* ¶ 213) (emphasis omitted). According to MPRB Lieutenant Calvin Noble, Mr. Ryan was present at the pre-sweep roll calls and was briefed on the MPRB's plans to evict residents. (*Id.* ¶ 214.)

- Two Hennepin County Commissioners were alerted days before Hennepin County's sweep of the Greenway that Hennepin County workers were "throwing away people's property that was outside of the tents." (*Id.* ¶ 239 n.66.)

Hennepin County argues in response that Mr. Ryan is actually an outreach worker, not a policymaking official; that his mere presence at encampment closures does not mean he had notice of a pattern of unconstitutional property destruction; that there are no allegations of Hennepin County workers engaging in a pattern of unconstitutional property destruction; and that the emails to the County Commissioners could have pertained to the removal of trash or hazardous materials, not necessarily to the unconstitutional destruction of property. Hennepin County's view of the new allegations is plausible, but the Court must view the allegations in the light most favorable to Plaintiffs, not Defendants. The Court finds that the new allegations create a plausible inference that policymaking officials had notice of or authorized the alleged misconduct. The Court will therefore allow Plaintiffs to amend their complaint to reassert a *Monell* claim and the federal constitutional claims against Hennepin County.

### 2. The New Civil Conspiracy Claim Against All Defendants

Plaintiffs seek leave to allege a new claim of civil conspiracy against all Defendants. The new claim has two components: (1) conspiracy to deprive Plaintiffs of their federal and state constitutional rights and (2) conspiracy to commit conversion. (Proposed Am. Compl. ¶¶ 273–81.)

"A Section 1983 civil-conspiracy claim requires allegations that (1) the defendants conspired with others to deprive the plaintiffs of their constitutional rights, (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy, and (3) the overt act injured the plaintiffs." *Goyette v. City of Minneapolis*, No. 20-CV-1302 (WMW/DTS), 2021 WL 3222495, at *9 (D. Minn. July 29, 2021) (citing *White v.*

*McKinley*, 519 F.3d 806, 814 (8th Cir. 2008)). "Allegations of a conspiracy must have sufficient specificity and factual support to suggest a meeting of the minds." *Id.* (citing *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988)).

Defendants argue that the federal and state constitutional conspiracy claims are futile because Plaintiffs do not plausibly allege a meeting of the minds among Defendants or that Defendants conspired for the purpose of destroying Plaintiffs' property unconstitutionally. (Defs.' Mem. Opp'n at 33, 37.) The Court finds otherwise.

Plaintiffs propose to allege that Hennepin County, the City of Minneapolis, and the MPRB reached an understanding to deprive Plaintiffs of their constitutional rights. These Defendant entities allegedly asked for assistance from, and provided assistance to, one another to clear encampments and arrest individuals, and worked together to remove individuals and their property from encampments. (Proposed Am. Compl. ¶¶ 210–11, 226, 234, 242–46.) "Sweeping" or "clearing" encampments allegedly included displacing residents and unlawfully seizing and destroying personal property, often without notice, compensation, or due process. (*Id.* at 2.)

Specifically, Plaintiffs allege that the County sent sheriff's deputies and employees to help clear numerous City of Minneapolis parks. (*Id.* ¶ 212.) Mr. Ryan reported "detailed planning that resulted in well executed clearing of encampments" and sweeps "involv[ing] several public agencies working together and the partnership has worked well." (*Id.* ¶ 213) (emphasis omitted). Mr. Ryan attended MPRB pre-sweep meetings "at which he was not only made aware of all of the MPRBs plans to unconstitutional[ly] evict encampments residents," but provided shelter space information to the other Defendants. (*Id.* ¶ 214.)

11

"[MPRB] Chief Jason Ohotto wrote in August of 2020 that '[l]arge demobilizations will be part of a planned and coordinated effort' between the MPRB, City, and Hennepin County." (*Id.* ¶ 217.) City of Minneapolis officials described the "critical assistance" provided by Hennepin County and the "critical role" of county deputies in sweeping city parks. (*Id.* ¶ 227.) The MPRB said it could not have cleared parks without the County's assistance. (*Id.* ¶ 228.) Plaintiffs list 17 sweeps or ejections of encampments on municipal property in which two or more of Hennepin County, the City of Minneapolis, and the MPRB participated in active concert. (*Id.* ¶ 242.) At the Powderhorn Park sweep on August 10, 2020, in which Hennepin County, the City of Minneapolis, and the MPRB allegedly participated, "heavy equipment was present to dispose of residents' personal property," and municipal officials heard reports of property destruction from multiple sources. (*Id.* ¶¶ 232, 241–242.) Based on these (and other) allegations, the Court finds that Plaintiffs have plausibly alleged that Defendants reached an agreement to deprive Plaintiffs of their constitutional rights.

Defendants next argue that the conspiracy claim is futile under *Monell*. (Defs.' Mem. Opp'n at 38.) Under *Monell*,

> A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. . . . Liability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee.

*Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016). Plaintiffs respond that the civil conspiracy claim is asserted directly against the City of Minneapolis, Hennepin County, and the MPRB entities, not against individual employees or based on a theory of

12

respondeat superior. (Pls.' Reply at 14–15, Dkt. No. 276.) Plaintiffs point out that this situation is similar to *Goyette*, where a civil conspiracy claim involving a city defendant was not treated as a *Monell* claim. *See Goyette*, 2021 WL 3222495, at *10; *see also Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 840–46 (D. Minn. 2021) (discussing § 1983 claim for civil conspiracy against a city separately from *Monell* claims). The Court finds Defendants' *Monell*-based futility argument misplaced. "To establish civil conspiracy liability for a municipal entity under § 1983, Plaintiffs must show that the municipal entity itself had involvement in the conspiracy, not merely rely on a theory of respondeat superior." *Robertson v. Breakthrough Towing, LLC*, No. 19-10266, 2022 WL 4292314, at *17 (E.D. Mich. Sept. 16, 2022). That is what Plaintiffs propose to allege here: that the Defendant municipal entities themselves were involved in a civil conspiracy to deprive Plaintiffs of their constitutional rights. Plaintiffs do not rely on a theory of respondeat superior. Therefore, Plaintiffs' conspiracy claim is not futile under *Monell*.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to File a Second Amended Complaint (Dkt. No. 260) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully herein. Plaintiffs must file a Second Amended Complaint that is consistent with this Order on or before May 11, 2023.

Date:  May 4, 2023         *s/ John F. Docherty*
                           JOHN F. DOCHERTY
                           United States Magistrate Judge