# EXHIBIT 135

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Berry, et al., | Case No. 20-CV-02189-WMW-JFD |
| Plaintiffs, | District Judge Wilhelmina Wright |
| vs. | Magistrate Judge John F. Docherty |
| Hennepin County, et al., | **PLAINTIFF HENRIETTA BROWN'S RESPONSES TO COUNTY DEFENDANTS FIRST SET OF INTERROGATORIES** |
| Defendants. | |

TO:    Hennepin County Defendants, by and through their counsel, Kelly Pierce and Christiana Martenson, Hennepin County Attorney's Office, 300 South 6th Street, Ste A2000, Minneapolis, MN 55487; kelly.pierce@hennepin.us, christiana.martenson@hennepin.us.

Plaintiff Henrietta Brown, for their responses to the Hennepin County Defendants' First Set of Interrogatories, states as follows:

## PRELIMINARY STATEMENT

Plaintiff Brown is continuing their investigation and reserves the right to rely on facts, documents, or other evidence that may come to their or their counsel's attention later. Plaintiff's responses to these requests are based upon information known at this time, and Plaintiff expressly reserves their right to revise or supplement their responses or assert additional or revised objections. Nothing herein should be construed as an admission that any information requested or provided is relevant or admissible. In providing these responses, Plaintiff expressly preserves all objections as to competency, relevancy, materiality, and admissibility and all rights to object on any ground to the use of any of the responses at trial or in any other proceeding.

## GENERAL OBJECTIONS

PLEASE BE ADVISED that these general responses and objections form a part of the response to each and every Interrogatory below. The absence of a reference to a general response

or objection should not be construed as a waiver of the general responses or objections to a specific Interrogatory.

1.     Plaintiff Brown objects to the Interrogatories to the extent they seek information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. Unless otherwise indicated, such information will not form a part of Plaintiff's responses to the Interrogatories. Inadvertent disclosure of privileged information will not constitute a waiver of any applicable privilege. Nor will providing such information be construed to waive any objection. Plaintiff Brown requests that, upon realization or notice of such inadvertent disclosure, Defendants not use the information and/or promptly return or destroy any documents in their possession and confirm in writing when completed.

2.     Plaintiff Brown objects to the Interrogatories to the extent they are oppressive, unreasonably expensive or expansive, vague, ambiguous, overbroad, not identified with reasonable particularity, unduly burdensome, and/or would require unreasonable investigation in a manner not proportionate with the claims of this case.

3.     Plaintiff Brown objects to the Interrogatories to the extent they are compound.

4.     Plaintiff Brown objects to the extent the Interrogatories seek information that is not relevant to any party's claim or defense, immaterial, or not reasonably calculated to lead to the discovery of admissible evidence in this litigation.

5.     Plaintiff Brown objects to the definition of "you" and "your" as overly broad, unduly burdensome, and beyond the scope permitted by the Federal Rules of Civil Procedure. Plaintiff will respond to these Interrogatories only for themself.

6.      Plaintiff Brown objects to the Interrogatories to the extent they seek information not within the possession, custody, or control of Plaintiff, or which is equally accessible to Defendants.

7.      Plaintiff Brown objects to the Interrogatories to the extent they seek information that is unreasonably cumulative, duplicative, or obtainable from other sources that are more convenient, less burdensome, or less expensive.

8.      Plaintiff Brown objects to the Interrogatories to the extent they require responses beyond those required by the Federal Rules of Civil Procedure, the local rules, or any other court orders. Plaintiff will respond to these requests in accordance with those requirements and obligations.

9.      Plaintiff Brown's responses to the Interrogatories are subject to the Protective Order entered in this case. Any responsive documents shall be produced pursuant to the terms of the Amended Pretrial Scheduling Order and the Protective Order.

Subject to the above general objections and any specific objection asserted herein, Plaintiff Brown responds to the County's Interrogatories as follows:

## **INTERROGATORIES**

**REQUEST NO. 1:**      Identify all locations where you have slept or sheltered overnight, from the date of the Amended Complaint to the present, and for each such location, provide its address or describe the location.

**RESPONSE:**      Plaintiff objects to this Interrogatory as not relevant to any party's claim or defense, and not reasonably calculated to lead to the discovery of admissible evidence.

3619 Colfax Avenue S., Apt. 10
Minneapolis, MN 55409

3852 W. Broadway Ave., Apt. 12
Robbinsdale, MN 55422

Discovery is ongoing and Plaintiff Brown reserves the right to supplement or amend these responses as additional information becomes available.


**REQUEST NO. 2:**    Identify all persons who may have knowledge regarding the claims and defenses in this lawsuit and state the substance of each person's knowledge.

**RESPONSE:**    Plaintiff Brown objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Plaintiff further objects to this Interrogatory as compound, with two distinct subparts: 1) the name of the individuals who have knowledge; and 2) the substance of that knowledge.

Discovery is ongoing and Plaintiff Brown reserves the right to supplement or amend these responses as additional information becomes available.

Subpart 1: The identification of individuals with knowledge. See all individuals identified in Plaintiffs' Rule 26(a)(1) initial disclosures, the Declaration of Plaintiff Brown, the deposition testimony of Plaintiff Brown, the Amended Complaint, Plaintiffs' memorandum in opposition to the motions to dismiss of Defendants Hennepin County and the Minneapolis Park & Recreation Board, and any other court filings to date.

Subpart 2: The substance of that knowledge. See Plaintiffs' Rule 26(a)(1) initial disclosures, the Declaration of Plaintiff Brown, the deposition testimony of Plaintiff Brown, the Amended Complaint, Plaintiffs' memorandum in opposition to the motions to dismiss of Defendants Hennepin County and the Minneapolis Park & Recreation Board, and any other court filings to date.

4

**REQUEST NO. 3:**     Describe in detail the injuries and damages that you allege you sustained as a result of Defendants' actions and omissions as described in the Amended Complaint, including the total amount of damages that you claim in this lawsuit.

**RESPONSE:**     Plaintiff Brown objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Plaintiff further objects to this Interrogatory to the extent it seeks to impose obligations on Plaintiff in excess of those required by the applicable rules. Plaintiff further objects to this Interrogatory as premature.

Subject to and without waiving these objections, Plaintiff Brown responds as follows: See the Amended Complaint, the deposition testimony of Plaintiff Brown, the Declaration of Plaintiff Brown, Plaintiffs' memorandum in opposition to the motions to dismiss of Defendants Hennepin County and the Minneapolis Park & Recreation Board, and any other court filings to date. Plaintiff Brown is seeking compensatory and punitive damages in an amount to be determined by a jury at trial.

Plaintiff Brown is seeking compensatory damages in the amount of $1,305.11 for property destroyed during encampment sweeps, including her birth certificate, application for medical assistance, photocopy of her ID, social security card, tent, clothes, shoes, jewelry and a watch, winter jacket, comforter, sleeping bag, pillow, a full-size mattress, and food.

Discovery is ongoing and Plaintiff Brown reserves the right to supplement or amend these responses as additional information becomes available.

**REQUEST NO. 4:**     For the period from 2020 to the present, have you used or posted content on any website, digital application, blog, online forum, or social media platform (such as Twitter, Facebook, Instagram, Snapchat, or TikTok)? If so, identify each website, digital

application, blog, online forum, or social media platform that you have used or posted content on, and if applicable, identify the username, email address, or phone number associated with your use of that website, digital application, blog, online forum, or social media platform.

**RESPONSE:**        Plaintiff Brown objects to this Interrogatory to the extent it seeks information in the public domain and to which Defendants have equal access. Plaintiff further objects to this Interrogatory as compound, with three distinct subparts: 1) whether Plaintiff uses social media, 2) which social media platforms, and 3) the handle/username per social media platform.

Subpart 1) Do they use social media? Yes.

Subpart 2) Identify social media platforms they use. Facebook.

Subpart 3) Identify the handle/username for those social media accounts. Henrietta Brown.

Discovery is ongoing and Plaintiff Brown reserves the right to supplement or amend these responses as additional information becomes available.

DATE: 12-02-2022    Henrietta Brown
                    Henrietta Brown

As to objections:

DATE: November 7, 2022

**MID-MINNESOTA LEGAL AID**

s/Justin Perl

Justin H. Perl (No. 0151397)
Dorinda L. Wider (No. 0162334)
Rebecca Stillman (No. 039855)

6

Luke Grundman (No. 0390565)
111 North Fifth Street, Suite #100
Minneapolis, MN 55403-1604
Tel: (612) 332-1441
Email: jperl@mylegalaid.org
        dlwider@mylegalaid.org
        rstillman@mylegalaid.org
        lgrundman@mylegalaid.org

**AMERICAN CIVIL LIBERTIES UNION
OF MINNESOTA**

s/Teresa Nelson
Teresa Nelson (No. 0269736)
Clare Diegel (No. 0400758)
PO Box 14720
Minneapolis, MN 55414
Tel: (612) 274-7791
Email: tnelson@aclu-mn.org
        cdiegel@aclu-mn.org

Ian Bratlie (No. 319454)
American Civil Liberties Union of Minnesota
P.O. Box 907
Mankato, MN 56002
Tel: (507) 995-6575
Email: ibratlie@aclu-mn.org

**BALLARD SPAHR LLP**
s/Isabella Salomão Nascimento
Isabella Salomão Nascimento (No. 0401408)
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402
612-371-3281
Email: salomaonascimentoi@ballardspahr.com

*Attorneys for Plaintiffs*

# EXHIBIT 136

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Berry, et al., | Case No. 20-CV-02189-WMW-JFD |
| Plaintiffs, | District Judge Wilhelmina Wright |
| vs. | Magistrate Judge John F. Docherty |
| Hennepin County, et al., | **PLAINTIFF NADINE LITTLE'S RESPONSES TO COUNTY DEFENDANTS FIRST SET OF INTERROGATORIES** |
| Defendants. | |

TO:    Hennepin County Defendants, by and through their counsel, Kelly Pierce and Christiana Martenson, Hennepin County Attorney's Office, 300 South 6th Street, Ste A2000, Minneapolis, MN 55487; kelly.pierce@hennepin.us, christiana.martenson@hennepin.us.

Plaintiff Nadine Little, for their responses to the Hennepin County Defendants' First Set of Interrogatories, states as follows:

**PRELIMINARY STATEMENT**

Plaintiff Little is continuing their investigation and reserves the right to rely on facts, documents, or other evidence that may come to their or their counsel's attention later. Plaintiff's responses to these requests are based upon information known at this time, and Plaintiff expressly reserves their right to revise or supplement their responses or assert additional or revised objections. Nothing herein should be construed as an admission that any information requested or provided is relevant or admissible. In providing these responses, Plaintiff expressly preserves all objections as to competency, relevancy, materiality, and admissibility and all rights to object on any ground to the use of any of the responses at trial or in any other proceeding.

**GENERAL OBJECTIONS**

PLEASE BE ADVISED that these general responses and objections form a part of the response to each and every Interrogatory below. The absence of a reference to a general response

or objection should not be construed as a waiver of the general responses or objections to a specific Interrogatory.

1.    Plaintiff Little objects to the Interrogatories to the extent they seek information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. Unless otherwise indicated, such information will not form a part of Plaintiff's responses to the Interrogatories. Inadvertent disclosure of privileged information will not constitute a waiver of any applicable privilege. Nor will providing such information be construed to waive any objection. Plaintiff Little requests that, upon realization or notice of such inadvertent disclosure, Defendants not use the information and/or promptly return or destroy any documents in their possession and confirm in writing when completed.

2.    Plaintiff Little objects to the Interrogatories to the extent they are oppressive, unreasonably expensive or expansive, vague, ambiguous, overbroad, not identified with reasonable particularity, unduly burdensome, and/or would require unreasonable investigation in a manner not proportionate with the claims of this case.

3.    Plaintiff Little objects to the Interrogatories to the extent they are compound.

4.    Plaintiff Little objects to the extent the Interrogatories seek information that is not relevant to any party's claim or defense, immaterial, or not reasonably calculated to lead to the discovery of admissible evidence in this litigation.

5.    Plaintiff Little objects to the definition of "you" and "your" as overly broad, unduly burdensome, and beyond the scope permitted by the Federal Rules of Civil Procedure. Plaintiff will respond to these Interrogatories only for themself.

6.      Plaintiff Little objects to the Interrogatories to the extent they seek information not within the possession, custody, or control of Plaintiff, or which is equally accessible to Defendants.

7.      Plaintiff Little objects to the Interrogatories to the extent they seek information that is unreasonably cumulative, duplicative, or obtainable from other sources that are more convenient, less burdensome, or less expensive.

8.      Plaintiff Little objects to the Interrogatories to the extent they require responses beyond those required by the Federal Rules of Civil Procedure, the local rules, or any other court orders. Plaintiff will respond to these requests in accordance with those requirements and obligations.

9.      Plaintiff Little's responses to the Interrogatories are subject to the Protective Order entered in this case. Any responsive documents shall be produced pursuant to the terms of the Amended Pretrial Scheduling Order and the Protective Order.

Subject to the above general objections and any specific objection asserted herein, Plaintiff Little responds to the County's Interrogatories as follows:

## INTERROGATORIES

**REQUEST NO. 1:**      Identify all locations where you have slept or sheltered overnight, from the date of the Amended Complaint to the present, and for each such location, provide its address or describe the location.

**RESPONSE:**      Plaintiff Little objects to this Interrogatory to the extent it seeks information to which Defendants have equal access. Subject to and without waiving this and the General Objections above, Plaintiff Little responds as follows: Since December 14, 2020, to the best of their recollection, Plaintiff Little has slept or sheltered overnight at

Hampton Inn- December 2020

3

3850 W Broadway, #22, Robbinsdale, MN (Dec. 2020-February 16, 2022)

7178 72nd Ave N, Brooklyn Park, MN (February 16, 2022- present)

Discovery is ongoing and Plaintiff Little reserves the right to supplement or amend these responses as additional information becomes available.

**REQUEST NO. 2:**     Identify all persons who may have knowledge regarding the claims and defenses in this lawsuit and state the substance of each person's knowledge.

**RESPONSE:**          Plaintiff Little objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Plaintiff Little further objects to this Interrogatory as compound, with two distinct subparts: 1) the name of the individuals who have knowledge; and 2) the substance of that knowledge. Subject to and without waiving these objections, Plaintiff Little responds as follows:

Subpart 1: The identification of individuals with knowledge. See all individuals identified in Plaintiffs' Rule 26(a)(1) initial disclosures, the Declaration of Plaintiff Little, the deposition testimony of Plaintiff Little, the Amended Complaint, Plaintiffs' memorandum in opposition to the motions to dismiss of Defendants Hennepin County and the Minneapolis Park & Recreation Board, and any other court filings to date.

Subpart 2: The substance of that knowledge. See Plaintiffs' Rule 26(a)(1) initial disclosures, the Declaration of Plaintiff Little, the deposition testimony of Plaintiff Little, the Amended Complaint, Plaintiffs' memorandum in opposition to the motions to dismiss of Defendants Hennepin County and the Minneapolis Park & Recreation Board, and any other court filings to date.

4

Discovery is ongoing and Plaintiff Little reserves the right to supplement or amend these responses as additional information becomes available.

**REQUEST NO. 3:**       Describe in detail the injuries and damages that you allege you sustained as a result of Defendants' actions and omissions as described in the Amended Complaint, including the total amount of damages that you claim in this lawsuit.

**RESPONSE:**       Plaintiff Little objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Plaintiff Little further objects to this Interrogatory to the extent it seeks to impose obligations on Plaintiff Little in excess of those required by the applicable rules. Plaintiff further objects to this Interrogatory as premature. Subject to and without waiving these objections, Plaintiff Little responds as follows: See the Amended Complaint, the deposition testimony of Plaintiff Little, the Declaration of Plaintiff Little, Plaintiffs' memorandum in opposition to the motions to dismiss of Defendants Hennepin County and the Minneapolis Park & Recreation Board, and any other court filings to date. Plaintiff Little is seeking compensatory and punitive damages in an amount to be determined by a jury at trial.

Plaintiff Little is seeking compensatory damages in the amount of $367.59 for property destroyed during encampment sweeps, including a tent, assorted clothing, blankets, and food

In addition to those damages listed in the above documents, Plaintiff Little is seeking damages only for garden-variety emotional distress, pain, and suffering.

Discovery is ongoing and Plaintiff Little reserves the right to supplement or amend these responses as additional information becomes available.

**REQUEST NO. 4:**       If you claim damages related to your physical or mental health, identify all care providers who have examined or treated you from January 1, 2012 to the present,

and please describe the nature of the illness, disease, injury, problem, or condition for which you were examined or treated by each care provider, as well as the dates of such examination or treatment.

**RESPONSE:**          Plaintiff Little objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege, work product doctrine, doctor-patient confidentiality, or any other applicable privilege or immunity. Plaintiff further objects to the extent this Interrogatory calls for duplicative information to Interrogatory No. 3. Plaintiff Little further objects to this Interrogatory as overly broad, unduly burdensome, not relevant to any party's claim or defense, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case to the extent it seeks information from over a period of more than ten (10) years and more than eight (8) years before the inception of this lawsuit. Plaintiff Little further objects to this Interrogatory as compound, with three distinct subparts: 1) identification of care providers; 2) identification of the treatment or care plan; and 3) the dates of treatment. Subject to and without waiving these objections, Plaintiff Little responds as follows:

Subpart 1) Identification of care providers

Subpart 2) Identification of treatment or care plan

Subpart 3) Dates of treatment

Plaintiff Little is only seeking compensatory and damages for garden-variety emotional distress, pain, and suffering, so the information sought in this Interrogatory is irrelevant to the case and no answer is required.

Discovery is ongoing and Plaintiff Little reserves the right to supplement or amend these responses as additional information becomes available.

**REQUEST NO. 5:**     For the period from 2020 to the present, have you used or posted content on any website, digital application, blog, online forum, or social media platform (such as Twitter, Facebook, Instagram, Snapchat, or TikTok)? If so, identify each website, digital application, blog, online forum, or social media platform that you have used or posted content on, and if applicable, identify the username, email address, or phone number associated with your use of that website, digital application, blog, online forum, or social media platform.

**RESPONSE:**     Plaintiff Little objects to this Interrogatory to the extent it seeks information in the public domain and to which Defendants have equal access. Plaintiff further objects to this Interrogatory as compound, with three distinct subparts: 1) whether Plaintiff uses social media, 2) which social media platforms, and 3) the handle/username per social media platform. Subject to and without waiving this and the General Objections above, Plaintiff Little responds as follows:

Subpart 1) Do they use social media? Yes.

Subpart 2) Identify social media platforms they use. Facebook and Twitter.

Subpart 3) Identify the handle/username for those social media accounts

Facebook—Little Nadine; Lil Nay Nay, Elizabeth Little, Lissa Lihle. Twitter @Nay61293299

Discovery is ongoing and Plaintiff Little reserves the right to supplement or amend these responses as additional information becomes available.

As to Answers:

DATE: *11-1-2022*

Nadine Little

**Nadine Little**

As to Objections:

7

As to Objections:

DATE: 11/02/2022

**MID-MINNESOTA LEGAL AID**

s/Justin Perl
Justin H. Perl (No. 0151397)
Dorinda L. Wider (No. 0162334)
Rebecca Stillman (No. 039855)
Luke Grundman (No. 0390565)
111 North Fifth Street, Suite #100
Minneapolis, MN 55403-1604
Tel: (612) 332-1441
Email:  jperl@mylegalaid.org
         dlwider@mylegalaid.org
         rstillman@mylegalaid.org
         lgrundman@mylegalaid.org

**AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA**

s/Teresa Nelson
Teresa Nelson (No. 0269736)
Clare Diegel (No. 0400758)
PO Box 14720
Minneapolis, MN 55414
Tel: (612) 274-7791
Email:  tnelson@aclu-mn.org
         cdiegel@aclu-mn.org

Ian Bratlie (No. 319454)
American Civil Liberties Union of Minnesota
P.O. Box 907
Mankato, MN 56002
Tel: (507) 995-6575
Email: ibratlie@aclu-mn.org

**BALLARD SPAHR LLP**

s/Isabella Salomão Nascimento
Isabella Salomão Nascimento (No. 0401408)
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402
612-371-3281
Email: salomaonascimentoi@ballardspahr.com

***Attorneys for Plaintiffs***

8

# EXHIBIT 138

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Berry, et al., | Case No. 20-CV-02189-WMW-JFD |
| Plaintiffs, | District Judge Wilhelmina Wright<br>Magistrate Judge John F. Docherty |
| vs. | |
| Hennepin County, et al., | **PLAINTIFF VIRGINIA ROY'S RESPONSES TO COUNTY DEFENDANTS FIRST SET OF INTERROGATORIES** |
| Defendants. | |

TO:   Hennepin County Defendants, by and through their counsel, Kelly Pierce and Christiana Martenson, Hennepin County Attorney's Office, 300 South 6th Street, Ste A2000, Minneapolis, MN 55487; kelly.pierce@hennepin.us, christiana.martenson@hennepin.us.

Plaintiff Virginia Roy, for their responses to the Hennepin County Defendants' First Set of Interrogatories, states as follows:

## PRELIMINARY STATEMENT

Plaintiff Roy is continuing their investigation and reserves the right to rely on facts, documents, or other evidence that may come to their or their counsel's attention later. Plaintiff's responses to these requests are based upon information known at this time, and Plaintiff expressly reserves their right to revise or supplement their responses or assert additional or revised objections. Nothing herein should be construed as an admission that any information requested or provided is relevant or admissible. In providing these responses, Plaintiff expressly preserves all objections as to competency, relevancy, materiality, and admissibility and all rights to object on any ground to the use of any of the responses at trial or in any other proceeding.

## GENERAL OBJECTIONS

PLEASE BE ADVISED that these general responses and objections form a part of the response to each and every Interrogatory below. The absence of a reference to a general response

or objection should not be construed as a waiver of the general responses or objections to a specific Interrogatory.

1.      Plaintiff Roy objects to the Interrogatories to the extent they seek information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. Unless otherwise indicated, such information will not form a part of Plaintiff's responses to the Interrogatories. Inadvertent disclosure of privileged information will not constitute a waiver of any applicable privilege. Nor will providing such information be construed to waive any objection. Plaintiff Roy requests that, upon realization or notice of such inadvertent disclosure, Defendants not use the information and/or promptly return or destroy any documents in their possession and confirm in writing when completed.

2.      Plaintiff Roy objects to the Interrogatories to the extent they are oppressive, unreasonably expensive or expansive, vague, ambiguous, overbroad, not identified with reasonable particularity, unduly burdensome, and/or would require unreasonable investigation in a manner not proportionate with the claims of this case.

3.      Plaintiff Roy objects to the Interrogatories to the extent they are compound.

4.      Plaintiff Roy objects to the extent the Interrogatories seek information that is not relevant to any party's claim or defense, immaterial, or not reasonably calculated to lead to the discovery of admissible evidence in this litigation.

5.      Plaintiff Roy objects to the definition of "you" and "your" as overly broad, unduly burdensome, and beyond the scope permitted by the Federal Rules of Civil Procedure. Plaintiff will respond to these Interrogatories only for themself.

6.      Plaintiff Roy objects to the Interrogatories to the extent they seek information not within the possession, custody, or control of Plaintiff, or which is equally accessible to Defendants.

7.      Plaintiff Roy objects to the Interrogatories to the extent they seek information that is unreasonably cumulative, duplicative, or obtainable from other sources that are more convenient, less burdensome, or less expensive.

8.      Plaintiff Roy objects to the Interrogatories to the extent they require responses beyond those required by the Federal Rules of Civil Procedure, the local rules, or any other court orders. Plaintiff will respond to these requests in accordance with those requirements and obligations.

9.      Plaintiff Roy's responses to the Interrogatories are subject to the Protective Order entered in this case. Any responsive documents shall be produced pursuant to the terms of the Amended Pretrial Scheduling Order and the Protective Order.

Subject to the above general objections and any specific objection asserted herein, Plaintiff Roy responds to the County's Interrogatories as follows:

## **INTERROGATORIES**

**REQUEST NO. 1:**      Identify all locations where you have slept or sheltered overnight, from the date of the Amended Complaint to the present, and for each such location, provide its address or describe the location.

**RESPONSE:**      Plaintiff Roy objects to this Interrogatory to the extent it seeks information to which Defendants have equal access. Subject to and without waiving this and the General Objections above, Plaintiff Roy responds as follows: Since December 14, 2020, to the best of their recollection, Plaintiff Roy has slept or sheltered overnight at

Super 8 hotel

3

Home2Suites Hotel, Bloomington, MN

Either the Hilton or the Radisson

5750 33rd Ave S, #3, Minneapolis, MN (Jan. 2021-present)

Discovery is ongoing and Plaintiff Roy reserves the right to supplement or amend these responses as additional information becomes available.

**REQUEST NO. 2:**    Identify all persons who may have knowledge regarding the claims and defenses in this lawsuit and state the substance of each person's knowledge.

**RESPONSE:**    Plaintiff Roy objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Plaintiff further objects to this Interrogatory as compound, with two distinct subparts: 1) the name of the individuals who have knowledge; and 2) the substance of that knowledge. Subject to and without waiving these objections, Plaintiff Roy responds as follows:

Subpart 1: The identification of individuals with knowledge. See all individuals identified in Plaintiffs' Rule 26(a)(1) initial disclosures, the Declaration of Plaintiff Roy, the deposition testimony of Plaintiff Roy, the Amended Complaint, Plaintiffs' memorandum in opposition to the motions to dismiss of Defendants Hennepin County and the Minneapolis Park & Recreation Board, and any other court filings to date.

Subpart 2: The substance of that knowledge. See Plaintiffs' Rule 26(a)(1) initial disclosures, the Declaration of Plaintiff Roy, the deposition testimony of Plaintiff Roy, the Amended Complaint, Plaintiffs' memorandum in opposition to the motions to dismiss of Defendants Hennepin County and the Minneapolis Park & Recreation Board, and any other court filings to date.

Virgil Roy, brother. Virgil Roy was living at the Wall of Forgotten Natives and Powderhorn Park at the same time as Plaintiff Roy. Plaintiff Roy does not have contact information for Virgil Roy.

Marie Roy, niece. Marie Roy was living at the Wall of Forgotten Natives at the same time as Plaintiff Roy. Plaintiff Roy does not have contact information for Marie Roy.

Discovery is ongoing and Plaintiff Roy reserves the right to supplement or amend these responses as additional information becomes available.

**REQUEST NO. 3:**   Describe in detail the injuries and damages that you allege you sustained as a result of Defendants' actions and omissions as described in the Amended Complaint, including the total amount of damages that you claim in this lawsuit.

**RESPONSE:**   Plaintiff Roy objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Plaintiff further objects to this Interrogatory to the extent it seeks to impose obligations on Plaintiff in excess of those required by the applicable rules. Plaintiff further objects to this Interrogatory as premature. Subject to and without waiving these objections, Plaintiff Roy responds as follows: See the Amended Complaint, the deposition testimony of Plaintiff Roy, the Declaration of Plaintiff Roy, Plaintiffs' memorandum in opposition to the motions to dismiss of Defendants Hennepin County and the Minneapolis Park & Recreation Board, and any other court filings to date. Plaintiff is seeking compensatory and punitive damages in an amount to be determined by a jury at trial.

Plaintiff Roy is seeking compensatory damages in the amount of $1,383.55 for property destroyed during encampment sweeps, including a tent, assorted clothing, sleeping bag, air mattress, blanket, pillows, winter coat, shoes, purse, driver's license, and ID.

5

In addition to those damages listed in the above documents, Plaintiff Roy is seeking damages only for garden-variety emotional distress, pain, and suffering.

Discovery is ongoing and Plaintiff Roy reserves the right to supplement or amend these responses as additional information becomes available.

**REQUEST NO. 4:**      If you claim damages related to your physical or mental health, identify all care providers who have examined or treated you from January 1, 2012 to the present, and please describe the nature of the illness, disease, injury, problem, or condition for which you were examined or treated by each care provider, as well as the dates of such examination or treatment.

**RESPONSE:**      Plaintiff Roy objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege, work product doctrine, doctor-patient confidentiality, or any other applicable privilege or immunity. Plaintiff further objects to the extent this Interrogatory calls for duplicative information to Interrogatory No. 3. Plaintiff further objects to this Interrogatory as overly broad, unduly burdensome, not relevant to any party's claim or defense, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case to the extent it seeks information from over a period of more than ten (10) years and more than eight (8) years before the inception of this lawsuit. Plaintiff further objects to this Interrogatory as compound, with three distinct subparts: 1) identification of care providers; 2) identification of the treatment or care plan; and 3) the dates of treatment. Subject to and without waiving these objections, Plaintiff Roy responds as follows:

Subpart 1) Identification of care providers

Subpart 2) Identification of treatment or care plan

Subpart 3) Dates of treatment

6

Plaintiff Roy is seeking only seeking compensatory damages and damages for garden-variety emotional distress, pain, and suffering, so the information sought in this Interrogatory is irrelevant to the case and no answer is required.

Discovery is ongoing and Plaintiff Roy reserves the right to supplement or amend these responses as additional information becomes available.

**REQUEST NO. 5:**    For the period from 2020 to the present, have you used or posted content on any website, digital application, blog, online forum, or social media platform (such as Twitter, Facebook, Instagram, Snapchat, or TikTok)? If so, identify each website, digital application, blog, online forum, or social media platform that you have used or posted content on, and if applicable, identify the username, email address, or phone number associated with your use of that website, digital application, blog, online forum, or social media platform.

**RESPONSE:**    Plaintiff Roy objects to this Interrogatory to the extent it seeks information in the public domain and to which Defendants have equal access. Plaintiff further objects to this Interrogatory as compound, with three distinct subparts: 1) whether Plaintiff uses social media, 2) which social media platforms, and 3) the handle/username per social media platform. Subject to and without waiving this and the General Objections above, Plaintiff Roy responds as follows:

Subpart 1) Do they use social media? Yes

Subpart 2) Identify social media platforms they use. Facebook

Subpart 3) Identify the handle/username for those social media accounts. Virginia Roy, Gin & Juice

Discovery is ongoing and Plaintiff Roy reserves the right to supplement or amend these responses as additional information becomes available.

As to Answers:
10-31-22
DATE:

Virginia Roy

As to Objections:

DATE:

**MID-MINNESOTA LEGAL AID**

s/Justin Perl
Justin H. Perl (No. 0151397)
Dorinda L. Wider (No. 0162334)
Rebecca Stillman (No. 039855)
Luke Grundman (No. 0390565)
111 North Fifth Street, Suite #100
Minneapolis, MN 55403-1604
Tel: (612) 332-1441
Email:  jperl@mylegalaid.org
        dlwider@mylegalaid.org
        rstillman@mylegalaid.org
        lgrundman@mylegalaid.org

**AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA**

s/Teresa Nelson
Teresa Nelson (No. 0269736)
Clare Diegel (No. 0400758)
PO Box 14720
Minneapolis, MN 55414
Tel: (612) 274-7791
Email:  tnelson@aclu-mn.org
        cdiegel@aclu-mn.org

Ian Bratlie (No. 319454)
American Civil Liberties Union of Minnesota
P.O. Box 907
Mankato, MN 56002
Tel: (507) 995-6575
Email: ibratlie@aclu-mn.org

**BALLARD SPAHR LLP**

s/Isabella Salomão Nascimento
Isabella Salomão Nascimento (No. 0401408)
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402

8

612-371-3281
Email: salomaonascimentoi@ballardspahr.com

*Attorneys for Plaintiffs*

# EXHIBIT 139



**Minnesota Housing Finance Agency**
**Housing Trust Fund**
**Ending Long-Term Homelessness Initiative Fund**
**Tenant-Based Rental Assistance Program**

### LEASE ADDENDUM

The terms of this Addendum (the "Addendum") are incorporated into the Lease between

Izzat Minhas / *MINHAS PROPERTIES, LLC* (the "Owner") and

Virginia Roy _____ (the "Tenant") for the following dwelling unit:

5750 33rd Ave. South #3 Minneapolis MN 55417 _____ (the "Dwelling Unit").
(address, unit number, city, zip)

**1.    Rental Subsidy Contract.**  The Owner will enter into a Rental Subsidy Contract with the administrator of a tenant-based rental assistance program (the "Administrator") funded by the Minnesota Housing Finance Agency's Housing Trust Fund and the Ending Long-Term Homelessness Initiative Fund Rental Assistance Program (the "HTF/ELHIF Program").  In accordance with the Rental Subsidy Contract, the Administrator will make monthly Rental Subsidy Payments to the Owner on behalf of the Tenant to help the Tenant lease the Dwelling Unit from the Owner.

**2.    Conflict with Other Provisions of Lease.**  If there is any conflict between this Addendum and any provision of the Lease, this Addendum prevails.

**3.    Monthly Rent.**

(a)    The total monthly rent (the "Contract Rent") payable to the Owner during the term of the Lease is $ 995.00 _____.  The Contract Rent must not increase during the term of the Lease.

(b)    The portion of the Contract Rent payable by the Tenant (the "Tenant Rent") is an amount determined by the Administrator in accordance with HTF/ELHIF Program requirements.  The Tenant Rent as determined by the Administrator is the maximum amount that the Owner can require the Tenant to pay as rent for the Dwelling Unit and must include all services, maintenance, and utilities to be provided by the Owner in accordance with the Lease.

(c)    Each month during the term of the rental subsidy as set forth below, for so long as the Tenant is eligible for a rental subsidy under the HTF/ELHIF Program, the Administrator will make a Rental Subsidy Payment to the Owner on behalf of the Tenant in accordance with the Rental Subsidy Contract.  The Rental Subsidy Payment is the difference between the Contract Rent and the Tenant Rent, up to a maximum amount permitted by the HTF/ELHIF Program.

(d)    The amounts of the Tenant Rent and the Rental Subsidy Payment are subject to change as determined by the Administrator during the term of the Lease.  Any change in the amount of the Tenant Rent and the Rental Subsidy Payment and the effective date of the change will be stated in a written notice from the Administrator to the Tenant and the Owner.  Initially and until further notice from the Administrator, the amounts payable by the Tenant and the Administrator to the Owner are as follows:

$ 233.00 _____ Tenant Rent (payable by the Tenant)

Lease Addendum
Housing Trust Fund and Ending Long-Term Homelessness
Initiative Fund
Tenant-Based Rental Assistance Program

1 of 4

6/14

ROY0000001

$ 762.00_____ Rental Subsidy Payment (payable by the Administrator)

4. **Term of Rental Subsidy.** The Administrator will begin making Rental Subsidy Payments to the Owner on 1/1/2022_____ and will continue [until 1/1/2023_____ ] OR [on a month-to-month basis]. The Rental Subsidy Contract and Payments may end sooner than this date if:

(a) The Tenant's monthly income is above the HTF/ELHIF Program income limits for four consecutive months;

(b) The Owner evicts the Tenant for (i) serious or repeated violation of the terms and conditions of the Lease or (ii) violation of federal, state, or local law that imposes obligations on the Tenant in connection with the occupancy or use of the Dwelling Unit and the surrounding property; or

(c) The Sponsor receives notice that the lease has been terminated.

(d) The Owner receives notice that the Tenant is terminated from the HTF/ELHIF Program.

(e) The owner fails to maintain the dwelling unit so that it meets the housing maintenance code of the local unit of government in which the dwelling unit is located, or the quality standards adopted by the United States Department of Housing and Urban Development.

5. **Security Deposit.** The Owner must handle any security deposit given to it by the Tenant in accordance with Minnesota law, specifically, Minnesota Statutes section 504B.178

6. **Maintenance.** The Owner must maintain the Dwelling Unit so that it meets meet the housing maintenance code of the local unit of government in which the Dwelling Unit is located, if such a code has been adopted, or the housing quality standards adopted by the United States Department of Housing and Urban Development, if no local housing maintenance code has been adopted.

7. **Non-Discrimination.** The Owner shall not discriminate against the Tenant household in the provision of services or in any other manner because of race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance, disability, sexual orientation, or familial status.

8. **Prior Agreements.** Upon signing the Lease, any prior lease or agreement, oral or written, affecting the Dwelling Unit is null and void. No additional agreements or provisions, oral or written, may be added without approval of the Administrator.

9. **Effective Date.** This Addendum shall not become effective until the Owner and the Administrator execute the Rental Subsidy Contract.

10. **Prohibited Lease Provisions.** Notwithstanding anything to the contrary contained in the Lease, any Lease provision that falls within the categories set forth below will be inapplicable.

(a) <u>Agreement to be Sued.</u> Agreement by the Tenant to be sued, to admit guilt, or to a judgment in favor of the Owner in a lawsuit brought in connection with the Lease.

(b) <u>Treatment of Property.</u> Agreement by the Tenant that the Owner may take, hold, or sell personal property of household members without notice to the Tenant and a court decision on the rights of the parties. This provision does not apply to an agreement by the Tenant concerning disposition of personal property

Lease Addendum
Housing Trust Fund and Ending Long-Term Homelessness
Initiative Fund
Tenant-Based Rental Assistance Program

2 of 4

6/14

ROY0000002

remaining in the Dwelling Unit after the Tenant has moved out of the Dwelling Unit. The Owner may dispose of this personal property in accordance with Minnesota law.

    (c)    <u>Excusing Owner from Responsibility.</u> Agreement by the Tenant not to hold the Owner or the Owner's agent legally responsible for any action or failure to act, whether intentional or negligent.

    (d)    <u>Waiver of Notice.</u> Agreement by the Tenant that the Owner may institute a lawsuit without notice to the Tenant.

    (e)    <u>Waiver of Legal Proceedings.</u> Agreement by the Tenant that the Owner may evict the Tenant or household members without instituting a civil court proceeding in which the Tenant has the opportunity to present a defense, or before a court decision on the rights of the parties.

    (f)    <u>Waiver of Jury Trial.</u> Agreement by the Tenant to waive the Tenant's right to a trial by jury.

    (g)    <u>Waiver of Right to Appeal Court Decision.</u> Agreement by the Tenant to waive the Tenant's right to appeal, or otherwise challenge in court, a court decision in connection with the Lease.

    (h)    <u>Tenant Chargeable with Cost of Legal Actions Regardless of Outcome of Lawsuit.</u> Agreement by the Tenant to pay attorney's fees or other legal costs even if the Tenant wins in a court proceeding by the Owner against the Tenant. The Tenant, however, may be obligated to pay costs of the Tenant loses.

Lease Addendum
Housing Trust Fund and Ending Long-Term Homelessness
Initiative Fund
Tenant-Based Rental Assistance Program

3 of 4

6/14

ROY0000003

**Signature Page to Lease Addendum**
**(All adults 18 and over must sign)**

| OWNER | TENANT |
|---|---|
| Izzat Minhas | Virginia Roy |
| Print or Type Name of Landlord | Print or Type Name of Tenant |
| | *Virginia Roy* |
| By: _[signature]_ | Signature of Tenant |
| Date Signed  3/11/2022 | Date Signed  3/14/2022 |
| *IZZAT MINHAS* | |
| Print or Type Name and Title of Signatory | Print or Type Name of Tenant |
| Telephone Number (612)250-7607 | Signature of Tenant |
| | Date Signed _____ |
| | Telephone Number_____ |

Lease Addendum
Housing Trust Fund and Ending Long-Term Homelessness
Initiative Fund
Tenant-Based Rental Assistance Program

4 of 4

6/14

ROY0000004



**Minnesota Housing Finance Agency**
**Housing Trust Fund**
**Ending Long-Term Homelessness Initiative Fund**
**Tenant-Based Rental Assistance Program**

### RENTAL SUBSIDY CONTRACT

**THIS CONTRACT** is entered into this __1st__ day of __January__, 20__2022__, between __Izzat Minhas__ located at __1020 Mildred Dr. Richfield MN 55423__ (the "Owner"), and __AVIVO__, a __Non-Profit__, located at __1825 Chicago Ave. Mpls. MN 55404__ (the "Administrator").

### RECITALS

A.    The Administrator has been selected by the Minnesota Housing Finance Agency ("MHFA") to participate in its Housing Trust Fund and Ending Long-Term Homelessness Initiative Fund Rental Assistance Program (the "HTF/ELHIF Program"), pursuant to which the Administrator will establish and administer a tenant-based rental assistance program (the "Local Program") in accordance with Minnesota Statutes section 462A.201.

B.    Under the Local Program, the Administrator will make monthly rental subsidy payments ("Rental Subsidy Payments") to the Owner on behalf of a tenant identified herein to assist the tenant in renting a dwelling unit from the Owner.

C.    The Owner and the Administrator wish to set forth the terms and conditions under which the Owner will receive Rental Subsidy Payments from the Administrator.

### AGREEMENT

1.    **Tenant; Dwelling Unit; Form of Lease.**

   a.    This Contract applies only to the following tenants (collectively, the "Tenant"):

   Names of all adults aged 18 or over:

   Virginia Roy

   b.    This Contract applies only to the following dwelling unit (the "Dwelling Unit"):

   5750 33rd Ave. S. #3
   **(Address, Unit Number)**

   Minneapolis MN 55417
   **(City, State, ZIP)**

   c.    The Owner shall rent the Dwelling Unit to the Tenant pursuant to a written lease and a lease addendum (collectively, the "Lease") in forms approved by the Administrator.  No changes may be made to the Lease unless approved in writing by the Administrator.

Rental Subsidy Contract
Housing Trust Fund and Ending Long-Term Homelessness
Initiative Fund
Tenant-Based Rental Assistance Program

1 of 6

6/14

ROY0000005

2.    **Contract Rent.** The total monthly rent (the "Contract Rent") payable to the Owner for the Dwelling Unit is set out in the Lease. The Contract Rent must not increase during the term of the Lease.

3.    **Rental Subsidy Payment; Tenant Rent.**

(a)    For each month that the Tenant is eligible for a rental subsidy under the Local Program and leases and occupies the Dwelling Unit, the Administrator shall make a Rental Subsidy Payment to the Owner on behalf of the Tenant. The Rental Subsidy Payment shall be the difference between the Contract Rent and the portion of the Contract Rent for which the Tenant is responsible (the "Tenant Rent"), up to a maximum amount permitted by the HTF/ELHIF Program. The Tenant is fully responsible for paying the Tenant Rent, and the Administrator has no obligation to pay the Owner any portion of Contract Rent in excess of the Rental Subsidy Payment.

(b)    The amount of the Rental Subsidy Payment cannot exceed the Contract Rent. If the Rental Subsidy Payment exceeds the Contract Rent, the Owner shall immediately return any excess payment to the Administrator.

(c)    The Administrator shall determine the amount of Tenant Rent, to be paid by the Tenant to the Owner, in accordance with HTF/ELHIF Program requirements. The Tenant Rent as determined by the Administrator is the maximum amount that the Owner may require the Tenant to pay as rent for the Dwelling Unit and must include all services, maintenance, and utilities to be provided by the Owner in accordance with the Lease.

(d)    The amounts of the Rental Subsidy Payment and the Tenant Rent are subject to change as determined by the Administrator during the term of the Lease. Any change in the amount of the Rental Subsidy Payment or the Tenant Rent and the effective date of the change shall be stated in a written notice from the Administrator to the Tenant and the Owner. Initially and until further notice from the Administrator, the amounts payable by the Tenant and the Administrator to the Owner are as follows:

$ 762.00 _____ Rental Subsidy Payment (payable by the Administrator)

$ 233.00 _____ Tenant Rent (payable by the Tenant)

(e)    If the Tenant terminates occupancy of the Dwelling Unit or if the Owner evicts the Tenant in accordance with applicable laws, the Owner must promptly notify the Administrator in writing. The Owner may retain the Rental Subsidy Payment for the month in which the Tenant moves but shall not receive subsequent Rental Subsidy Payments.

(f)    The right of the Owner to receive Rental Subsidy Payments is conditioned upon compliance with all provisions set forth in this Contract.

4.    **Term of Contract.** The Administrator will begin making Rental Subsidy Payments to the Owner on 1/1/2022 _____ and will continue [until 1/1/2023 _____] OR [on a month-to-month basis]. The Rental Subsidy Contract and Payments may end sooner than this date if:

(a)    The Tenant's monthly income is above the HTF/ELHIF Program income limits for four consecutive months;

(b)    The Owner evicts the Tenant for (i) serious or repeated violation of the terms and conditions of the Lease or (ii) violation of federal, state, or local law that imposes obligations on the Tenant in connection with the occupancy or use of the Dwelling Unit and the surrounding property; or

Rental Subsidy Contract
Housing Trust Fund and Ending Long-Term Homelessness
Initiative Fund
Tenant-Based Rental Assistance Program

2 of 6

6/14

ROY0000006

(c)    The Administrator receives notice that the lease has been terminated.

(d)    The Owner receives notice that the Tenant is terminated from the HTF/ELHIF program.

(e)    The owner fails to maintain the dwelling unit so that it meets the housing maintenance code of the local unit of government in which the dwelling unit is located, or the quality standards adopted by the United States Department of Housing and Urban Development.

5.    **Owner's Receipt of Rental Subsidy Payment.**  The Administrator shall make Rental Subsidy Payments to the Owner on or about the first day of each month for which payment is due under this Contract.  The Owner's endorsement of each check from the Administrator shall represent the Owner's acknowledgement that the Owner has received the full amount due from the Administrator for the month and is the Owner's certification that:

(a)    The Dwelling Unit complies with the requirements of Section 7(a) hereof and the Owner is providing all the services, maintenance, and utilities agreed to under the Lease;

(b)    The Dwelling Unit is leased to the Tenant named in Section 1(a) hereof and the Lease complies with Section 1(c) hereof;

(c)    The Rental Subsidy Payment does not exceed the Contract Rent;

(d)    Neither the Tenant nor the Administrator own or have any interest in the property where the Dwelling Unit is located;

(e)    The Owner has not received and will not receive any other form of tenant-based, sponsor based, or project-based rental assistance for the Dwelling Unit during the term of this Contract other than the HTF/ELHIF Rental Subsidy Payment; and

(f)    To the best of the Owner's knowledge, the Dwelling Unit will be used solely as a residence, will be the Tenant's primary residence, and will be occupied by the Tenant full-time.

If the Administrator determines that the Owner is not entitled to some or all of any Rental Subsidy Payment, the Administrator may deduct the overpayment from any amount due the Owner, require the Owner to repay the overpaid funds, or pursue any other remedies available to it.

6.    **Security Deposits.**  The Owner shall handle any security deposit given to it by the Tenant in accordance with Minnesota law, specifically, Minnesota Statutes section 504B.178

7.    **Maintenance.**

(a)    The Owner shall maintain the Dwelling Unit so that it meets the housing maintenance code of the local unit of government in which the Dwelling Unit is located, if such a code has been adopted, or the housing quality standards adopted by the United States Department of Housing and Urban Development, if no local housing maintenance code has been adopted.  The Administrator shall not make Rental Subsidy Payments to the Owner if the Dwelling Unit does not comply with the requirements of this Section 7(a) unless the Owner promptly corrects the defects and the Administrator approves the corrections.

Rental Subsidy Contract
Housing Trust Fund and Ending Long-Term Homelessness
Initiative Fund
Tenant-Based Rental Assistance Program

3 of 6

6/14

ROY0000007

(b)   Upon initial occupancy of the Dwelling Unit and annually thereafter, the Administrator shall inspect the Dwelling Unit and related facilities, upon reasonable notice to the Owner, to assure that the Dwelling Unit complies with the requirements of Section 7(a) hereof and that the Owner is providing all the services, maintenance, and utilities agreed to under the Lease.  The Administrator has the right to inspect the Dwelling Unit and related facilities more often than annually, upon reasonable notice to the Owner, as necessary to assure compliance with this Contract.

8.   **Non-Discrimination.**  The Owner shall not discriminate against the Tenant household in the provision of services or in any other manner because of race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance, disability, sexual orientation, or familial status.  The Owner shall cooperate with the Administrator and MHFA if compliance reviews or complaint investigations must be conducted under federal, state, or local civil rights laws or regulations.

9.   **Access to Dwelling Unit and Records.**  The Owner shall provide any information with respect to this Contract that the Administrator or MHFA reasonably require.  The Owner shall permit the Administrator, MHFA, or any of their authorized representatives to have access to the Dwelling Unit and the surrounding premises and to audit and examine any books, documents, papers, or records of the Owner necessary to determine compliance with this Contract.

10.   **Events of Default.**  The following shall constitute Events of Default under this Contract:

(a)   The Owner fails to comply with any of the requirements or fulfill any of the obligations set forth in this Contract or the Lease.

(b)   The Owner commits any fraud or makes any false statement to the Administrator or MHFA in connection with this Contract, the HTF/ELHIF Program, or any federal or state housing assistance program.

11.   **Rights and Remedies.**  Upon the occurrence of an Event of Default, and at any time thereafter until the Event of Default is cured to the satisfaction of the Administrator, the Administrator may exercise any and all of the rights and remedies available to it, including but not limited to terminating or reducing Rental Subsidy Payments, recovering overpayments, and terminating this Contract.  The Administrator shall notify the Owner in writing of the occurrence of any Event of Default and of any remedies that the Administrator chooses to exercise

12.   **Waivers.**  No waiver by the Administrator of any default hereunder shall operate as a waiver of any other default, or of the same default on a future occasion.  No delay on the part of the Administrator in exercising any right or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy preclude other or further exercise thereof or the exercise of any other right or remedy.  The rights and remedies specified herein are cumulative and not exclusive of any rights or remedies that the Administrator would otherwise have.

13.   **Relationship to Third Parties.**

(a)   The Administrator assumes no liability or responsibility for injury to any person injured as a result of the Owner's action or failure to act in connection with this Contract or as a result of any other action or failure to act by the Owner.

(b)   The Owner is not the agent of the Administrator, and this Contract does not create or affect any relationship between the Administrator and any lender to the Owner or any suppliers, employees, contractors, or subcontractors used by the Owner in implementing this Contract.

Rental Subsidy Contract
Housing Trust Fund and Ending Long-Term Homelessness
Initiative Fund
Tenant-Based Rental Assistance Program

4 of 6

6/14

ROY0000008

(c)    Nothing in this Contract shall be construed as creating any rights of the Tenant or other third party, other than MHFA, to enforce any provisions of this Contract or to assert any claim against the Administrator, the Owner, or MHFA.

14.    **Assignment of Contract.**  The Owner shall not transfer or assign its rights under this Contract without the prior written consent of the Administrator.  A change in ownership of the Owner, such as a stock transfer or transfer of the interest of a limited partner, shall not constitute such a transfer or assignment; however, a transfer of a general partner's interest must be approved in writing by the Administrator.  The Administrator shall consent to a transfer or assignment if the transferee agrees in writing, in a form acceptable to the Administrator, to comply with all of the terms and conditions of this Contract and the Local Program.

15.    **Governing Law and Entire Agreement.**  This Contract shall be governed by the laws of the State of Minnesota and contains the entire agreement of the parties on the matters covered herein.  No other agreement, statement, or promise made by any party, or by any employee, officer, or agent of any party, that is not in writing and signed by all the parties to this Contract shall be binding.

ROY0000009

Signature Page to Rental Subsidy Contract

OWNER

_(Signature of Owner or Authorized Representative)_

*IZZAT MINHAS*

_(Print or Type Name)_

ADMINISTRATOR

*Tammy Callanan*

_(Authorized Signature of Administrator)_

Tammy Callanan

_(Print or Type Name)_

Rental Subsidy Contract
Housing Trust Fund and Ending Long-Term Homelessness
Initiative Fund
Tenant-Based Rental Assistance Program

6 of 6

6/14

ROY0000010

# EXHIBIT 140

## Goldmark Property Management, Inc.
### Lease Agreement

**RESIDENT CODE:** t0374789

**SITE OFFICE:** Amberwood Court  **PHONE:** (701) 780-2090

**PROPERTY:** Amberwood Court  **APT #:** 01-036

**INCLUDED WITH APARTMENT RENT: PARKING #:** Plg36  **GARAGE #:**   **STORAGE #:**

**ADDRESS:** 2520 9th Ave. So.  **CITY:** Grand Forks **STATE:** ND

**RESIDENT(S):** Joel Westvig

**OTHER PARTIES:** Goldmark Property Management, Inc. is hereafter referred to as "**Management**".

**LEASE PERIOD:** This Lease Agreement shall become effective on 05/04/2022 and shall continue until 05/31/2023. Upon fulfillment of the original lease term, unless terminated as set forth below, this Lease Agreement and all of its terms shall remain in effect, with the exception of rent increases, and shall automatically renew on a month-to-month basis, until proper notice of termination is furnished. If Resident(s) wishes to remain on a month-to-month lease, a month-to-month fee will apply in the amount of $75.00 per month. Rent will be prorated if the effective date is not the first day of the month.

**TERMINATION:** Either party may terminate this Lease Agreement at the end of the fixed term as defined above. In order for that notice of termination to be proper, it must be (A) written; and (B) received by Management on or before the first day of the month, which is at least **TWO FULL CALENDAR MONTHS** prior to the end of the lease period. If this Lease Agreement has been renewed on a month-to-month basis, the notice of termination can be given by either party in writing at least one full calendar month prior to the end of the lease period. Any notice of termination is effective as of the last day of the month only and surrender of the premises must be no later than 12 noon on the last day of the month. No surrender of the premises will be considered accepted by Management without written consent of Management. Any other form of termination must be agreed upon in writing by both parties. **FAILURE TO GIVE PROPER NOTICE OF TERMINATION WILL RESULT IN THE RESIDENT(S) BEING RESPONSIBLE FOR ANY RENT DUE FOR THE REMAINING LEASE PERIOD FOR WHICH YOU ARE LEGALLY RESPONSIBLE, IN ADDITION TO AN EARLY TERMINATION CHARGE OF $300.00. UPON TERMINATION OF THE LEASE AGREEMENT, RESIDENT(S) SHALL PROVIDE MANAGEMENT WITH A FORWARDING ADDRESS.**
**TERMINATION ACKNOWLEGEMENT:** Initial(s)

**RENT:** The monthly apartment rent of $680.00 shall be due on or before the first day of each month payable at the leasing office. If the rent is not received at the end of the first day of the month, Resident(s) shall be in default. RENT RECEIVED AFTER THE FIRST DAY OF THE MONTH SHALL BE ASSESSED A LATE FEE, as described below. Acceptance of partial payments by Management shall be at Management's sole discretion and shall not constitute a waiver of any of its rights to receive payment in full or to commence an unlawful detainer action for non-payment of rent, nor shall it be construed as an extension of the time to pay. Resident(s) are responsible for all collection fees incurred by Management for the collection of all amounts owed, to the extent and if permitted by state law. If Resident(s) chooses to pay by check or automatic withdrawal, they authorize GOLDMARK to process all lease obligation payments electronically through the Automated Clearing House (ACH) system in accordance with the dates and amounts listed on the check, or as indicated on the Direct Debit Authorization Form. If Resident(s) has signed an authorization for such payments, Resident(s) agrees that they are estopped from making any waiver argument in the event of lease termination.

**LATE FEES:** Resident(s) shall be assessed a late fee of $40.00 for any rent received after the first day of the month, and an **additional** $40.00 will be assessed if rent is not received by the fifteenth. Management reserves the right to reject partial rent payment. Management will **not accept cash**, and all rent must be paid by check, certified funds, money order or automatic withdrawal.

**NSF CHARGE:** Resident(s) will be assessed an NSF charge in accordance with state law for any funds that do not clear the bank.

**APPLICATION OF MONIES:** Management reserves the right to apply monies received in the following order: 1) security deposit/pet fee; 2) application fees; 3) late fees; 4) NSF fees; 5) attorney's fees and costs, to the extent and if permitted by state law; 6) repair, damages/cleaning expenses; 7) incentives; 8) rent/pet rent.

**ALL RESIDENTS RESPONSIBLE FOR ALL DEBTS:** Each Resident is individually responsible for paying the full amount of all obligations under the lease, not just a proportionate share. Roommates are jointly and severally responsible.

**DEPOSIT:** A security deposit in the amount of $500.00 shall be paid at the time of the execution of this Agreement, to be held, applied, and processed by Management in accordance with State Law. Security deposit will remain with the apartment if roommates change. Resident(s) may choose to reduce or eliminate the security deposit by purchasing a surety bond and completing a Surety Bond Addendum to this Lease.

**OCCUPANCY:** This property will be occupied by the following Resident(s): Joel Westvig, and any other occupants, whom all agree to comply with all written policies and procedures established by Management and shall not modify the premises without Management's prior written consent. All other occupants must be approved in writing by Management. Resident(s) agrees to reimburse Management within 10 days, for any loss, property damage, or cost of repairs or service caused by negligence or improper use by Resident(s), agents, family or guests. Failure to pay within 10 days will result in late fees assessment as set forth in this Lease Agreement. Resident(s) may not sub-let any part of the premises or assign this Lease Agreement without prior written consent of Management. Resident(s) shall maintain the apartment home and the rest of the property in a clean and neat manner and shall not do anything to disturb the occupancy of other Resident(s) or violate any public law, regulation, or ordinance. Resident(s)

WESTVIG0000003

## Goldmark Property Management, Inc.
### Lease Agreement

consent that this property is to be used for residential housing only. Resident(s) shall provide written notification to Management of any extended absences anticipated to last seven days or longer. Such notice shall be provided no later than the first day of the extended absence.

**NON-LIABILITY OF MANAGEMENT**: Neither Management nor Owner is responsible for any injury, property damage, or loss of property caused to Resident(s) or Resident'(s) guests or invitees, unless resulting from gross negligence or intentional conduct of Management.

**DAMAGE/UNINHABITABLE**: In case during the term hereof, the premises becomes uninhabitable because of water, fire or other casualty, then this Lease shall become null and void, and Management shall not be liable for any consequential damages to Resident(s). Resident(s) is liable for all damages caused by the negligence of Resident(s) or Resident'(s) guests or invitees.

**DEFAULT**: Should Resident(s) fail to pay rent or should Resident(s) default under any material condition of this Lease Agreement, Management, at its discretion, may give the Resident(s) a notice of intention to evict, in accordance with State Law. If permitted by law, Resident(s) shall pay all court costs and attorney's fees incurred by Management in enforcing its right under this Lease Agreement, whether or not legal action is initiated.

**DUTY TO PAY RENT AFTER EVICTION**: If Resident(s) is evicted by Management, whether or not Management obtains a court order to enforce its eviction notice, Resident(s) agrees to continue paying the full amount of the rent for the full remaining Lease, or until the premises is re-rented (including early termination fee), whichever occurs sooner.

**ANIMALS**: NO animals unless each individual animal is allowed by written consent from Management and is accompanied by Management's Pet Addendum.

**CARPET**: All carpeting will be PROFESSIONALLY STEAM CLEANED before Resident(s) take possession of premises. If permitted by state law, all carpets will be PROFESSIONALLY STEAM CLEANED at Resident(s) expense at the time Resident(s) vacate(s) the property. A receipt for completion of this service will be required at the time Resident(s) vacate(s) the property. To the extent and if permitted by state law, failure to provide receipt of carpets being professionally steam cleaned at move-out will result in the carpets being professionally steam cleaned at Resident'(s) expense.

**GRILLS**: Charcoal grills, smokers, and fryers are not allowed and all gas grills must be kept three feet, or as city ordinance prohibits, away from the building.

**INSURANCE**: IT IS THE RESPONSIBILITY OF EACH RESIDENT TO INSURE PERSONAL POSSESSIONS. It is recommended that Resident(s) obtain renters insurance to protect against liability claims and damage to the premises caused by Resident(s) or Resident'(s) Guest. It is recommended that Resident(s) obtain insurance to cover loss or damage to their personal possessions. Resident(s) acknowledges that Resident(s) will be responsible to others for the full cost of any injury, loss, or damage caused by Resident(s) or Resident'(s) Guests. Resident(s) is not to be considered co-insured with Management/Owner on any of the Management/Owners insurance policies and resident will not be covered by such insurance. Management is not liable for any damage or offset of rent because of utility interruptions or other services furnished to Resident(s).

**EXPENSES**: Will be allocated as follows:

| | BASIC CABLE | ELECTRICITY | HEAT | HOT WATER HEATER | LAWN CARE | GARBAGE | SEWER | SNOW REMOVAL PARKING LOT | SNOW REMOVAL BLCNY/GRG | WATER |
|---|---|---|---|---|---|---|---|---|---|---|
| Owners Expense | | | X | X | X | X | X | X | | X |
| Resident(s) Expense | X | X | | | | | | | | |

PRIOR TO RECEIVING KEYS, RESIDENT(S) SHALL PROVIDE DOCUMENTATION THAT ALL UTILITY BILLS HAVE BEEN PLACED IN RESIDENT'S NAME. In the event Resident(s) defaults on the Lease Agreement, the Resident(s) is responsible for the monthly utilities on the apartment until such time as the apartment has been re-rented or the lease expires. Notwithstanding the allocation above, Resident(s) is responsible for any utility administrative fees assessed by a government agency. ***Does not include auxiliary heaters.

**ADDENDA TO THE LEASE**: A violation of a material term in any of the addenda will be deemed a material violation of the lease.

| EPA Disclosure | Pest | Pet | Resident Handbook | Satellite | Smoke Free | Utility | Surety Bond |
|---|---|---|---|---|---|---|---|
| X | X | | X | X | | | |

**RIGHT OF ENTRY**: Management and its Agents may enter the Apartment Home at any reasonable time, in accordance with State Law, to inspect, improve, maintain or repair the Apartment, or do other necessary work, or to show the Apartment Home to potential new Resident(s) or buyers. Management and its Agents may also enter premises without notice in certain situations in accordance with State Law.

WESTVIG0000004

## Goldmark Property Management, Inc.
### Lease Agreement

**DIGITAL RECORDS**: Resident hereby authorizes Management and its employees and contractors to photograph or video record the interior of my apartment unit if needed for periodic or other inspections, and resident hereby releases and discharges Management, its employees, contractors and any owners of the property from any claims or causes of action as a result of such photographic or video recording.

**SMOKE ALARMS**: Resident(s) shall be solely responsible for the upkeep, maintenance and operation of all smoke alarms within the Apartment Home, including but not limited to, battery replacement. Resident(s) shall notify Management in writing of any stolen, missing or inoperable smoke alarms.

**SPECIAL TERMS**: 1) This Lease Agreement is expressly contingent on Management's signature and verification and approval of all background information of Resident(s). 2) Any and all incentives must be repaid by Resident(s), if Lease term is unfulfilled.

| | Special Terms Description | Special Terms Value in $ |
|---|---|---|
| 1 | | 0.00 |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

This Lease Agreement constitutes the entire agreement between the parties, and no amendment to this agreement shall be valid unless made in writing, signed by both parties, and attached to this lease agreement. If any court declares a particular provision of this lease agreement or its attachments to be invalid or illegal, all other terms of this agreement shall remain in effect and both Management and Resident(s) shall continue to be bound by them. Goldmark takes your privacy seriously. None of your personal information, including telephone numbers and email addresses, will be shared with a 3rd party for any reason without your written consent. Resident(s) and Management acknowledge that they have read and received a copy of this Lease Agreement and all Addenda to the Lease Agreement. An owner of the premises or Agent authorized to accept service of process, receive and give receipts for notices and demands is Goldmark Property Management, Inc., located at **4340 18th Ave S, Suite 200, P.O. Box 3024, Fargo, ND 58108** and is authorized to manage the premises.

| _(signature)_ | 05/04/22 | | |
|---|---|---|---|
| Resident | Date | Resident | Date |

| | | | |
|---|---|---|---|
| Resident | Date | Resident | Date |

| | | | |
|---|---|---|---|
| Resident | Date | Resident | Date |

| | | | |
|---|---|---|---|
| Resident | Date | Resident | Date |

| _(signature)_ | 5/4/22 | |
|---|---|---|
| Manager | Date | |



WESTVIG0000005

**Goldmark Property Management, Inc.**
**Pest Addendum**

| | | | |
|---|---|---|---|
| **RESIDENT CODE:** | t0374789 | | |
| **SITE OFFICE:** | Amberwood Court | **PHONE:** | (701) 780-2090 |
| **PROPERTY:** | Amberwood Court | | |
| **PREMISES:** | 2520 9th Ave. So., Grand Forks, ND 58201 | | |

This Pest Addendum to the Lease Agreement ("**Addendum**") shall become effective on 05/04/2022 by and between Joel Westvig, ("**Resident(s)**"), and Goldmark Property Management, Inc., ("**Management**").

Resident(s) represents and warrants that all furnishings and personal property which will be moved into the premises are free of all pests.

Resident(s) agrees to prevent and control possible infestation by adhering to the below list of responsibilities:

1.  Resident(s) shall use reasonable diligence in caring for the residence and shall maintain the rental home in a clean and sanitary condition.  Resident(s) shall keep the rental home free from pests of any kind and free from conditions that might permit or encourage an infestation of pests.  Examples of pests include but are not limited to bedbugs, mice, roaches and ants.

2.  Management will be responsible for arranging and managing all pest control efforts.  Resident(s) shall be responsible for the cost of pest control if:

    a.  Resident causes the infestation.
    b.  Resident fails to immediately notify Management of any suspected pests.
    c.  Resident fails to comply with pest control recommendations or otherwise fails to cooperate with pest control efforts.
    d.  Resident fails to comply with any other term of this Addendum.

    Management shall be responsible for the cost of pest control otherwise.

3.  Resident(s) shall check for pests, especially but not limited to bedbugs, prior to bringing belongings into the rental home.  If you stay in a hotel or another home, inspect your clothing, luggage, shoes and personal belongings for signs of pests before re-entering your rental Premises.

4.  Resident(s) shall report any suspected pest problems immediately to Management.  Not reporting problems immediately can allow a few pests to quickly multiply and spread to other rental homes.

5.  Resident(s) will cooperate with pest control efforts.  If your rental home or a neighboring rental home is infested, a pest control professional may be necessary.  Your rental home must be properly prepared for treatment.  Resident(s) must comply with all recommendations and requests from Management and/or the pest control company prior to and following professional treatment.

    a.  Recommendations for bedbugs may include, but are not limited to:
        i.   Bagging and removing items to be cleaned off-site.
        ii.  Washing all soft items on high heat and drying on high heat setting for a minimum of 30 minutes.  All items must be bagged prior to leaving apartment and bags must be disposed of in an outside trash bin.
        iii. Bagging and disposal of any infested items, including, but not limited to, mattresses, box springs and sofas.  All disposed of items must be enclosed in plastic or large garbage bags to prevent dropping of bugs and eggs on their way to the outdoor trash site.
        iv.  Moving all belongings several feet from the wall.
        v.   Emptying dressers, closets and cabinets.  Removing all items from the floor and bagging of belongings.
        vi.  Vacating home for a period of up to 10 hours.
        vii. Vacuuming all floors and furniture, including the mattress and box spring.  Immediately disposing of vacuum cleaner debris, in a tightly sealed bag, to the outside trash container.

WESTVIG0000006

## Goldmark Property Management, Inc.
### Pest Addendum

b. Recommendation for roaches, mice and other pests may include, but are not limited to:
    i. Emptying all cabinets and cupboards.
    ii. Permanently removing excessive clutter, including bags and boxes, from residence.
    iii. Sealing of dry food goods in airtight containers.

6. Resident(s) acknowledges that proper preparation is a mandatory requirement for pest control to be effective. Resident(s) acknowledges that all preparation is the responsibility of the Resident(s). Resident(s) further acknowledges that preparation must be completed by the timeline set by Management.

7. Resident(s) agrees that if the rental home becomes infested with pests, Management may use all reasonable methods determined by Management to be appropriate to eradicate the pests.

8. Resident(s) agrees to indemnify and hold Management harmless from any actions, claims, losses, damages and expenses including, but not limited to, attorneys fees brought or claimed by any third party that Management may defend or incur as a result of any pest issue proximately caused by Resident(s).

9. It is expressly acknowledged that Management shall not be liable for any loss of personal property to the Resident(s) as a result of a pest infestation. Resident(s) agrees to carry renter's insurance to cover such losses.

**By signing below, the undersigned Resident(s) agree and acknowledge having read and understood this Addendum to the Lease Agreement.**

| | | | |
|---|---|---|---|
| Resident | Date 5/4/22 | Resident | Date |
| Resident | Date | Resident | Date |
| Resident | Date | Resident | Date |
| Resident | Date 5/4/22 | Resident | Date |
| Manager | Date | | |



Pest Addendum

WESTVIG0000007

## Goldmark Property Management, Inc.
## Lead-Based Paint and/or Lead-Based Paint Hazards Disclosure

**Lead Warning Statement**

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust post health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 dwellings, Lessor must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

**Lessor's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards. Check (1) or (2) below:

(1) [ ]      Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

(2) [X]      Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the lessor. Check (1) or (2) below:

(1) [ ]      Lessor has provided lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

*All available records and reports are available upon request.*

(2) [X]      Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgement**

(c) Lessee has received copies of all information listed above. **(Initial)**

(d) Lessee has received the pamphlet *Protect Your Family from Lead in Your Home.* **(Initial)**

**Agent's Acknowledgement**

(e) Agent has informed the Lessor of the Lessor's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance. **(Initial)**



EPA Disclosure            Revised 06.18.2018            Page 1 of 2

WESTVIG0000008

**Goldmark Property Management, Inc.**
**Lead-Based Paint and/or Lead-Based Paint Hazards Disclosure**

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| Resident | Date | Resident | Date |
| Resident | Date | Resident | Date |
| Resident | Date | Resident | Date |
| Resident | Date | Resident | Date |
| Manager | Date | | |

EPA Disclosure                                    Revised 06.18.2018                                    Page 2 of 2

WESTVIG0000009

# EXHIBIT 141

# Goldmark Property Management, Inc.
## Lease Agreement

RESIDENT CODE: t0374789

SITE OFFICE: Amberwood Court          PHONE: (701) 780-2090
PROPERTY: Amberwood Court          APT #: 01-036

**INCLUDED WITH APARTMENT RENT: PARKING #:** Plg36 **GARAGE #: STORAGE #:**

**ADDRESS:** 2520 9th Ave. So.  **CITY:** Grand Forks **STATE:** ND

**RESIDENT(S):** Joel Westvig

**OTHER PARTIES:** Goldmark Property Management, Inc. is hereafter referred to as "**Management**".

**LEASE PERIOD:** This Lease Agreement shall become effective on 04/02/2021 and shall continue until 04/30/2022. Upon fulfillment of the original lease term, unless terminated as set forth below, this Lease Agreement and all of its terms shall remain in effect, with the exception of rent increases, and shall automatically renew on a month-to-month basis, until proper notice of termination is furnished. If Resident(s) wishes to remain on a month-to-month lease, a month-to-month fee will apply in the amount of $75.00 per month. If the effective date is not the first day of the month, prorated rent for the month of April will be $604.00.

**TERMINATION:** Either party may terminate this Lease Agreement at the end of the fixed term as defined above. In order for that notice of termination to be proper, it must be (A) written; and (B) received by Management on or before the first day of the month, which is at least **TWO FULL CALENDAR MONTHS** prior to the end of the lease period. If this Lease Agreement has been renewed on a month-to-month basis, the notice of termination can be given by either party in writing at least one full calendar month prior to the end of the lease period. Any notice of termination is effective as of the last day of the month only and surrender of the premises must be no later than 12 noon on the last day of the month. No surrender of the premises will be considered accepted by Management without written consent of Management. Any other form of termination must be agreed upon in writing by both parties. **FAILURE TO GIVE PROPER NOTICE OF TERMINATION WILL RESULT IN THE RESIDENT(S) BEING RESPONSIBLE FOR ANY RENT DUE FOR THE REMAINING LEASE PERIOD FOR WHICH YOU ARE LEGALLY RESPONSIBLE, IN ADDITION TO AN EARLY TERMINATION CHARGE OF $300.00. UPON TERMINATION OF THE LEASE AGREEMENT, RESIDENT(S) SHALL PROVIDE MANAGEMENT WITH A FORWARDING ADDRESS.**
TERMINATION ACKNOWLEGEMENT: Initial(s)

**RENT:** The monthly apartment rent of $625.00 shall be due on or before the first day of each month payable at the leasing office. If the rent is not received at the end of the first day of the month, Resident(s) shall be in default. RENT RECEIVED AFTER THE FIRST DAY OF THE MONTH SHALL BE ASSESSED A LATE FEE, as described below. Acceptance of partial payments by Management shall be at Management's sole discretion and shall not constitute a waiver of any of its rights to receive payment in full or to commence an unlawful detainer action for non-payment of rent, nor shall it be construed as an extension of the time to pay. Resident(s) are responsible for all collection fees incurred by Management for the collection of all amounts owed, to the extent and if permitted by state law. If Resident(s) chooses to pay by check or automatic withdrawal, they authorize GOLDMARK to process all lease obligation payments electronically through the Automated Clearing House (ACH) system in accordance with the dates and amounts listed on the check, or as indicated on the Direct Debit Authorization Form. If Resident(s) has signed an authorization for such payments, Resident(s) agrees that they are estopped from making any waiver argument in the event of lease termination.

**LATE FEES:** Resident(s) shall be assessed a late fee of $40.00 for any rent received after the first day of the month, and an **additional** $40.00 will be assessed if rent is not received by the fifteenth. Management reserves the right to reject partial rent payment. Management will **not accept cash**, and all rent must be paid by check, certified funds, money order or automatic withdrawal.

**NSF CHARGE:** Resident(s) will be assessed an NSF charge in accordance with state law for any funds that do not clear the bank.

**APPLICATION OF MONIES:** Management reserves the right to apply monies received in the following order: 1) security deposit/pet fee; 2) application fees; 3) late fees; 4) NSF fees; 5) attorney's fees and costs, to the extent and if permitted by state law; 6) repair, damages/cleaning expenses; 7) incentives; 8) rent/pet rent.

**ALL RESIDENTS RESPONSIBLE FOR ALL DEBTS:** Each Resident is individually responsible for paying the full amount of all obligations under the lease, not just a proportionate share. Roommates are jointly and severally responsible.

**DEPOSIT:** A security deposit in the amount of $500.00 shall be paid at the time of the execution of this Agreement, to be held, applied, and processed by Management in accordance with State Law. Security deposit will remain with the apartment if roommates change.

**OCCUPANCY:** This property will be occupied by the following Resident(s): Joel Westvig, and any other occupants, whom all agree to comply with all written policies and procedures established by Management and shall not modify the premises without Management's prior written consent. All other occupants must be approved in writing by Management. Resident(s) agrees to reimburse Management within 10 days, for any loss, property damage, or cost of repairs or service caused by negligence or improper use by Resident(s), agents, family or guests. Failure to pay within 10 days will result in late fees assessment as set forth in this Lease Agreement. Resident(s) may not sub-let any part of the premises or assign this Lease Agreement without prior written consent of Management. Resident(s) shall maintain the apartment home and the rest of the property in a clean and neat manner and shall not do anything to disturb the occupancy of other Resident(s) or violate any public law, regulation, or ordinance. Resident(s) consent that this property is to be used for residential housing only. Resident(s) shall provide written notification to Management of any extended absences anticipated to last seven days or longer. Such notice shall be provided no later than the first day of the extended absence.

WESTVIG0000012

## Goldmark Property Management, Inc.
### Lease Agreement

**NON-LIABILITY OF MANAGEMENT:** Neither Management nor Owner is responsible for any injury, property damage, or loss of property caused to Resident(s) or Resident'(s) guests or invitees, unless resulting from gross negligence or intentional conduct of Management.

**DAMAGE/UNINHABITABLE:** In case during the term hereof, the premises becomes uninhabitable because of water, fire or other casualty, then this Lease shall become null and void, and Management shall not be liable for any consequential damages to Resident(s). Resident(s) is liable for all damages caused by the negligence of Resident(s) or Resident'(s) guests or invitees.

**DEFAULT:** Should Resident(s) fail to pay rent or should Resident(s) default under any material condition of this Lease Agreement, Management, at its discretion, may give the Resident(s) a notice of intention to evict, in accordance with State Law. If permitted by law, Resident(s) shall pay all court costs and attorney's fees incurred by Management in enforcing its right under this Lease Agreement, whether or not legal action is initiated.

**DUTY TO PAY RENT AFTER EVICTION:** If Resident(s) is evicted by Management, whether or not Management obtains a court order to enforce its eviction notice, Resident(s) agrees to continue paying the full amount of the rent for the full remaining Lease, or until the premises is re-rented (including early termination fee), whichever occurs sooner.

**ANIMALS:** NO animals unless each individual animal is allowed by written consent from Management and is accompanied by Management's Pet Addendum.

**CARPET:** All carpeting will be PROFESSIONALLY STEAM CLEANED before Resident(s) take possession of premises. If permitted by state law, all carpets will be PROFESSIONALLY STEAM CLEANED at Resident(s) expense at the time Resident(s) vacate(s) the property. A receipt for completion of this service will be required at the time Resident(s) vacate(s) the property. To the extent and if permitted by state law, failure to provide receipt of carpets being professionally steam cleaned at move-out will result in the carpets being professionally steam cleaned at Resident'(s) expense.

**GRILLS:** Charcoal grills, smokers, and fryers are not allowed and all gas grills must be kept three feet, or as city ordinance prohibits, away from the building.

**INSURANCE:** IT IS THE RESPONSIBILITY OF EACH RESIDENT TO INSURE PERSONAL POSSESSIONS. It is recommended that Resident(s) obtain renters insurance to protect against liability claims and damage to the premises caused by Resident(s) or Resident'(s) Guest. It is recommended that Resident(s) obtain insurance to cover loss or damage to their personal possessions. Resident(s) acknowledges that Resident(s) will be responsible to others for the full cost of any injury, loss, or damage caused by Resident(s) or Resident'(s) Guests. Resident(s) is not to be considered co-insured with Management/Owner on any of the Management/Owners insurance policies and resident will not be covered by such insurance. Management is not liable for any damage or offset of rent because of utility interruptions or other services furnished to Resident(s).

**EXPENSES:** Will be allocated as follows:

| | BASIC CABLE | ELECTRICITY | HEAT | HOT WATER HEATER | LAWN CARE | GARBAGE | SEWER | SNOW REMOVAL PARKING LOT | SNOW REMOVAL BLCNY/GRG | WATER |
|---|---|---|---|---|---|---|---|---|---|---|
| Owners Expense | | | X | X | X | X | X | X | | X |
| Resident(s) Expense | X | X | | | | | | | | |

PRIOR TO RECEIVING KEYS, RESIDENT(S) SHALL PROVIDE DOCUMENTATION THAT ALL UTILITY BILLS HAVE BEEN PLACED IN RESIDENT'S NAME. In the event Resident(s) defaults on the Lease Agreement, the Resident(s) is responsible for the monthly utilities on the apartment until such time as the apartment has been re-rented or the lease expires. Notwithstanding the allocation above, Resident(s) is responsible for any utility administrative fees assessed by a government agency. ***Does not include auxiliary heaters.

**ADDENDA TO THE LEASE:** A violation of a material term in any of the addenda will be deemed a material violation of the lease.

| EPA Disclosure | Pest | Pet | Resident Handbook | Smoke Free | Utility |
|---|---|---|---|---|---|
| X | X | | X | | |

**RIGHT OF ENTRY:** Management and its Agents may enter the Apartment Home at any reasonable time, in accordance with State Law, to inspect, improve, maintain or repair the Apartment, or do other necessary work, or to show the Apartment Home to potential new Resident(s) or buyers. Management and its Agents may also enter premises without notice in certain situations in accordance with State Law.

**SMOKE ALARMS:** Resident(s) shall be solely responsible for the upkeep, maintenance and operation of all smoke alarms within the Apartment Home, including but not limited to, battery replacement. Resident(s) shall notify Management in writing of any stolen, missing or inoperable smoke alarms.

This document is digitally signed using RENTCafé eSignature services. Document ID: 5209884

WESTVIG0000013

## Goldmark Property Management, Inc.
### Lease Agreement

**SPECIAL TERMS**: 1) This Lease Agreement is expressly contingent on Management's signature and verification and approval of all background information of Resident(s). 2) Any and all incentives must be repaid by Resident(s), if Lease term is unfulfilled.

| | Special Terms Description | Special Terms Value in $ |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

This Lease Agreement constitutes the entire agreement between the parties, and no amendment to this agreement shall be valid unless made in writing, signed by both parties, and attached to this lease agreement. If any court declares a particular provision of this lease agreement or its attachments to be invalid or illegal, all other terms of this agreement shall remain in effect and both Management and Resident(s) shall continue to be bound by them. Goldmark takes your privacy seriously. None of your personal information, including telephone numbers and email addresses, will be shared with a 3rd party for any reason without your written consent. Resident(s) and Management acknowledge that they have read and received a copy of this Lease Agreement and all Addenda to the Lease Agreement. An owner of the premises or Agent authorized to accept service of process, receive and give receipts for notices and demands is Goldmark Property Management, Inc., located at **1707 Gold Drive, Suite 200, P.O. Box 3024, Fargo, ND 58108** and is authorized to manage the premises.

| | | | |
|---|---|---|---|
| _____ 04/02/2021 | | _____ | _____ |
| Resident   Date | | Resident   Date | |
| _____ | | _____ | |
| Resident   Date | | Resident   Date | |
| _____ | | _____ | |
| Resident   Date | | Resident   Date | |
| _____ 4/2/2021 | | _____ | |
| Manager   Date | | Resident   Date | |

ND Lease Agreement

Revised 06.10.2019
This document is digitally signed using RENTCafe eSignature services. Document ID: 5209884

Page 3 of 25

WESTVIG0000014

# Goldmark Property Management, Inc.
## Pest Addendum

| | | | |
|---|---|---|---|
| **RESIDENT CODE:** | t0374789 | | |
| **SITE OFFICE:** | Amberwood Court | **PHONE:** | (701) 780-2090 |
| **PROPERTY:** | Amberwood Court | | |
| **PREMISES:** | 2520 9th Ave. So., Grand Forks, ND 58201 | | |

This Pest Addendum to the Lease Agreement ("**Addendum**") shall become effective on 04/02/2021 by and between Joel Westvig, ("**Resident(s)**"), and Goldmark Property Management, Inc., ("**Management**").

Resident(s) represents and warrants that all furnishings and personal property which will be moved into the premises are free of all pests.

Resident(s) agrees to prevent and control possible infestation by adhering to the below list of responsibilities:

1. Resident(s) shall use reasonable diligence in caring for the residence and shall maintain the rental home in a clean and sanitary condition. Resident(s) shall keep the rental home free from pests of any kind and free from conditions that might permit or encourage an infestation of pests. Examples of pests include but are not limited to bedbugs, mice, roaches and ants.

2. Management will be responsible for arranging and managing all pest control efforts. Resident(s) shall be responsible for the cost of pest control if:

   a. Resident causes the infestation.
   b. Resident fails to immediately notify Management of any suspected pests.
   c. Resident fails to comply with pest control recommendations or otherwise fails to cooperate with pest control efforts.
   d. Resident fails to comply with any other term of this Addendum.

   Management shall be responsible for the cost of pest control otherwise.

3. Resident(s) shall check for pests, especially but not limited to bedbugs, prior to bringing belongings into the rental home. If you stay in a hotel or another home, inspect your clothing, luggage, shoes and personal belongings for signs of pests before re-entering your rental Premises.

4. Resident(s) shall report any suspected pest problems immediately to Management. Not reporting problems immediately can allow a few pests to quickly multiply and spread to other rental homes.

5. Resident(s) will cooperate with pest control efforts. If your rental home or a neighboring rental home is infested, a pest control professional may be necessary. Your rental home must be properly prepared for treatment. Resident(s) must comply with all recommendations and requests from Management and/or the pest control company prior to and following professional treatment.

   a. Recommendations for bedbugs may include, but are not limited to:

      i. Bagging and removing items to be cleaned off-site.
      ii. Washing all soft items on high heat and drying on high heat setting for a minimum of 30 minutes. All items must be bagged prior to leaving apartment and bags must be disposed of in an outside trash bin.
      iii. Bagging and disposal of any infested items, including, but not limited to, mattresses, box springs and sofas. All disposed of items must be enclosed in plastic or large garbage bags to prevent dropping of bugs and eggs on their way to the outdoor trash site.
      iv. Moving all belongings several feet from the wall.
      v. Emptying dressers, closets and cabinets. Removing all items from the floor and bagging of belongings.
      vi. Vacating home for a period of up to 10 hours.
      vii. Vacuuming all floors and furniture, including the mattress and box spring. Immediately disposing of vacuum cleaner debris, in a tightly sealed bag, to the outside trash container.

Pest Addendum

Revised 08.29.2016

Page 4 of 25

This document is digitally signed using RENTCafe eSignature services. Document ID: 5209884

WESTVIG0000015

## Goldmark Property Management, Inc.
### Pest Addendum

b.  Recommendation for roaches, mice and other pests may include, but are not limited to:
    i.  Emptying all cabinets and cupboards.
    ii.  Permanently removing excessive clutter, including bags and boxes, from residence.
    iii.  Sealing of dry food goods in airtight containers.

6.  Resident(s) acknowledges that proper preparation is a mandatory requirement for pest control to be effective.  Resident(s) acknowledges that all preparation is the responsibility of the Resident(s).  Resident(s) further acknowledges that preparation must be completed by the timeline set by Management.

7.  Resident(s) agrees that if the rental home becomes infested with pests, Management may use all reasonable methods determined by Management to be appropriate to eradicate the pests.

8.  Resident(s) agrees to indemnify and hold Management harmless from any actions, claims, losses, damages and expenses including, but not limited to, attorneys fees brought or claimed by any third party that Management may defend or incur as a result of any pest issue proximately caused by Resident(s).

9.  It is expressly acknowledged that Management shall not be liable for any loss of personal property to the Resident(s) as a result of a pest infestation.  Resident(s) agrees to carry renter's insurance to cover such losses.

**By signing below, the undersigned Resident(s) agree and acknowledge having read and understood this Addendum to the Lease Agreement.**

| | | | |
|---|---|---|---|
| _Resident_ | _Date_ 04/02/2021 | _Resident_ | _Date_ |
| _Resident_ | _Date_ | _Resident_ | _Date_ |
| _Resident_ | _Date_ | _Resident_ | _Date_ |
| _Manager_ | _Date_ 4/2/21 | _Resident_ | _Date_ |



Pest Addendum

This document is digitally signed using RENTCafe eSignature services. Document ID: 5209884

WESTVIG0000016

## Goldmark Property Management, Inc.
## Resident Handbook Addendum

**RESIDENT CODE:**   t0374789
**SITE OFFICE:**   Amberwood Court                        **PHONE:**   (701) 780-2090
**PROPERTY:**   Amberwood Court
**PREMISES:**   2520 9th Ave. So., Grand Forks, ND 58201

This Resident Handbook Addendum ("**Addendum**") shall become effective on 04/02/2021 by and between Joel Westvig, ("**Resident(s)**"), and Goldmark Property Management, Inc., ("**Management**").

I hereby acknowledge receipt of the resident handbook and agree to abide by the rules listed herein.

| _Signature_ 09/02/2021 | | |
|---|---|---|
| Resident                    Date | Resident | Date |
| Resident                    Date | Resident | Date |
| Resident                    Date | Resident | Date |
| Resident                    Date | Resident | Date |
| _Signature_ 4/2/21 | | |
| Manager                    Date | | |

WESTVIG0000017

**Goldmark Property Management, Inc.**
**Lead-Based Paint and/or Lead-Based Paint Hazards Disclosure**

**Lead Warning Statement**

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust post health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 dwellings, Lessor must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

**Lessor's Disclosure**

    (a) Presence of lead-based paint and/or lead-based paint hazards. Check (1) or (2) below:

        (1)  [ ]    Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

        (2)  [X]    Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

    (b) Records and reports available to the lessor. Check (1) or (2) below:

        (1)  [ ]    Lessor has provided lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

                *All available records and reports are available upon request.*

        (2)  [X]    Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgement**

    (c) Lessee has received copies of all information listed above.
        **(Initial)**

    (d) Lessee has received the pamphlet *Protect Your Family from Lead in Your Home.* **(Initial)**

**Agent's Acknowledgement**

    (e) Agent has informed the Lessor of the Lessor's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance. **(Initial)**

  

EPA Disclosure

Revised 06.18.2018

Page 1 of 2

This document is digitally signed using RENTCafe eSignature services. Document ID: 5209884

WESTVIG0000018

**Goldmark Property Management, Inc.**
**Lead-Based Paint and/or Lead-Based Paint Hazards Disclosure**

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| _Resident_   04/08/2021 | Date | _Resident_ | Date |
| _Resident_ | Date | _Resident_ | Date |
| _Resident_ | Date | _Resident_ | Date |
| _Resident_ | Date | _Resident_ | Date |
| _Manager_   4/2/21 | Date | | |

WESTVIG0000019

# EXHIBIT 142

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Berry, et al., | Case No. 20-CV-02189-WMW-JFD |
| Plaintiffs, | District Judge Wilhelmina Wright |
| | Magistrate Judge John F. Docherty |
| vs. | |
| Hennepin County, et al., | **PLAINTIFF JOEL WESTVIG'S** |
| | **RESPONSES TO COUNTY** |
| | **DEFENDANTS FIRST SET OF** |
| Defendants. | **INTERROGATORIES** |

TO:   Hennepin County Defendants, by and through their counsel, Kelly Pierce and Christiana Martenson, Hennepin County Attorney's Office, 300 South 6th Street, Ste A2000, Minneapolis, MN 55487; kelly.pierce@hennepin.us, christiana.martenson@hennepin.us.

Plaintiff Joel Westvig, for their responses to the Hennepin County Defendants' First Set of Interrogatories, states as follows:

### PRELIMINARY STATEMENT

Plaintiff Westvig is continuing their investigation and reserves the right to rely on facts, documents, or other evidence that may come to their or their counsel's attention later. Plaintiff's responses to these requests are based upon information known at this time, and Plaintiff expressly reserves their right to revise or supplement their responses or assert additional or revised objections. Nothing herein should be construed as an admission that any information requested or provided is relevant or admissible. In providing these responses, Plaintiff expressly preserves all objections as to competency, relevancy, materiality, and admissibility and all rights to object on any ground to the use of any of the responses at trial or in any other proceeding.

### GENERAL OBJECTIONS

PLEASE BE ADVISED that these general responses and objections form a part of the response to each and every Interrogatory below. The absence of a reference to a general response

or objection should not be construed as a waiver of the general responses or objections to a specific Interrogatory.

1.      Plaintiff Westvig objects to the Interrogatories to the extent they seek information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. Unless otherwise indicated, such information will not form a part of Plaintiff's responses to the Interrogatories. Inadvertent disclosure of privileged information will not constitute a waiver of any applicable privilege. Nor will providing such information be construed to waive any objection. Plaintiff Westvig requests that, upon realization or notice of such inadvertent disclosure, Defendants not use the information and/or promptly return or destroy any documents in their possession and confirm in writing when completed.

2.      Plaintiff Westvig objects to the Interrogatories to the extent they are oppressive, unreasonably expensive or expansive, vague, ambiguous, overbroad, not identified with reasonable particularity, unduly burdensome, and/or would require unreasonable investigation in a manner not proportionate with the claims of this case.

3.      Plaintiff Westvig objects to the Interrogatories to the extent they are compound.

4.      Plaintiff Westvig objects to the extent the Interrogatories seek information that is not relevant to any party's claim or defense, immaterial, or not reasonably calculated to lead to the discovery of admissible evidence in this litigation.

5.      Plaintiff Westvig objects to the definition of "you" and "your" as overly broad, unduly burdensome, and beyond the scope permitted by the Federal Rules of Civil Procedure. Plaintiff will respond to these Interrogatories only for themself.

6.      Plaintiff Westvig objects to the Interrogatories to the extent they seek information not within the possession, custody, or control of Plaintiff, or which is equally accessible to Defendants.

7.      Plaintiff Westvig objects to the Interrogatories to the extent they seek information that is unreasonably cumulative, duplicative, or obtainable from other sources that are more convenient, less burdensome, or less expensive.

8.      Plaintiff Westvig objects to the Interrogatories to the extent they require responses beyond those required by the Federal Rules of Civil Procedure, the local rules, or any other court orders. Plaintiff will respond to these requests in accordance with those requirements and obligations.

9.      Plaintiff Westvig's responses to the Interrogatories are subject to the Protective Order entered in this case. Any responsive documents shall be produced pursuant to the terms of the Amended Pretrial Scheduling Order and the Protective Order.

Subject to the above general objections and any specific objection asserted herein, Plaintiff Westvig responds to the County's Interrogatories as follows:

## **INTERROGATORIES**

**REQUEST NO. 1:**      Identify all locations where you have slept or sheltered overnight, from the date of the Amended Complaint to the present, and for each such location, provide its address or describe the location.

**RESPONSE:**      Subject to and without waiving this and the General Objections above, Plaintiff Westvig responds as follows: Since December 14, 2020, to the best of their recollection, Plaintiff Westvig has slept or sheltered overnight at

Near North encampment, 205 Girard Avenue North

Northlands Rescue Mission, 420 Division Ave, Grand Forks, ND 58201

3

2520 9th Ave S., Grand Forks, ND

Discovery is ongoing and Plaintiff Westvig reserves the right to supplement or amend these responses as additional information becomes available.

**REQUEST NO. 2:**     Identify all persons who may have knowledge regarding the claims and defenses in this lawsuit and state the substance of each person's knowledge.

**RESPONSE:**          Plaintiff Westvig objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Plaintiff further objects to this Interrogatory as compound, with two distinct subparts: 1) the name of the individuals who have knowledge; and 2) the substance of that knowledge. Subject to and without waiving these objections, Plaintiff Westvig responds as follows:

Subpart 1: Individuals with knowledge: *See* all individuals identified in Plaintiffs' Rule 26(a)(1) Initial Disclosures, the Declaration of Plaintiff Westvig, the deposition testimony of Plaintiff Westvig, the Amended Complaint, Plaintiffs' memoranda in opposition to the motions to dismiss of Defendants Hennepin County and the Minneapolis Park & Recreation Board, and any other court filings to date.

Subpart 2: The substance of that knowledge: *See* Plaintiffs' Rule 26(a)(1) Initial Disclosures, the Declaration of Plaintiff Westvig, the deposition testimony of Plaintiff Westvig, the Amended Complaint, Plaintiffs' memoranda in opposition to the motions to dismiss of Defendants Hennepin County and the Minneapolis Park & Recreation Board, and any other court filings to date.

Mother, Susan Westvig, is aware that Plaintiff Westvig lived in encampments in Minneapolis and witnessed their living conditions and some property while they were living at the Near North and Loring Park encampments. Phone: (612) 618-8473.

Sister, Rachel Lappe, is aware that Plaintiff Westvig lived at the Near North encampment. Phone: (612) 600-4402.

TJ Knatcal, friend, is aware that Plaintiff Westvig lived at the Near North encampment and witnesses their living conditions and some of Plaintiff Westvig's property. Phone: (763) 546-5000.

Dan (last name unknown), is aware that Plaintiff Westvig was living at the Near North encampment and assisted Plaintiff Westvig in finding shelter space in North Dakota. Dan's cell phone number at the time was 218-308-4728.

Discovery is ongoing and Plaintiff Westvig reserves the right to supplement or amend these responses as additional information becomes available.

**REQUEST NO. 3:**      For the period from 2020 to the present, have you used or posted content on any website, digital application, blog, online forum, or social media platform (such as Twitter, Facebook, Instagram, Snapchat, or TikTok)? If so, identify each website, digital application, blog, online forum, or social media platform that you have used or posted content on, and if applicable, identify the username, email address, or phone number associated with your use of that website, digital application, blog, online forum, or social media platform.

**RESPONSE:**      Plaintiff Westvig objects to this Interrogatory to the extent it seeks information in the public domain and to which Defendants have equal access. Plaintiff further objects to this Interrogatory as compound, with three distinct subparts: 1) whether Plaintiff uses social media, 2) which social media platforms, and 3) the handle/username per social media

platform. Subject to and without waiving this and the General Objections above, Plaintiff

Westvig responds as follows:

Subpart 1) Do they use social media? Yes.

Subpart 2) Identify social media platforms they use: Facebook.

Subpart 3) Identify the handle/username for those social media accounts: Facebook – Joel

Westvig.

Discovery is ongoing and Plaintiff Westvig reserves the right to supplement or amend

these responses as additional information becomes available.

*Joel Westvig*

DATE:      Nov 07 2022      _____

**Joel Westvig**


As to objections:

DATE:                          **MID-MINNESOTA LEGAL AID**

s/Justin Perl
_____
Justin H. Perl (No. 0151397)
Dorinda L. Wider (No. 0162334)
Rebecca Stillman (No. 039855)
Luke Grundman (No. 0390565)
111 North Fifth Street, Suite #100
Minneapolis, MN 55403-1604
Tel: (612) 332-1441
Email:  jperl@mylegalaid.org
          dlwider@mylegalaid.org
          rstillman@mylegalaid.org
          lgrundman@mylegalaid.org

**AMERICAN CIVIL LIBERTIES UNION
OF MINNESOTA**

s/Teresa Nelson
_____
Teresa Nelson (No. 0269736)
Clare Diegel (No. 0400758)
PO Box 14720

Minneapolis, MN 55414
Tel: (612) 274-7791
Email:  tnelson@aclu-mn.org
             cdiegel@aclu-mn.org

Ian Bratlie (No. 319454)
American Civil Liberties Union of Minnesota
P.O. Box 907
Mankato, MN 56002
Tel: (507) 995-6575
Email: ibratlie@aclu-mn.org

**BALLARD SPAHR LLP**

s/Isabella Salomão Nascimento
Isabella Salomão Nascimento (No. 0401408)
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402
612-371-3281
Email: salomaonascimentoi@ballardspahr.com

*Attorneys for Plaintiffs*