UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Patrick Berry, et al., | Case No. 20-cv-2189 (WMW/JFD) |
| Plaintiffs, | |
| v. | **ORDER** |
| Hennepin County, et al., | |
| Defendants. | |

---

Before the Court are Defendants City of Minneapolis ("City"), former Minneapolis Chief of Police Medaria Arradondo's ("Chief Arradondo"), and Mayor Jacob Frey's ("Mayor Frey"), (collectively, "City Defendants"), motion for judgment on the pleadings, (Dkt. 403), Defendant Hennepin County's, and Defendant Hennepin County Sheriff David Hutchinson's ("Sheriff Hutchinson"), (collectively, "County Defendants"), motion for judgment on the pleadings, (Dkt. 405), and Defendant Minneapolis Park and Recreation Board's ("MPRB"), motion for judgment on the pleadings, (Dkt. 407). For the reasons addressed below, the Court denies the motions.

## BACKGROUND

This case arises from the confluence of two significant societal problems—homelessness and the COVID-19 pandemic. The individual plaintiffs in this action are nine individuals experiencing unsheltered homelessness in Hennepin County, Minnesota (Individual Plaintiffs). And Plaintiff ZACAH is a private nonprofit organization that assists residents of Minnesota on the verge of experiencing homelessness. Plaintiffs allege

that Defendants—Hennepin County, the City of Minneapolis, the MPRB, various county and city officials,[1] and unnamed police officers—have conducted "sweeps" during which Defendants have seized and destroyed the property of persons experiencing unsheltered homelessness who live in encampments in Minneapolis public parks.  Plaintiffs allege that Defendants' actions violate Plaintiffs' rights as protected by the Fourth and Fourteenth Amendments to the United States Constitution, the Minnesota Constitution and Minnesota law.

On April 8, 2020, Minnesota Governor Tim Walz issued Emergency Executive Order 20-33 (EEO 20-33), which provides that "[e]ncampments should not be subject to sweeps or disbandment by state or local governments, as such sweeps or disbandment increase the potential risk and spread of COVID-19."  On April 29, 2020, Governor Walz issued Emergency Executive Order 20-47 (EEO 20-47), which clarified EEO 20-33's instructions with respect to encampments.  EEO 20-47 states that "both new and existing encampment[s] should not be subject to sweeps or disbandment by state or local governments."  "State or local governments may restrict, limit, or close encampment spaces," however, "[i]f a local government entity is providing sufficient alternate housing, shelter, or encampment space that complies with the Minnesota Department of Health's guidance . . . and the Centers for Disease Control and Prevention's guidance . . . or if an encampment has reached a size or status that is a documented threat to the health, safety, or security of residents."  On May 13, 2020, Governor Walz issued Emergency Executive

---

[1] These county and city officials are Minneapolis Mayor Jacob Frey, Minneapolis Chief of Police Medaria Arradondo, and Hennepin County Sheriff David Hutchinson.

2

Order 20-55 (EEO 20-55), reiterating the guidance as to encampments set forth in EEO 20-47.  On June 17, 2020, the MPRB, which manages the Minneapolis park system, adopted Resolution 2020-253, declaring Minneapolis parks to be a refuge space for persons experiencing unsheltered homelessness.  Approximately one month later, the MPRB adopted Resolution 2020-267, which limits the number of Minneapolis parks that can be refuge sites to 20 and limits, through a permitting process, the permissible number of tents located at each site to 25.  During August and September 2020, Minneapolis Park Police disbanded one of several Powderhorn Park encampments, along with encampments at Peavy Park, Kenwood Park and Elliot Park.

Plaintiffs' amended complaint advances five claims.  Count I alleges that Defendants unlawfully seized Plaintiffs' property in violation of the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution.  Count II alleges that Defendants violated Plaintiffs' right to privacy as protected by the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution.  Count III alleges that Defendants violated Plaintiffs' procedural due-process rights as protected by the Fourteenth Amendment to the United States Constitution and Article I, Section 7, of the Minnesota Constitution.  Count IV alleges that Defendants violated Plaintiffs' substantive-due-process rights as protected by the Fourteenth Amendment of the United States Constitution and the Minnesota Constitution.  And Count V alleges that Defendants are liable for the conversion of Plaintiffs' property in violation of Minnesota law.  In an October 29, 2020 Order, this Court denied Plaintiffs'

motion for a temporary restraining order because Plaintiffs failed to establish irreparable harm.

On January 11, 2021, County Defendants filed a motion to dismiss Plaintiffs' complaint. In the motion, County Defendants argued that Plaintiffs lack standing. On September 27, 2021, this Court granted in part and denied in part County Defendants' motion to dismiss. Specifically, the Court dismissed Plaintiffs' federal-law claims and Count IV asserted against County Defendants. The Court allowed all other of Plaintiffs' remaining claims to proceed.

On December 21, 2021, Defendant MPRB filed a motion to dismiss Plaintiffs' complaint. In its motion, MPRB contended that Plaintiffs' complaint fails to state a claim on which relief can be granted and that the municipal officials are subject to qualified immunity in their individual capacities. This Court granted in part and denied in part MPRB's motion to dismiss on August 19, 2022. The Court dismissed Count IV of Plaintiffs' complaint against MPRB. The Court also dismissed MPRB Superintendent Al Bangoura and Park Police Chief Jason Ohotto, in their individual and official capacities. The Court, however, permitted all remaining claims of Plaintiffs' against MPRB to proceed.

On May 11, 2023, Plaintiffs filed a second amended complaint and subsequently moved to certify a class on August 3, 2023. On August 4, 2023, Defendants filed the present motions for judgment on the pleadings. Defendants moved for summary judgment on September 1, 2023, seeking dismissal of Plaintiffs' claims.

Defendants now move for judgment on the pleadings. Plaintiffs oppose Defendants' motions.

## ANALYSIS

### I. Legal Standards

#### A. Judgment on the Pleadings Standard

A motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). After the close of pleadings, any party may file a motion for judgment on the pleadings. The legal standard for assessing a motion for judgment on the pleadings under Rule 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P. *Perry, Tr. for Sherrell v. Beltrami Cnty.*, 520 F. Supp. 3d 1115, 1120 (D. Minn. 2021) (citing *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009)). The purpose of a judgment on the pleadings is to dismiss pleadings that are legally flawed and destined to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activities. *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). When considering such a motion, the court may examine matters of public record and materials that are incorporated into the pleadings. *Transport Drivers, Inc. v. Coca-Cola Refreshments USA, Inc.*, Civ No. 1601974, 2017 WL 1954772 at *8 (D. Minn. May 10, 2017).

While it is true that "the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor," *Landmark Comm. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, 12- cv-1103, 2012 WL 4511185, at *2 (D. Minn. Oct. 2, 2012), the Court is not obligated to accept the legal conclusions drawn by

the pleader from the facts or to accept wholly conclusory allegations or unwarranted factual inferences. *Gisege v. Minn. Dep't of Corr.*, No. 06- 1353, 2007 WL 2892024, at *15-16 (D. Minn. 2007).

To avoid dismissal, a claim must be facially plausible so as to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). While detailed factual allegations are not required, the factual allegations must be sufficient to raise a right to relief above the speculative level. *Landmark Comm. Bank*, 2012 WL 4511185, at *2, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the factual allegations in the complaint suggest only a mere possibility of misconduct, the complaint must be dismissed. *Cole*, 599 F.3d at 861; *Ashcroft*, 556 U.S. at 679.

### B.   Requirements for *Monell* Liability

To establish municipal liability under Section 1983, a plaintiff must show that a policy or custom of the municipality caused a violation of the plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). A policy is an official policy or deliberate choice made by an official with final policymaking authority. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). To establish a custom, the plaintiff must show: (1) a continuing, widespread, persistent pattern of unconstitutional misconduct by the entity's employees; (2) the entity's deliberate indifference to or tacit authorization of such conduct by policymaking officials after obtaining notice of the misconduct; and (3) an injury to the plaintiff caused by acts pursuant to the custom. *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). The custom must be the moving force

behind the constitutional violation. *Mettler*, 165 F.3d at 1204. Without a constitutional violation by an employee, there can be no municipal liability. *Whitney v. City of St. Louis*, 887 F.3d 857, 861 (8th Cir. 2018).

    **C.**    **Requirements for Civil Conspiracy**

To prove a Section 1983 civil conspiracy, a plaintiff must show: (1) the defendant conspired with others to deprive the plaintiff of constitutional rights; (2) at least one co-conspirator committed an overt act in furtherance of the conspiracy; and (3) the overt act injured the plaintiff. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). A complaint must allege specific facts showing a "meeting of the minds" between alleged co-conspirators to violate the plaintiff's rights. *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988); *see also Bonenberger v. St. Louis Metro Police Dep't*, 810 F.3d 1103, 1109 (8th Cir. 2016) (plaintiff must allege "with particularity" that defendants reached an agreement). Mere allegations that are consistent with a conspiracy are insufficient. *Twombly*, 550 U.S. at 556-57. The conduct of each defendant must be assessed independently. *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012).

    **D.**    **Article III Standing**

To establish Article III standing, a plaintiff must clearly allege facts showing: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) a causal connection between the injury and the defendant's challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). At the pleading stage, the plaintiff must clearly allege facts

that demonstrate each element. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To obtain injunctive relief, the plaintiff must show that the plaintiff faces an ongoing injury or the likelihood of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Past injury alone is insufficient. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). The threatened injury must be "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Allegations of possible future injury are insufficient. *Id*.

## II.    Plaintiffs' Request for Injunctive Relief

The Individual Plaintiffs—Berry, Brown, Little, Barrow, Roy, Westvig, and Huiting—seek declaratory and injunctive relief to stop the City Defendants, County Defendants, and MPRB Defendants from allegedly disposing of personal possessions without notice during future encampment closures. Specifically, Plaintiffs request that the Court enjoin practices such as failing to provide notice before closures, closing encampments when shelter space is insufficient, threatening people during closures, and immediately destroying property. The Individual Plaintiffs contend that these practices violate the constitutional rights of homeless individuals. In response, the City Defendants, County Defendants, and MPRB Defendants argue that the Individual Plaintiffs lack standing to seek injunctive relief because they allege in the complaint that they are currently housed and, therefore, the Individual Plaintiffs face no imminent harm from potential future encampment closures.

To have standing to seek prospective injunctive relief, a plaintiff must clearly allege facts showing a real and immediate threat of future injury. *City of Los Angeles v. Lyons*,

8

461 U.S. 95, 105 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). The injury cannot be conjectural or hypothetical, the injury must be impending. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). However, the Supreme Court has recognized certain circumstances in which standing may exist to seek injunctions against practices capable of repetition yet evading review. *See Sosna v. Iowa*, 419 U.S. 393, 399-402 (1975). For example, in cases where the injury is "inherently transitory" such that it is unlikely to persist long enough for litigation, or where the harm is capable of repetition while evading review, standing may be found despite the lack of a current injury. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398 (1980). But the plaintiff must still show a reasonable expectation or demonstrated probability that the plaintiff will again suffer the same injury. *Honig v. Doe*, 484 U.S. 305, 318-21 (1988).

The Individual Plaintiffs seek prospective injunctive relief against alleged unconstitutional practices during encampment closures conducted by the City Defendants, County Defendants, and MPRB Defendants. Defendants maintain that the Individual Plaintiffs lack standing to pursue such injunctive relief because they are currently housed in apartments or other housing and, therefore, face no imminent threat of future injury from encampment closures.

However, courts have recognized that the transitory and cyclical nature of homelessness may confer Article III standing to seek injunctive relief even on plaintiffs who are currently housed, given the reasonable possibility they may experience homelessness and the risk of constitutional violations again in the future. *See Unan v. Lyon*, 853 F.3d 279, 287 (6th Cir. 2017) (recognizing transitory nature of homelessness

confers standing even if temporarily resolved, since the issue tends to evade review); *Pottinger v. Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1989) (finding standing based on transitory nature of homelessness despite plaintiffs having temporary shelter at time of lawsuit).

Here, although the Individual Plaintiffs are currently housed, the years-long waiting lists for subsidized permanent housing in Minneapolis indicate that it is uncertain whether the Individual Plaintiffs' housed status will persist indefinitely. Because there is a shortage of affordable housing, it is reasonably possible the Individual Plaintiffs may again face homelessness in the future. The Individual Plaintiffs need not wait until they are imminently threatened with homelessness to have standing to seek injunctive relief. *See Honig v. Doe*, 484 U.S. 305, 321-22 (1988) (plaintiffs need not demonstrate their injury is certain to recur to have standing for prospective relief).

In this case, the transitory nature of homelessness, along with the housing instability faced by many individuals experiencing homelessness, are sufficient to confer standing on the Individual Plaintiffs to seek prospective injunctive relief, despite their current temporary housing status. As a result, the Court concludes that Plaintiffs' claims may proceed at this stage.

### III.  *Monell* Liability Against City Defendants and County Defendants

Plaintiffs allege *Monell* liability against the City Defendants and County Defendants, claiming their policies and customs caused violations of Plaintiffs' constitutional rights during encampment closures. Specifically, Plaintiffs allege that the City Defendants and County Defendants had customs of providing insufficient notice before closures,

10

immediately destroying personal property, and improperly seizing belongings during closures. Plaintiffs allege that City of Minneapolis police participated in closures where their property was taken without due process. Also, they allege, the County Defendants' assistance in closures enabled these violations. The City Defendants and County Defendants argue that the allegations fail to show their customs or policies were the moving force behind any constitutional violations. The City Defendants and County Defendants contend that the closures and removal of property were not inherently unlawful. The City Defendants also argue that Plaintiffs fail to allege that policymakers had notice of and were deliberately indifferent to any unlawful conduct by City of Minneapolis employees.

A municipality can be liable under Section 1983 if an unofficial custom causes a violation of constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). To state a *Monell* claim of municipal liability attributable to an unconstitutional custom, a plaintiff must allege: (1) a continuing, widespread, persistent pattern of unconstitutional misconduct by the entity's employees; (2) deliberate indifference or tacit authorization of such conduct by policymaking officials after notice; and (3) the custom was the moving force behind the constitutional violation. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). At the pleading stage, alleging a "possible custom" is sufficient. *Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 844 (D. Minn. 2021). The complaint need not identify the full scope of the custom, it is sufficient to allege facts supporting its existence. *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 867 (D. Minn. 2012). Even a few instances of similar misconduct can sufficiently plead a custom. *See*

11

*R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist. No. 2149*, 894 F. Supp. 2d 1128, 1137–38 (D. Minn. 2012).

Plaintiffs allege City of Minneapolis police participated in at least three encampment closures in which Plaintiffs lacked proper notice and Plaintiffs' belongings were seized or destroyed, causing harm. Courts have found similar allegations sufficient to plead a custom. *See R.S. ex rel. S.S.*, 894 F. Supp. 2d at 1137-38. Plaintiffs also broadly allege the City Defendants' involvement in numerous other closures. These allegations meet the "possible custom" pleading standard. *See Tirado*, 521 F. Supp. 3d at 844. The City Defendants argue that encampment closures alone are not unlawful, but Plaintiffs specifically allege unconstitutional seizures and lack of notice. Plaintiffs also claim that the City of Minneapolis policymakers watched closures in real-time, supporting an inference that the City Defendants had notice of and tacitly authorized the conduct. While the County Defendants contend their involvement was less extensive, Plaintiffs assert that if the County Defendants' assistance enabled the alleged misconduct, *Monell* liability could still attach. Overall, accepting the alleged facts as true, Plaintiffs adequately plead *Monell* claims against both the City Defendants and County Defendants at this stage.

Plaintiffs allege the City Defendants and County Defendants had unconstitutional customs of providing insufficient notice before encampment closures and improperly seizing or destroying personal property during the closures. Although Plaintiffs allege a limited number of instances, courts have found similar allegations sufficient to plead a custom under *Monell*. *See R.S. ex rel. S.S.*, 894 F. Supp. 2d at 1137-38. Plaintiffs claim City of Minneapolis police directly participated in closures where they experienced

12

constitutional violations. They also broadly allege the City Defendants' involvement in numerous other closures. These allegations are adequate to plead a "possible custom" at this stage. *See Tirado*, 521 F. Supp. 3d at 844. While the City Defendants and County Defendants argue the closures themselves were not unlawful, accepting Plaintiffs' alleged facts as true, they adequately plead *Monell* claims against both Defendants. Therefore, the *Monell* claims shall proceed.

### IV. Conspiracy Claims Against City Defendants and County Defendants

Plaintiffs allege that the City Defendants, County Defendants, and MPRB Defendants conspired to violate the constitutional rights of homeless individuals during encampment closures. In doing so, Plaintiffs allege that these Defendants reached an agreement to provide insufficient notice before closures, improperly seize property, and immediately destroy belongings. To support this allegation, Plaintiffs cite the constant communication and coordination between Defendants as evidence of the conspiracy. The City Defendants and County Defendants argue that Plaintiffs fail to allege specific facts as to a meeting of the minds to violate constitutional rights. They contend the allegations merely show cooperation, which is insufficient for conspiracy. Citing *Monell*, the City Defendants and County Defendants also argue they cannot be liable absent a municipal policy or custom causing the violations.

To prove a Section 1983 civil conspiracy, a plaintiff must show: (1) the defendant conspired with others to deprive the plaintiff of constitutional rights; (2) at least one co-conspirator committed an overt act in furtherance of the conspiracy; and (3) the overt act injured the plaintiff. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). A complaint

13

must allege specific facts showing a "meeting of the minds" between alleged co-conspirators to violate the plaintiff's rights. *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988); *see also Bonenberger v. St. Louis Metro Police Dep't*, 810 F.3d 1103, 1109 (8th Cir. 2016). Allegations that are merely consistent with a conspiracy are insufficient. *Twombly*, 550 U.S. at 556-57.

Plaintiffs allege that there was extensive communication and coordination between the City Defendants, County Defendants, and MPRB Defendants regarding encampment closures. While this communication and coordination are not direct evidence of a conspiratorial agreement, courts have found that similar circumstantial evidence may support an inference of a meeting of the minds. *See White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008). Defendants correctly argue that mere cooperation is insufficient. However, when viewed in the light most favorable to plaintiffs, the alleged level of coordination presented here plausibly alleges more than regular cooperation. Plaintiffs also allege that Defendants jointly participated in closures where constitutional violations occurred. If true, this participation could establish overt acts in furtherance of the alleged conspiracy resulting in harm. While *Monell* may apply, Plaintiffs assert the conspiracy claim directly against the entities. Overall, Plaintiffs adequately allege Section 1983 conspiracy claims against the City Defendants and County Defendants.

Plaintiffs allege the City Defendants, County Defendants, and MPRB Defendants conspired to violate the constitutional rights of homeless individuals during encampment closures. Plaintiffs contend that these Defendants reached an agreement to provide insufficient notice before the closures, improperly seize property, and immediately destroy

14

the seized belongings. In support of this allegation, Plaintiffs identify extensive alleged communication and coordination between the defendants regarding the closures. City Defendants and County Defendants correctly argue mere cooperation is insufficient for conspiracy. When viewed in the light most favorable to Plaintiffs, the level of coordination alleged here plausibly supports Plaintiffs' contention that there was more than regular cooperation. Further, Plaintiffs allege that Defendants jointly participated in closures where constitutional violations occurred. If true, this establishes the elements of a Section 1983 conspiracy. Although *Monell* may apply, Plaintiffs assert the conspiracy claim directly against the three municipal Defendant entities. Therefore, because Plaintiffs have adequately pled Section 1983 civil conspiracy claims against the City Defendants and County Defendants, these claims proceed.

V.   **Claims by Organizational Plaintiff ZACAH**

The Organizational Plaintiff, ZACAH, asserts claims in the lawsuit based on alleged violations of the Fourth and Fourteenth Amendments during encampment closures. Specifically, ZACAH claims that it diverted substantial funds to pay for hotel rooms for displaced encampment residents, which frustrated ZACAH's organizational mission. The City Defendants, County Defendants, and MPRB Defendants argue that ZACAH fails to state a claim against them because there is no allegation that ZACAH's property was seized or destroyed during encampment closures. Defendants contend that ZACAH fails to tie its alleged monetary injury resulting from paying for hotel rooms to any of ZACAH's legal claims asserting unlawful seizure or destruction of property. And ZACAH, therefore, cannot recover on those claims.

An organization has direct standing to sue on its own behalf when it alleges "distinct and palpable injuries" that are fairly traceable to the defendant's actions. *Arkansas ACORN Fair Hous., Inc. v. Greystone Dev. Co.*, 160 F.3d 433, 438 (8th Cir. 1998). Allegations that the organization spent substantial resources to counteract the defendant's conduct are sufficient to plead an injury-in-fact. *Id*. The organization need not have a claim under the legal causes of action asserted, as long as the organization alleges some cognizable injury caused by the defendants' unlawful practices. *See Walker v. City of Lakewood*, 272 F.3d 1114, 1123 n.1 (9th Cir. 2001). However, the organization must tie its injury to the substantive claims in some way. *See Rios v. County of Sacramento*, 562 F. Supp. 3d 999, 1015 (E.D. Cal. 2021).

ZACAH alleges that it diverted substantial funds to pay for hotel rooms for displaced encampment residents, frustrating its organizational mission. ZACAH sufficiently alleges an injury-in-fact traceable to Defendants' conduct. *See Arkansas ACORN*, 160 F.3d at 438. Plaintiffs contend that ZACAH is not required to have a claim under the specific legal causes of action that have been pled, ZACAH is only required to allege some cognizable injury caused by Defendants' unlawful practices. *See Walker*, 272 F.3d at 1123 n.1. Although the City Defendants, County Defendants, and MPRB Defendants argue ZACAH does not tie its monetary injury to the unlawful seizure and destruction claims, the alleged mission frustration is fairly traceable to Defendants' allegedly unlawful encampment closure practices. Plaintiffs assert that this allegation is sufficient to state a claim, and organizational standing should not fail based solely on the

16

nature of the particular injury. ZACAH has adequately pled both organizational standing and injury to survive dismissal at this stage.

ZACAH claims that it diverted substantial funds to pay for hotel rooms for displaced encampment residents, which frustrated ZACAH's organizational mission. Plaintiffs contend that this establishes an injury-in-fact that is traceable to Defendants' challenged conduct. See *Arkansas ACORN*, 160 F.3d at 438. While the City Defendants, County Defendants, and MPRB Defendants argue that ZACAH fails to link its monetary injury to the specific unlawful seizure and destruction claims that ZACAH asserts, Plaintiffs contend that ZACAH's allegation of mission frustration caused by Defendants' unlawful encampment closure practices, is sufficient. ZACAH has adequately pled facts that establish organizational standing and injury caused by the Defendants' allegedly unlawful conduct. The Court concludes that Plaintiff ZACAH should not be dismissed as a party to this action. Therefore, Defendants' motion for judgment on the pleadings fails.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. City Defendants' motion for judgment on the pleadings, (Dkt. 403), is **DENIED**;

2. County Defendants' motion for judgment on the pleadings, (Dkt. 405), is **DENIED**; and

3. Defendant Minneapolis Park and Recreation Board's motion for judgment on the pleadings, (Dkt. 407), is **DENIED**.

Dated: November 21, 2023                    s/ Wilhelmina M. Wright
                                            Wilhelmina M. Wright
                                            United States District Judge