UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Patrick Berry, et al.,                                    Case No. 20-cv-2189 (WMW/JFD)

                             Plaintiffs,
                                                                        **ORDER**
         v.

Hennepin County, et al.,

                             Defendants.

---

Before the Court is Plaintiffs Patrick Berry, Henrietta Brown, Nadine Little, Dennis Barrow, Virginia Roy, Joel Westvig, Gina Mallek, and Daniel Huiting, (collectively, "Individual Plaintiffs") and ZACAH's motion for class certification. (Dkt. 397.) For the reasons addressed below, the Court denies the motion.

## BACKGROUND

This case arises from the confluence of two significant societal problems—homelessness and the COVID-19 pandemic. The Individual Plaintiffs in this action are nine individuals experiencing unsheltered homelessness in Hennepin County, Minnesota. Plaintiff ZACAH is a private nonprofit organization that assists residents of Minnesota on the verge of experiencing homelessness. Plaintiffs allege that Defendants—Hennepin County, the City of Minneapolis, the Minneapolis Park and Recreation Board ("MPRB") various county and city officials[1] and unnamed police officers—have conducted "sweeps"

---

[1] These county and city officials are Minneapolis Mayor Jacob Frey ("Mayor Frey") and Hennepin County Sheriff David Hutchinson ("Sheriff Hutchinson").

during which Defendants have seized and destroyed the property of persons experiencing unsheltered homelessness who live in encampments in Minneapolis public parks. Plaintiffs allege that Defendants' actions violate Plaintiffs' rights as protected by the Fourth Amendment and Fourteenth Amendment to the United States Constitution, the Minnesota Constitution and Minnesota law.

On April 8, 2020, Minnesota Governor Tim Walz issued Emergency Executive Order 20-33 ("EEO 20-33"), which provides that "[e]ncampments should not be subject to sweeps or disbandment by state or local governments, as such sweeps or disbandment increase the potential risk and spread of COVID-19." On April 29, 2020, Governor Walz issued Emergency Executive Order 20-47 ("EEO 20-47"), which clarified EEO 20-33's instructions with respect to encampments. EEO 20-47 states that "both new and existing encampment[s] should not be subject to sweeps or disbandment by state or local governments." "State or local governments may restrict, limit, or close encampment spaces," however, "[i]f a local government entity is providing sufficient alternate housing, shelter, or encampment space that complies with the Minnesota Department of Health's guidance . . . and the Centers for Disease Control and Prevention's guidance . . . or if an encampment has reached a size or status that is a documented threat to the health, safety, or security of residents." On May 13, 2020, Governor Walz issued Emergency Executive Order 20-55 ("EEO 20-55"), reiterating the guidance as to encampments set forth in EEO 20-47. The MPRB, which manages the Minneapolis park system, adopted Resolution 2020-253 on June 17, 2020, declaring that Minneapolis parks are a refuge space for persons experiencing unsheltered homelessness. Approximately one month later, the MPRB

adopted Resolution 2020-267, which limits the number of Minneapolis parks that can be refuge sites to 20 and limits, through a permitting process, the permissible number of tents located at each site to 25.  During August and September 2020, Minneapolis Park Police disbanded one of several Powderhorn Park encampments, along with encampments at Peavy Park, Kenwood Park and Elliot Park.  Plaintiffs are a group of individuals with a history of homelessness and living in encampments.  Although they currently have rental housing, the cyclical nature of homelessness means they remain at risk of becoming homeless again in the future.

Plaintiffs' amended complaint advances five claims.   Count I alleges that Defendants unlawfully seized Plaintiffs' property in violation of the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution. Count II alleges that Defendants violated Plaintiffs' right to privacy as protected by the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution.  Count III alleges that Defendants violated Plaintiffs' procedural due-process rights as protected by the Fourteenth Amendment to the United States Constitution and Article I, Section 7, of the Minnesota Constitution.  Count IV alleges that Defendants violated Plaintiffs' substantive-due-process rights as protected by the Fourteenth Amendment of the United States Constitution and the Minnesota Constitution. And Count V alleges that Defendants are liable for the conversion of Plaintiffs' property in violation of Minnesota law.  In an October 29, 2020 Order, this Court denied Plaintiffs' motion for a temporary restraining order because Plaintiffs failed to establish irreparable harm.

3

On January 11, 2021, Hennepin County and Sheriff Hutchinson (collectively, "County Defendants") filed a motion to dismiss Plaintiffs' complaint.  In the motion, County Defendants argued that Plaintiffs lack standing.  On September 27, 2021, this Court granted in part and denied in part County Defendants' motion to dismiss.  Specifically, the Court dismissed Plaintiffs' federal-law claims and Count IV asserted against County Defendants.  The Court allowed all Plaintiffs' remaining claims to proceed.

On December 21, 2021, MPRB moved to dismiss Plaintiffs' complaint.  In its motion, MPRB contended that Plaintiffs' complaint fails to state a claim on which relief can be granted and that the municipal officials are subject to qualified immunity in their individual capacities.  This Court granted in part and denied in part MPRB's motion to dismiss on August 19, 2022.  The Court dismissed Count IV of Plaintiffs' complaint against MPRB.  The Court also dismissed MPRB Superintendent Al Bangoura and Park Police Chief Jason Ohotto, in their individual and official capacities.  The Court, however, permitted Plaintiffs' remaining claims against MPRB to proceed.  On August 4, 2023, Defendants filed motions for judgment on the pleadings.  The Court denied the motions for judgment on the pleadings on November 21, 2023.  Mayor Frey in his individual capacity and former Minneapolis Chief of Police Medaria Arradondo were dismissed via stipulation on December 29, 2023.  (Dkt. 585.)

Plaintiffs now move to certify a class.  Defendants oppose Plaintiffs' motion.

## ANALYSIS

### I.   Standing and Mootness

Under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), Article III standing requires showing (1) an injury in fact that is concrete, particularized, and imminent rather than conjectural or hypothetical; (2) a causal connection between the injury and defendant's conduct; and (3) likelihood the injury will be redressed by a favorable decision.  For injunctive relief, a plaintiff must show imminent harm, specifically that a future injury is "certainly impending."  *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013).  Defendants argue that Individual Plaintiffs cannot show certainly impending future harm from encampment sweeps since they now have housing.  Therefore, Defendants assert, Individual Plaintiffs lack standing to represent the proposed class seeking prospective injunctive relief related to sweeps.  However, the "inherently transitory" exception allows named plaintiffs who are no longer class members to continue representing the class if: (1) the injury is transitory and likely to become moot before certification can be decided; and (2) the injury continues for other class members.  *Unan v. Lyon*, 853 F.3d 279, 287 (6th Cir. 2017).

Plaintiffs' expert evidence demonstrates the transitory and recurring nature of homelessness for both the Individual Plaintiffs and putative class members who remain homeless and at risk of encampment sweeps.  Moreover, requiring Individual Plaintiffs to remain homeless throughout litigation would undermine their ability to continue pursuing class relief, as losing housing could render them unable to effectively litigate the case.  This consequence would allow Defendants to evade accountability.  Given these transitory

characteristics shown by expert evidence, homelessness meets the "inherently transitory" exception requirements under *Unan*.   As Individual Plaintiffs had standing as homeless individuals when filing suit, this exception preserves their standing to seek prospective injunctive relief regarding encampment sweeps on behalf of the continued interests of the proposed class, despite subsequently obtaining housing.

The exception applies here to preclude mootness.   Individual Plaintiffs retain standing to represent the proposed class seeking injunctive relief against encampment sweeps.  *See County of Riverside v. McLaughlin*, 500 U.S. 44 (1991); *G.R.X. v. Foxhoven*, No. 4:17-CV-00417-SMR-HCA, 2018 U.S. Dist. LEXIS 237389, at *8-12 (S.D. Iowa June 28, 2018).

## II.    Legal Standards

To obtain class certification, the party seeking certification must affirmatively demonstrate compliance with the requirements of Federal Rule of Civil Procedure 23.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).   Rule 23(a) sets forth four preliminary requirements for any class: (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation.  *See id.*; Fed. R. Civ. P. 23(a).  In addition to the Rule 23(a) factors, a party seeking class certification also must establish that the proposed class satisfies one of the categories in Rule 23(b).   *See In re Nat'l Hockey League Players' Concussion Injury Litig.*, 327 F.R.D. 245, 255 (D. Minn. 2018).

When deciding a motion for class certification, the Court conducts a "rigorous analysis" of the Rule 23 requirements.  *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005).   This may require looking beyond the pleadings to the factual record and

understanding the claims, defenses, relevant facts and applicable law. *Id*. The party seeking certification must establish that the proposed class is "adequately defined and clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 995 (8th Cir. 2016).

Ascertainability requires an objective class definition so members can be identified without individualized fact-finding or mini-hearings. *Id*. This allows class members to opt-out of Rule 23(b)(3) damages classes and ensures the preclusive effect of final judgment. *Id*. Ascertainability may not be strictly required for Rule 23(b)(2) injunctive relief classes but still factors into the certification analysis. *Id*.

The Court's rigorous analysis may entail resolving disputes related to the merits when they overlap with Rule 23 requirements. *Dukes*, 564 U.S. at 351. However, the examination of merits at certification is limited to assessing Rule 23 compliance. *Id*. at 352. The Court probes behind the pleadings to the extent needed to determine whether the plaintiffs have affirmatively demonstrated such compliance. *Id*. at 350-51. Conclusory assertions are insufficient – compliance must be proven via facts in the record. *Id*. at 350.

Here, Plaintiffs seek certification under Rule 23(b)(2) for injunctive relief, which applies when the opposing party has acted or refused to act on grounds generally applicable to the class such that final injunctive or declaratory relief would be appropriate for the class as a whole. To certify the proposed class, Plaintiffs must show compliance with both the Rule 23(a) and 23(b)(2) requirements. In conducting its rigorous analysis, the Court examines the factual record and merits to the extent necessary to determine whether the Rule 23 factors have been satisfied.

### III.   Rule 23(a) Requirements

In addition to proving an unconstitutional policy or practice by a preponderance of the evidence, Plaintiffs must satisfy all requirements under Rule 23(a) to obtain class certification. *Dukes*, 564 U.S. at 345. This includes showing: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Id*.

### A.   Numerosity

Numerosity requires that the class be so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). To satisfy the numerosity requirement, Plaintiffs must present evidence to support the size of the proposed class. *Dukes*, 564 U.S. at 350; *Campbell v. Minneapolis Pub. Hous. Auth. In & For City of Minneapolis*, 175 F.R.D. 531, 538 (D. Minn. 1997). Plaintiffs cannot rely solely on allegations about the size of the class; they must put forth actual numbers or sufficiently reliable estimates, based on reasonable methodologies, in order to allow the court to evaluate whether joinder would in fact be impracticable due to the number of proposed class members. *See Dukes*, 564 U.S. at 350.

Plaintiffs cite estimates regarding the overall homeless population countywide, including point-in-time counts showing between 400-730 homeless individuals in Hennepin County. Plaintiffs also point to deposition testimony generally referencing the existence of homeless encampments "all over" Minneapolis. However, these estimates lack the requisite specificity, as they pertain to the general homeless population in Hennepin County rather than the particular subset of homeless individuals residing in

Minneapolis subject to Defendants' challenged policies, as defined in the proposed class. Without data more directly estimating or counting the subset of homeless individuals in Minneapolis impacted by Defendants' policies, the Court has no basis to evaluate whether joinder of all such proposed class members located specifically in Minneapolis would be impracticable.

Plaintiffs' evidence encompassing the entire Hennepin County homeless population provides, at best, a rough benchmark. But the relevant proposed class consists of a smaller segment of homeless individuals actually residing in Minneapolis and subject to Defendants' policies there. Some reasonable methodology is needed to approximate the size of this Minneapolis subset in order to determine if joinder would be impracticable. As Plaintiffs fail to provide such evidence tailored to evaluating numerosity for the defined class, they do not satisfy their burden here under *Dukes*.

In sum, while Plaintiffs present some general population estimates regarding homelessness countywide, their failure to put forth evidence speaking more directly to the number of proposed class members located in Minneapolis subject to the challenged policies is inadequate under *Dukes* to evaluate impracticability of joinder. As such, Plaintiffs fail to satisfy the numerosity requirement.

## B.   Commonality

To obtain class certification under Rule 23(a)(2), Plaintiffs must demonstrate that Defendants' conduct raises common questions subject to class-wide resolution. *See Dukes*, 564 U.S. at 349-50. To show commonality, Plaintiffs must show that all class members "have suffered the same injury." *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

157 (1982)).  In particular, because Plaintiffs assert municipal liability claims under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), they must show a "continuing, widespread, persistent pattern" of unconstitutional misconduct.  *See Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998).  Plaintiffs allege Defendants have an unconstitutional "practice or custom" of: (1) failing to provide adequate notice before encampment sweeps; (2) neglecting to properly inventory seized property; and (3) immediately destroying people's belongings.  According to Plaintiffs, this policy and practice violates the Fourth Amendment's prohibition on illegal seizures and the Fourteenth Amendment's guarantee of due process.  Plaintiffs argue that this common policy satisfies Rule 23(a)(2).

Plaintiffs rely primarily on depositions, documents, and video footage which they claim reveal Defendants' systemic disregard for unhoused residents' constitutional rights during encampment closures across the municipality.  However, Defendants counter with extensive evidence undermining the existence of any unconstitutional policy warranting class treatment under *Dukes* and *Monell*.  First, Defendants show the individualized nature of each encampment closure, notice procedure, and property protocol.  This case-by-case variance in Defendants' conduct precludes class certification.  *See Dukes*, 564 U.S. at 353-54.  Second, Defendants demonstrate material differences between the City, County, and MPRB policies regarding notice type, storage options, and decision-making authority over closures.  This inter-defendant variation defeats Plaintiffs' claim of common unconstitutional customs or practices.  Finally, differing experiences among Individual Plaintiffs—on issues such as notice received, property destruction, and post-closure

choices—require individualized legal inquiries rather than enabling class-wide determination. But Rule 23(a)(2) requires common questions subject to common answers.

Given Defendants' proof of variance, Plaintiffs cannot show the widespread persistent deprivation of rights necessary for municipal liability class certification under *Dukes* and *Monell*. The abundance of individual issues identified by Defendants means Plaintiffs fail to meet Rule 23(a)(2)'s demand for predominantly common questions enabling efficient class resolution.

## C.    Typicality

The typicality requirement of Rule 23(a)(3) means the representative plaintiffs must have claims similar enough to the class claims that pursuing their individual interests will simultaneously advance the interests of the class. *Falcon*, 457 U.S. at 157 n.13. Typicality ensures the named plaintiffs' interests sufficiently align with those of absent class members so that the representatives work to benefit the class through their individual claims. *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006). Factual differences necessitating individualized inquiries defeat typicality because adjudicating individual claims does not advance the broader class claims. *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). An overbroad class definition including those lacking viable claims likewise fails typicality as it requires individualized claim assessments rather than benefiting the class as a whole. *J.S.X. Through Next Friend D.S.X. v. Foxhoven*, 330 F.R.D. 197, 205 (S.D. Iowa 2019).

Defendants identify various differences between the Individual Plaintiffs regarding the specific notice each received before encampment closures, whether each individual

voluntarily departed their encampment, the details of any property destruction claims, and all other particular circumstances surrounding the distinct closures each Plaintiff was involved in. For example, to determine the merits of any plaintiff's Fourth Amendment property seizure claims, the Court would need to examine the totality of circumstances surrounding that specific plaintiff's situation to evaluate whether it was reasonable for officials to believe the property was abandoned. *Soldal v. Cook County, Illinois*, 506 U.S. 56, 61-62 (1992).

These types of factual discrepancies would require all other individualized reasonableness determinations, analyses of the specific notice provided to each plaintiff, assessments of the risk of erroneous deprivation given the exact process deficiencies impacting each Individual Plaintiff, and all other plaintiff-specific due process evaluations based on each plaintiff's distinct circumstances regarding the encampment closures. *Mathews*, 424 U.S. at 334-35. Such intensive plaintiff-specific inquiries are incompatible with Rule 23(a)(3) typicality requiring the representatives' interests be sufficiently aligned with those of the class. *Elizabeth M.*, 458 F.3d at 787. Given the numerous factual differences necessitating plaintiff-specific assessments, Plaintiffs fail to fulfill typicality.

### D. Adequacy

Rule 23(a)(4) requires that "the class representatives have common interests with the members of the class, and . . . will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982). To satisfy the adequacy requirement, the class representatives must not have interests that are antagonistic to or conflict with those of the rest of the class. *Ellis v. Costco Wholesale*

*Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). Additionally, the class representatives and their counsel must be able to prosecute the action vigorously on behalf of the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiffs have demonstrated a continuing personal stake in the injunctive relief sought based on expert evidence that homelessness is a recurring condition for Plaintiffs. Although Plaintiffs are currently housed, given the cyclical nature of homelessness, Plaintiffs may reasonably experience homelessness again in the future. *See County of Riverside*, 500 U.S. at 51-52. Moreover, Plaintiffs have actively participated in this litigation for years, indicating their continued commitment to pursuing class-wide relief. This ongoing engagement suggests Plaintiffs retain an alignment of interests with class members and remain committed to stopping Defendants' allegedly unconstitutional practices through an injunction. *See Ellis*, 657 F.3d at 985 (class representatives must not have interests antagonistic to or conflicting with the class).

Defendants argue Plaintiffs cannot rely on the possibility of future homelessness to establish standing and adequacy, as this would require speculation. However, Plaintiffs have provided expert evidence specifically demonstrating the likelihood of future homelessness for Plaintiffs based on the cyclical nature of homelessness. This expert testimony directly addresses the probability of recurrence, distinguishing this case from those relying purely on hypothetical chains of events. *See Hanlon*, 150 F.3d at 1020 (named plaintiffs must show ability to vigorously pursue the class claims).

Defendants also contend that Plaintiffs are inadequate representatives because Plaintiffs' pursuit of individual damages poses the risk of *res judicata* for absent class

members who seek monetary relief in future litigation. However, Plaintiffs correctly note that they seek only injunctive relief on behalf of the proposed Rule 23(b)(2) class in this case. Importantly, a judgment as to the declaratory and injunctive relief sought by the class would not have a res judicata effect that bars subsequent individual damages actions by class members. *See Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996) (holding that claim preclusion does not apply to claims for damages if the claims were unavailable in the prior action).

Given the expert evidence presented by Plaintiffs regarding the risk of recurring harm and the fact that absent class members can still pursue individual damages claims, Plaintiffs satisfy the adequacy requirement for class certification under Rule 23(a)(4).

## V.     Rule 23(b)(2) Requirements

To certify an injunctive class under Rule 23(b)(2), Plaintiffs must show that a single injunction can provide relief to the entire class. *Dukes*, 564 U.S. at 360. Rule 23(b)(2) applies only when final injunctive relief benefiting the whole class is appropriate. *Id*.

Defendants argue that the specific circumstances of each individual encampment closure differ in material respects that necessitate tailored injunctions, rather than a single injunction covering the whole class. The evidence shows the encampments varied significantly in size, geography, types of hazards present on-site, immediacy of risks to health and safety, and dangers posed to the public. *See Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 498 (7th Cir. 2012) (finding individualized determinations defeated commonality where students had differing disabilities and needs). The material variances indicate that reasonable notice periods, storage times, and handling procedures would

14

require individual determinations and tailoring under the respective conditions of each closure. *See Dukes*, 564 U.S. at 350 (certification improper where dissimilarities within the class require individualized assessments). For example, a large encampment with severe safety hazards may warrant urgently swift closure and removal with less notice than a smaller, safer encampment.

The evidence also shows divergent levels of urgency, risks, and hazards justified shorter notice periods for some encampments compared to others. Closely dangerous conditions demanded faster closures in the interest of public health and welfare. *See Jamie S.*, 668 F.3d at 498 (finding individual needs prevented class-wide relief). Reasonable notice thus depended on the exigencies present in each closure. These situational urgency and risk factors require relief tailored to individual encampment circumstances, preventing uniform injunctive relief under Rule 23(b)(2).

The need for tailored relief based on each encampment's circumstances prevents Plaintiffs from satisfying Rule 23(b)(2) with a single injunction covering the entire class.

## VI.    Conclusion

Based on the record, including the evidence and arguments presented in the class certification briefs, Defendants have identified obstacles to certification of Plaintiffs' proposed class under Rule 23. Plaintiffs have failed to affirmatively demonstrate compliance with multiple Rule 23(a) and (b)(2) factors.

Specifically, Plaintiffs have not met the Rule 23(a) requirements of standing, commonality, typicality, and adequacy as class representatives. Additionally, the

individualized circumstances of each encampment closure do not satisfy the cohesion and

uniformity required for certification under Rule 23(b)(2) for injunctive relief.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT**

**IS HEREBY ORDERED** that Plaintiffs' motion for class certification, (Dkt. 397), is

**DENIED**.

Dated:  January 31, 2024                                    s/ Wilhelmina M. Wright
                                                           Wilhelmina M. Wright
                                                           United States District Judge